UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN CORNELIUS STANLEY,<br><br>        Petitioner,<br><br>    v.<br><br>KEVIN CHAPPELL, Warden of San Quentin State Prison,<br><br>        Respondent.<br>_____/ | No. C-07-4727 EMC<br><br>**DEATH PENALTY CASE**<br><br>**ORDER REGARDING PETITIONER'S COMPETENCY; AND DENYING WITHOUT PREJUDICE THIRD MOTION FOR EQUITABLE TOLLING**<br><br>**(Docket Nos. 104, 105)** |

    In a prior order in this capital habeas action, the Court stayed proceedings pending a determination of Petitioner's competency.[1] (Doc. No. 39 at 2.) Experts for both parties have examined Petitioner and submitted reports, and the parties have submitted statements regarding Petitioner's competency and proposing appropriate courses of action. (Docs. Nos. 102 & 103.)

## I. BACKGROUND

    As an initial matter, the parties agree "that the protective order issued in connection with these competency proceedings should be lifted, and all previously sealed filings should be unsealed." (Doc. No. 102 at 2; Doc. No. 103 at 2.) The Court so finds and concludes with respect to

///

///

///

---

[1] The Court carved out an exception to the stay for discovery granted for preservation purposes. (Doc. No. 39 at 3.)

sealed filings regarding Petitioner's competency.[2]  Accordingly, the Court openly discusses such sealed filings herein.

## II. DISCUSSION

Based on the reports of both parties' experts, the parties also agree that Petitioner is incompetent. (Doc. No. 102 at 3; Doc. No. 103 at 2.) Dr. Amanda Gregory, a neuropsychologist retained by Petitioner, diagnosed Petitioner as suffering from Dementia Due to Head Trauma and possibly a Bipolar Disorder. (Gregory Report at 14–15); *see* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (hereinafter DSM-IV-TR) 164, 382–401 (4th ed. text rev. 2000). Dr. Robert H. Hines Jr., a psychiatrist also retained by Petitioner, diagnosed Petitioner with Dementia Due to Multiple Etiologies and provisionally with a Bipolar Disorder. (Hines Report at 5); *see* DSM-IV-TR 170–71, 382–401. The diagnosis by Respondent's expert, forensic psychologist Dr. Daniel A. Martell, included Dementia Not Otherwise Specified and Schizoaffective Disorder, Bipolar Type. (Martell Report at 15); *see* DSM-IV-TR 171, 319–23. In short, Petitioner suffers from one or more severe and chronic psychiatric disorders including dementia, due at least in part to organic brain dysfunction caused by frontal-lobe encephalomalacia, and Petitioner is unable to make rational choices or to communicate rationally with counsel. (Doc. No. 102 at 2; Doc. No. 103 at 2.) "Furthermore, Respondent does not contest the opinion of [P]etitioner's expert psychiatrist, Dr. Robert Hines, that [P]etitioner has an extremely poor prognosis for return to competency, and Respondent does not seek compulsory treatment of any sort to be administered to [P]etitioner," (Doc. No. 102 at 2 (citation omitted); Doc. No. 103 at 2–3 (citation omitted)); in other words, Petitioner's competency cannot be restored. In light of the parties' agreement and in accordance with the reports of the three experts who have examined Petitioner and submitted reports, the Court finds and concludes that Petitioner is permanently incompetent.

At the time that competency proceedings commenced, this finding effectively would have ended litigation in this action, as the Court would have been required to enter a permanent stay of

---

[2] This conclusion does not extend to filings regarding budgeting that are confidential pursuant to the Criminal Justice Act nor to the letter to the Court sent directly from Petitioner, (Doc. No. 61), which contains confidential information.

1 further proceedings. *See Rohan v. Woodford*, 334 F.3d 803, 819 (9th Cir. 2003). However, the
2 Supreme Court's recent decision in *Ryan v. Gonzales*, 133 S. Ct. 696 (2013) casts uncertainty over
3 the propriety of such a course. In *Gonzales*, the Supreme Court stated that, "If a district court
4 concludes that the petitioner's claim could substantially benefit from the petitioner's assistance" –
5 which is the case in the present action, (Doc. No. 39 at 2) – and "[w]here there is no reasonable hope
6 of competence" – which, as found above, is also the case in the present action – then a permanent
7 "stay is inappropriate. . . ." 133 S. Ct. at 709. That language, however, which appears at the end of
8 the decision, appears to be *dicta*. *Gonzales* involved the consolidation of two habeas cases. In each,
9 the Court noted that the habeas petition raised only record–based claims. 133 S. Ct. at 708-09.
10 Hence, the petitioner's assistance in prosecuting the claims was not necessary, and thus a stay was
11 unwarranted. Addressing a situation not before the Court, the opinion states in the last paragraph:

> If a district court concludes that the petitioner's claim could substantially benefit from the petitioner's assistance, the district court should take into account the likelihood that the petitioner will regain competence in the foreseeable future. Where there is no reasonable hope of competence, a stay is inappropriate and merely frustrates the State's attempts to defend its presumptively valid judgment.

16 The first and last sentences of the paragraph are puzzling; they appear to be non-sequitur, and in any
17 event, is *dicta*.
18 Respondent's argument that *Gonzales* requires the Court to lift the stay in this action and to
19 order Petitioner to file his finalized petition forthwith (Doc. No. 102 at 6–7), is based on the last
20 sentence. It does not account for the first sentence of *Gonzales*'s concluding paragraph which
21 requires the district court to assess the likelihood petitioner will regain competence where his claim,
22 as here, could substantially benefit from his assistance. If his claim would substantially benefit from
23 his assist, logic would suggest a stay is warranted so long as the petitioner remains incompetent.
24 Moreover, *Gonzales* addressed only the "outer limits" of a district court's discretion to enter
25 competency-based stays.[3] *Id.* at 708. The Supreme Court made clear it did "not presume that

---

[3] Unlike the present action, *Gonzales* did not involve a case in which a finalized petition had yet to be filed. Accordingly, the discussion of the "outer limits" of competency-based stays set forth in *Gonzales* is not directly applicable to the present action.

3

district courts need unsolicited advice . . . on how to manage their dockets. Rather, the decision to grant a stay, like the decision to grant an evidentiary hearing, is generally left to the sound discretion of district courts." *Id.* (internal quotation marks and citation omitted).

Accordingly, regardless of whether the Court may permanently stay all further proceedings under the facts of this case where that Petitioner is permanently incompetent and his assistance is important to the claims asserted (unlike in *Gonzales*), the Court maintains the discretion to manage the action so as to resolve it as expeditiously as possible. The Court intends to approach case management in a practical manner without, at this juncture, testing the outer limits of its discretion.

In a typical capital habeas case, if it is ultimately determined that a guilt-phase claim has merit, the matter is returned to the appropriate state trial court for a possible retrial; however, here, due to Petitioner's permanent incompetency, Petitioner can never be retried, and Petitioner likely would remain a ward of the state for the rest of his life. If it is ultimately determined that Petitioner's guilt-phase claims lack merit but a penalty-phase claim has merit, Petitioner will be resentenced to life in prison without the possibility of parole. Even if all of Petitioner's guilt-phase and penalty-phase claims lack merit, Petitioner cannot be executed if he is incompetent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). *See Gonzales*, 133 S. Ct. at 709 n.18.

Considering the fact that Petitioner's incompetence is permanent, there is no *practical* reason why the Court cannot presently make a preliminary determination of Petitioner's competency to be executed.[4] Moreover, even if the Court and the parties spend the years and resources needed to

---

[4] Respondent raises various technical issues regarding a potential *Ford* claim. (Doc. No. 102 at 8–10.) Respondent notes that there is no *Ford* claim currently pending and that such a claim has not been exhausted in state court. These points are well taken, and they should be addressed in the course of developing a schedule to determine Petitioner's competence to be executed. Respondent also argues that a *Ford* claim is not yet ripe. However, the cases on which Respondent relies did not involve prisoners who had been found to be permanently incompetent; rather, they assumed that a prisoner's competency might be restored. Here, if Petitioner is presently incompetent to be executed, then he will always be incompetent to be executed. Furthermore, even if a *Ford* claim is not yet pleaded, is unexhausted, or is technically unripe, but it substantively has merit, then the State may conclude that it is in its interests to settle this case rather than spend taxpayer dollars defending a judgment that can never be executed.

4

litigate this case fully,[5] it appears likely that the litigation ultimately would have no practical effect, as Petitioner likely will remain in the custody of the state one way or another until his natural death.

Accordingly, the Court concludes that the best course of action at this time is to lift the stay in part for two specific purposes: first, to determine whether Petitioner is incompetent to be executed; and second, to pursue settlement of the action so as to avoid the possibly pointless expenditure of scarce governmental resources.[6] This is in accord with the approaches taken by other district courts faced with similar situations involving incompetent condemned prisoners following *Gonzales*. *See, e.g.*, *McPeters v. Chappell*, No. 1-95-cv-5108-LJO, 2013 WL 360260 (E.D. Cal. Jan 29, 2013); *Gates v. Chappell*, No. 3-88-cv-2779-WHA (N.D. Cal. May 16, 2013) (order referring capital habeas action with an incompetent prisoner to a magistrate judge for a settlement conference); *see also Huggins v. Chappell*, No. 4-6-cv-7254-YGR, 2013 WL 843296 (N.D. Cal. Mar. 6, 2013); *cf. Connor v. Secretary, Fla. Dep't of Corr.*, 713 F.3d 609, 624 (11th Cir. 2013) (noting the significance of whether a competency determination is made before or after the filing of a finalized petition).[7]

Petitioner has filed a Third Motion for Equitable Tolling. In light of the foregoing as well as the fact that the statute of limitations is already being equitably tolled, (Doc. No. 39 at 2), the Motion is premature.

///

///

///

///

---

[5] It must be emphasized that the present action is still in its most preliminary stage, as Petitioner has not even filed a finalized petition yet. It is therefore safe to assume that the full litigation of this capital habeas action will take many years and will cost hundreds of thousands or even millions of dollars. However, Petitioner may be entitled to indefinite equitable tolling of the habeas statute of limitations if he is unable to file a finalized petition due to his incompetency, which could mitigate the cost substantially. *See Gonzales*, 133 S. Ct. at 704 n.6.

[6] The Court reserves the authority to reinstate the stay if that would be an appropriate exercise of the Court's discretion notwithstanding *Gonzales*.

[7] Respondent must consult with the Alameda District Attorney, as Respondent apparently does not himself have settlement authority. *See McPeters*, 2013 WL 360260, at *7.

### III. CONCLUSION

Good cause appearing therefor, the Court orders as follows.

(1) The protective order issued in connection with the competency proceedings in this action is hereby lifted. The parties shall electronically file (e-file) forthwith all previously sealed filings regarding competency.

(2) This action is referred for Alternative Dispute Resolution.

(3) Respondent shall confer with the Alameda District Attorney to discuss the possibility of settlement.

(4) The parties shall meet and confer and, within forty-five days after the present order is filed, shall file a joint case-management statement that includes a specific ADR plan as well as a proposed schedule for determining Petitioner's competence to be executed.

(5) Petitioner's Third Motion for Equitable Tolling, (Doc. No. 104), is denied without prejudice as premature.

(6) The Clerk shall terminate as moot Respondent's Motion to Enlarge Time to File Opposition to Petitioner's Third Motion for Equitable Tolling, (Doc. No. 105).

(7) The stay is partially lifted to allow the parties to comply with this order and shall remain so until further ordered.

IT IS SO ORDERED.

Dated: July 16, 2013

_____
EDWARD M. CHEN
United States District Judge