UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN CORNELIUS STANLEY,<br><br>    Petitioner,<br><br>    v.<br><br>RON DAVIS, Acting Warden of San Quentin State Prison,<br><br>    Respondent.<br>_____/ | No. C-07-4727 EMC<br><br>**DEATH PENALTY CASE**<br><br>**ORDER RE DETERMINATION OF COMPETENCY FOR EXECUTION** |

## I. INTRODUCTION

Petitioner is under a sentence of death. He has filed a motion for determination of competency for execution. After having reviewed the pleadings in this matter, and after oral argument from the parties, the Court hereby enters the following Order.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2011, this Court stayed proceedings in this matter pending a determination of Petitioner's competency to assist in the prosecution of his petition. Experts for both Petitioner and Respondent submitted reports, and both parties submitted statements regarding Petitioner's competency. (Doc. Nos. 102 & 103).

Both parties agreed that Petitioner is incompetent. (Doc. No. 102 at 3; Doc. No. 103 at 2). Dr. Amanda Gregory, a neuropsychologist retained by Petitioner, diagnosed Petitioner as suffering from Dementia Due to Head Trauma and possibly a Bipolar Disorder (Gregory Report at 14-15); *see* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (hereinafter DSM-IV-

TR) 164, 382-401 (4th ed. text rev. 2000). Dr. Robert H. Hines, Jr., a psychiatrist also retained by Petitioner, diagnosed Petitioner with Dementia Due to Multiple Etiologies and provisionally a Bipolar Disorder. (Hines Report at 5); *see* DSM-IV-TR 170-71, 382-401. The diagnosis by Respondent's expert, forensic psychologist Dr. Daniel A. Martell, included Dementia Not Otherwise Specified and Schizoaffective Disorder, Bipolar Type. (Martell Report at 15); *see* DSM-IV-TR 171, 319-23. In short, Petitioner suffers from one or more severe and chronic psychiatric disorders including dementia, due at least in part to organic brain dysfunction caused by frontal-lobe encephalomalacia, and Petitioner is unable to make rational choices or to communicate rationally with counsel. (Doc. No. 102 at 2; Doc. No. 103 at 2.) "Furthermore, Respondent does not contest the opinion of [P]etitioner's expert psychiatrist, Dr. Robert Hines, that [P]etitioner has an extremely poor prognosis for return to competency, and Respondent does not seek compulsory treatment of any sort to be administered to [P]etitioner," Doc. No. 102 at 2 (citation omitted); Doc. No. 103 at 2-3 (citation omitted). In other words, as this Court found and concluded in its Order of July 16, 2013, based on the expert reports and submissions of the parties, Petitioner is permanently incompetent and his competency cannot be restored. Additionally, the Court found that based on his permanent incompetency, Petitioner can never be retried, and Petitioner likely would remain a ward of the state for the rest of his life. *Id.* at 4.

At the time the competency proceedings commenced, this finding effectively would have ended litigation in this action, as the Court would have been required to enter a permanent stay of further proceedings. *See Rohan ex. rel. Gates v. Woodford ("Gates"),* 334 F.3d 803, 819 (9th Cir. 2003). More recently, however, the Supreme Court abrogated *Gates* and held that an incompetent capital prisoner has no right to an indefinite stay of habeas proceedings. *Ryan v. Gonzales,* ___ U.S. ___, 133 S. Ct. 706–09 (2013). The Supreme Court further held that while the decision to grant a temporary stay is within the discretion of the district court, an indefinite stay is inappropriate if there is no reasonable hope the petitioner will regain competence in the foreseeable future. *Id.* Accordingly, in that same Order of July 16, 2013, without making a determination that Petitioner was permanently incompetent to be executed, this Court lifted the stay for two specific purposes: 1)

to determine whether Petitioner is incompetent to be executed; and 2) to pursue settlement proceedings.

During settlement proceedings, Petitioner's experts re-examined Petitioner, focusing on the question of Petitioner's competency to be executed. Petitioner's experts concluded, after subsequently examining Petitioner, that in addition to his diagnoses noted *supra*, Petitioner lacks any rational understanding of the death penalty, or what it would mean for him personally to be executed. Exhibits A-D, attached to Petitioner's Request for Determination of Competency for Execution.

Prior to and during settlement proceedings, Respondent asserted that settlement was not an option when there was no error in the state court judgment. Respondent refused the invitation for his expert to re-examine Petitioner on the question of whether Petitioner was competent to be executed, and requests that Petitioner be required to file a proper Petition for Writ of Habeas Corpus.[1] Although the Court is not privy to the content of settlement discussions, the parties have made clear that no progress has been made regarding a potential settlement.

As a result, Petitioner now brings a motion requesting pursuant to Fed. R. Civ. Pro. 16(c)(2) that this Court determine whether Petitioner is permanently incompetent to be executed. Respondent opposes the motion.

### III.   APPLICABLE LAW

In *Ford v. Wainwright*, 477 U.S. 399, 416-18 (1986), the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment prevents the execution "of one whose mental illness prevents him from comprehending the reasons for the penalty or its implications." The Supreme Court has since held that a *Ford* claim does not become ripe until execution is imminent. *See Burton v. Stewart*, 549 U.S. 147, 154-55 (2007) (stating that "the claim of a capital prisoner that he was insane and therefore could not be put to death was necessarily unripe until the State issued a warrant for his execution"). As a result, while the Supreme Court has

---

[1] Without the assistance of federal counsel, Petitioner filed a placeholder petition on July 8, 2010. He has not yet been ordered to file a finalized petition, and per an earlier Order, this Court noted that Petitioner might be entitled to indefinite equitable tolling of the habeas statute of limitations, if his permanent incompetency rendered him unable to file a finalized petition.

assumed that *Ford* claims are habeas claims that ought to be included in a petition for writ of habeas corpus, *Ford* claims are not required to be included in initial habeas petitions. *See Panetti v. Quarterman*, 551 U.S. 930, 943, 946-47 (2007) (holding that *Ford* claims raised after rejection of initial habeas petitions do not constitute second or successive petitions); *Stewart v. Martinez-Villareal*, 523 U.S. 637, 645-46 (1998) (same).

## IV. ANALYSIS

Petitioner requests that the Court make a determination that he is permanently incompetent to be executed and grant relief on the *Ford* issue under the authority of Fed. R. Civ. Pro. 16(c)(2). Additionally, Petitioner requests that the Court moot all penalty phase claims and enter a case management order (if requested by either party) regarding the filing of a limited habeas petition on Petitioner's guilt phase claims. At this point, Petitioner has not filed a finalized capital habeas petition, and there is no *Ford* claim formally pending before the Court. Because, as the parties acknowledge, this is an issue of first impression, the Court will describe the parties's arguments in some detail.

Petitioner moves for relief under Fed. R. Civ. Pro. 16(c)(2), which allows for pretrial management of civil cases. Specifically, Petitioner relies on sections 16(c)(2)(A), (L), (N) and (P), which provide as follows:

> 16 (c) Attendance and Matters for Consideration at a Pretrial Conference.
>
> . . . .
> (2) Matters for Consideration. At any pretrial conference, the court may consider and take appropriate action on the following matters:
>
> (A) formulating and simplifying the issues, and eliminating frivolous claims or defenses;
>
> . . . .
>
> (L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems;
>
> . . . .

> (N) ordering the presentation of evidence early in the trial on a manageable issue that might, on the evidence, be the basis for a judgment as a matter of law. . . ;
>
> . . . .
>
> (P) facilitating in other ways the just, speedy and inexpensive disposition of the action.

Petitioner argues that these provisions grant the Court broad authority to manage this case, and determine the order of issues for resolution, including authority to grant relief on the *Ford* issue in advance of adjudicating the merits of the petition if Petitioner is found to be permanently incompetent and can never be executed under *Ford*. While there are no cases squarely addressing whether a district court can even address a *Ford* claim in advance of the merits, Petitioner contends that there is no substantive disagreement between Petitioner and Respondent as to the facts regarding Petitioner's mental capacity, and argues that "Respondent can have no good faith basis to believe that the State of California will ever be able to execute petitioner, and the Court should render a finding to that effect, which even if framed as a tentative order, effectively disposes of the crux of this case." Petitioner's Request at 3. Petitioner argues that to hold otherwise and require the parties to fully litigate the complex merits of the habeas claims relating to Petitioner's death sentence would constitute a waste of resources on a futile issue. Petitioner contends that under the peculiar facts of this case – if Petitioner is undisputably permanently incompetent within the meaning of *Ford* – Rule 16 affords this Court the case management authority to grant relief.

Respondent counters that the *Ford* issue is not properly before this Court. Respondent points out that there is no *Ford* claim currently pending, and that even if there was one, it would be unexhausted. Respondent acknowledges that Fed. R. Civ. Pro. 16(c)(2) allows a district court broad authority to take action on a variety of pre-trial matters, but argues that Rule 16 neither trumps federal habeas law nor grants a district court the authority to rule on an unexhausted claim. Respondent relies on 28 U.S.C. section 2254 (b)(3), which states that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." Respondent avers that because he has not, and will not, waive exhaustion of a *Ford* claim, any such claim must be "fairly

presented" to the California Supreme Court before this Court may consider it. *See, e.g. Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Respondent does not in his opposition address (nor contest) the underlying facts regarding Petitioner's mental competency; rather, he argues that because the *Ford* issue is not properly before the Court, it may not be addressed on the merits.[2]

In reply, Petitioner makes several arguments regarding Respondent's opposition to his request. First, Petitioner maintains that no habeas "claim" is needed to obtain relief under these circumstances. While there is no case law squarely on point, Petitioner argues that a determination by this Court that Petitioner is permanently incompetent to be executed is not a collateral attack upon a presumptively valid state judgment, and thus does not amount to a claim that needs to be exhausted before it is considered by this Court. *See, e.g. Duncan v. Walker*, 533 U.S. 167, 178-179 (2001) (stating that "[t]he exhaustion requirement of section 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment"). Petitioner argues that if this Court makes a preliminary *Ford* determination, it will not be granting a claim for relief in a petition that has not been filed, but rather will be mooting penalty phase claims and avoiding pointless litigation.

Petitioner alternatively argues that even if his request for relief under *Ford* is treated as a habeas claim for relief, he should not be required to exhaust the claim because any attempt to exhaust would be futile. In support of this argument, he relies on 28 U.S.C. section 2254 (b)(1)(B), which states that a litigant may be excused from state exhaustion proceedings if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." Petitioner argues that, in his case, there is no effective "state court corrective process." California provides a statutory procedure, Cal. Penal Code sections 3700-3704, for determining whether a person is competent for execution. *People v.*

---

[2] While Respondent does not contest the underlying facts regarding Petitioner's competency, he does not go so far as to concede that Petitioner is incompetent to be executed.

*Kelly*, 1 Cal. 4th 495, 544 (citing *Ford v. Wainwright*, 477 U.S. 399 (1986)).[3]  In particular, cases interpreting these statutes prior to *Ford* stated that "a convicted person awaiting execution has only such rights and remedies as may be conferred by statutory provisions."  *People v. Riley*, 37 Cal. 2d 510, 514-515 (1951); *see also Ex Parte Phyle*, 30 Cal. 2d 838, 842 (1947) (stating that "there is no provision for a judicial determination of the question of the sanity of a defendant delivered to the warden of a state prison for execution except as set forth in section 3701").  The statutes in question, which have not been substantively amended since *Ford*, state that only the warden or the governor can initiate an inquiry into whether a condemned inmate is competent to be executed.  Because the statute does not explicitly provide an avenue for an inmate to initiate an inquiry, Petitioner argues that he has no right under state law to seek a determination as to his competency to be executed, and thus that, under section 2254 (b)(1)(B), he is not required to exhaust the claim.  Moreover, if there is no right to state *court* review, it is difficult to apply the AEDPA standard of habeas review which is predicated on state court findings.

As to the first issue, the Supreme Court seems to have assumed without specifically deciding that a *Ford* claim is indeed a claim cognizable via habeas corpus, *see, e.g., Burton v. Stewart*, 549 U.S. 147, 154-55 (2007) (acknowledging that "the claim of a capital prisoner that he was insane and therefor could not be put to death was necessarily unripe until the State issued a warrant for his execution, and so the prisoner's subsequent request for consideration of that previously unripe claims was not "second or successive" for purposes of § 2244(b)"); *see also Martinez-Villareal*, 523 U.S. at 645-46 (1998).  While the Supreme Court has previously ruled that the *method* of execution may be challenged by a civil suit under section 1983, *see, e.g., Nelson v. Campbell,* 541 U.S. 637, 643-64 (2004) (holding that section 1983 was the proper avenue for consideration of Alabama's "cut-down" procedure in order to gain venous access for lethal injection), courts have considered

---

[3] The *Ford* Court also referred to section 3701 as "California's statute requiring the suspension of the execution of a prisoner who meets the legal test for incompetence."  477 U.S. at 408, n. 2.

*Ford* challenges via habeas corpus.[4]  *See, e.g, Burton*, 549 U.S. at 154-55; *Martinez-Villareal*, 523 U.S. at 645-46; *Panetti v. Quarterman*, 551 U.S. 930, 943-947 (2007).

Yet, if the basis for challenging an execution is not based on the propriety and validity of the state court conviction and sentence, but instead on developments occurring subsequent to and independent of those state court proceedings, the policy rationale for exhaustion and deferring to state court findings embodied in section 2254 would seem to be absent.  Moreover, if the upshot of challenges to the method of execution is to prevent (or at least delay) execution, it is difficult to discern a meaningful difference between a *Ford* challenge and a methods challenge.  Challenges to the method of execution, even if they result in an indefinite stay of execution, may be brought under section 1983.  *See, e.g.*, *Morales v. Tilton*, 465 F. Supp. 2nd 972 (N.D. Cal. 2006) (enjoining California's lethal injection protocol on Eighth Amendment grounds).  It is not obvious why a *Ford* challenge at least under some circumstances should be treated differently.

The issue has not been definitively decided by the Supreme Court or the Ninth Circuit.  This Court need not decide the issue now.  Nor need the Court presently decide the second issue – if a *Ford* claim can only be heard as a habeas claim, whether exhaustion may be excused.

Instead, the Court finds and concludes that the most prudent course of action at this juncture, consistent with its case management authority under Rule 16, is to further develop the record and order Respondent to conduct a supplemental examination of Petitioner, focusing on the question of whether Petitioner is permanently incompetent to be executed.  This modest step of limited factual development will assist the Court in determining the next step in this complex case.  If additional evidence, for example, compels a conclusion that Petitioner is not permanently incompetent to be executed, the issues discussed above will be moot.  Litigation of the habeas petition could then proceed on the merits in this venue.  On the other hand, if the additional evidence leads to an undisputed conclusion that Petitioner is permanently incompetent to be executed, the Court would be in a better position to consider certain of Petitioner's arguments, such as his argument that

---

[4] The parties do not cite to, nor is the Court aware of, any caselaw authorizing consideration of a *Ford* claim pursuant to section 1983.

exhaustion should be excused. Similarly, the permanent or non-permanent nature of Petitioner's incompetence (if so found) may affect the ripeness analysis advanced by Respondent.[5]

Ordering a supplemental examination is well within this Court's authority pursuant to Rule 16 discussed above. *See Avila v. Willits Envtl. Remediation Trust*, 633 F. 3d 828, 833-834 (9th Cir. 2011) (quoting Rule 16(c)(2)(L)) (Rule 16, which grants district court judges "broad discretion . . . to adopt 'special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems.'"). *See also* Rule 16(c)(2)(N) (affording the court the power to order the presentation of evidence). It is also consistent with Rule 35(a) of the Federal Rules of Civil Procedure, which authorizes the Court to order a party "to submit to a physical or mental examination by a suitably licensed or certified examiner" where that person's mental or physical condition is "in controversy." Petitioner's present mental state is clearly "in controversy" within the meaning of Rule 35. *See, e.g., Schlaugenhauf v. Holder*, 379 U.S. 104, 118 (1966) (discussing good cause and in controversy requirements of Rule 35(a)).

Since the Court is *not* currently ruling on Petitioner's *Ford* claim on the merits, this narrowly-tailored order does not run afoul of section 2254.

## V. CONCLUSION

For the foregoing reasons, the Court hereby ORDERS the following:

1. Respondent is ORDERED to conduct a supplemental mental health examination of Petitioner, focused on the issue of whether Petitioner is permanently incompetent to be executed.

2. Petitioner is ORDERED to conduct a supplemental mental health examination of Petitioner, focused on the issue of whether Petitioner is permanently incompetent to be executed.

---

[5] When considering this issue, other district courts in the Ninth Circuit have dismissed *Ford* claims as premature when they are brought up prior to an execution date. For example, in *Demetrulias v. Davis*, CV-07-1335, C.D. Cal. (2013), Carney, J., the district judge found that Petitioner's claim that he was incompetent to be executed under *Ford* was premature given that no execution date had been set. Consequently, the Court, relying on *Stewart v. Martinez-Villareal*, 523 U.S. 637, 638 (1998), dismissed the claim, deciding to adjudicate it when it became ripe, and recognizing that Petitioner's competence would have to be evaluated under California Penal Code § 3700.5.

9

3. Prior to any mental health examination, Respondent and Petitioner are ORDERED to meet and confer in order to jointly determine the scope of the examinations under the applicable standard announced in *Ford* and its progeny. Within thirty days of the date of this Order, the parties should submit a joint statement to the Court regarding the scope of the examination and the questions that should be considered by the examiners. These questions may or may not be the same as those previously considered by Petitioner's examiner.

4. Within thirty days of the date of this Order, the parties are also ORDERED to submit a joint statement to the Court regarding proposed dates for the exchange of any materials relevant to the supplemental examinations, the names and CVs of proposed examiners, and proposed dates for the examinations themselves.

IT IS SO ORDERED.

Dated: February 2, 2015

_____
EDWARD M. CHEN
United States District Judge