KAMALA D. HARRIS
Attorney General of California
GLENN R. PRUDEN
Supervising Deputy Attorney General
MICHELE J. SWANSON
Deputy Attorney General
State Bar No. 191193
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 703-5703
  Fax:  (415) 703-1234
  E-mail:  Michele.Swanson@doj.ca.gov
*Attorneys for Respondent*

ROGER I. TEICH
State Bar No. 147076
  290 Nevada Street
  San Francisco, CA  94110
  Telephone:  (415) 948-0045
  E-mail:  rteich@juno.com

DAVID A. NICKERSON
State Bar No. 111885
  32 Bridgegate Drive
  San Rafael, CA  94903
  Telephone:  (415) 507-9097
  E-mail:  nickersonlaw@comcast.net
*Attorneys for Petitioner*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **DARREN CORNELIUS STANLEY,**<br><br>                                Petitioner,<br><br>v.<br><br>**RON DAVIS, Warden, California State Prison at San Quentin,**<br><br>                                Respondent. | C 07-4727 EMC [Related to C 14-4108 EMC]<br><br>**DEATH PENALTY CASE**<br><br>**JOINT CASE MANAGEMENT STATEMENT RE PETITIONER'S *FORD* COMPETENCY AND APPROPRIATE COURSE OF ACTION[1]** |

## JOINT INTRODUCTION

On March 25, 2015, the Court issued an "Order re Determination of Competency for Execution," in which it ordered the parties' examiners to conduct supplemental examinations of

---

[1] The related declaratory relief action, *Stanley v. Chappell*, No. C 14-4108 EMC, seeks declaratory, equitable, and injunctive relief based upon a finding of permanent *Ford* incompetency in that case. *See* No. C 14-4108 EMC, Doc. 15 (Amended Complaint).  The Court deferred ruling on respondent's motion to dismiss that case because the supplemental factual development of the *Ford* issue in this case "may be relevant." *See* No. C 14-4108 EMC, Doc. 17 (Motion to Dismiss); Doc. 20 (Opposition); Doc. 21 (Reply); Doc. 27 (Order Deferring Ruling on Motion to Dismiss).  The Court set the same deadlines for the joint case management statement and the case management conference in both cases. *See* Doc. 176; No. C 14-4108 EMC, Doc. 32.  The parties hereby adopt the instant joint case management statement as their joint case management statement in the related declaratory relief action.

1

petitioner and prepare supplemental reports addressing his competency for execution, pursuant to *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Panetti v. Quarterman*, 551 U.S. 930 (2007).  Doc. 168.  The Court ordered the examiners to address the following:

    1. Whether Petitioner is aware of the punishment he will suffer if he loses his federal habeas case, and why he is to suffer it.

    2. Whether Petitioner has a mental illness that prevents him from comprehending and rationally understanding the reasons for the punishment or its implications.

    3. If Petitioner is presently incompetent for execution under the standards of *Ford* and *Panetti*, is his condition fixed and unchangeable such that he should be deemed permanently incompetent to be executed.

Doc. 168 at 2.

The parties' examiners have completed their supplemental examinations of petitioner and their supplemental reports.  Petitioner's examiners have concluded that petitioner is presently and permanently incompetent for execution.  Respondent's examiner has concluded that petitioner is neither presently nor permanently incompetent for execution.

The parties attended an in-person meet and confer after receipt of all the examiners' supplemental reports, and concluded that they could not "reach an agreement about Petitioner's *Ford* competency" or "an appropriate course of action."  Doc. 168 at 6.  The parties set forth their positions on these subjects in separate sections below.

## PETITIONER'S POSITION

**I.   OVERVIEW**

Two years ago this Court made the finding that petitioner suffers a mental condition that renders him permanently unable to make rational choices or to communicate rationally with counsel.  (Doc 106 at 2.)  The Court has since managed the action in an effort to resolve it as expeditiously as possible.  The stay of litigation, including of preservation discovery, continues fully in effect except for ADR, and when that failed to resolve the action, was lifted only for the parties' experts to conduct these evaluations under *Ford v. Wainwright*, 477 U.S. 399 (1986).

2

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

Based on the recordings and reports filed herewith of the parties' examiners *Ford* evaluations, the Court should now find that petitioner suffers a mental condition that prevents him from comprehending and rationally understanding the reasons for the death penalty and its implications, and that his incompetence is permanent. (Doc. 168 at 5.) The Court should enter a permanent stay of execution and terminate further habeas penalty phase litigation under Fed. R. Civ. Pro. 16(c)(2), and enter declaratory judgment and an injunction barring plaintiff's execution in related case (14-4108) under 42 U.S.C. section 1983 and 28 U.S.C. section 2201(a). *See* Docs. 151 (Petitioner's Rule 16(c)(2) Request), 157 (Petitioner's Rule 16(c)(2) Reply); Related Case 14-4108 Doc. 15 (Plaintiff's Amended Complaint for Declaratory Relief); Related Case 14-4108 Doc. 16 (Plaintiff's Opposition to Rule 12(b)(1) Motion to Dismiss).

## II. THE COURT SHOULD MAKE A FINDING OF FACT THAT PETITIONER IS PERMANENTLY INCOMPETENT TO BE EXECUTED

### A. Burden and Standard of Proof

The Court ordered the parties' examiners to determine the following:

> 1. Whether petitioner is aware of the punishment he will suffer if he loses his federal habeas case, and why he is to suffer it.
>
> 2. Whether Petitioner has a mental illness that prevents him from comprehending and rationally understanding the reasons for the punishment or its implications.
>
> 3. If Petitioner is presently incompetent for execution under the standards of *Ford* and *Panetti*, is his condition fixed and unchangeable such that he should be deemed permanently incompetent to be executed.

(Doc. 168 at 2.)

In *Mason ex rel. Marson v. Vasquez*, 5 F.3d 1220, 1225 (9th Cir. 1993), which involved a death-sentenced state prisoner who wanted to abandon his federal habeas petition during the course of those proceedings, the Ninth Circuit held:

> Initially sufficient evidence must be presented to cause the court to conduct an inquiry. After that point it is no one's burden to sustain, rather it is for the court to determine by a preponderance of the evidence whether the petitioner is mentally competent to withdraw his petition.

3

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

*Id.* at 1225; *see also Blair v. Martel*, 645 F.3d 1151, 1154 (9th Cir. 2011) (stating that *Mason* applies any time "[w]hen a habeas petition has been filed in the federal district court, appropriately invoking the court's jurisdiction"). Although the Ninth Circuit hasn't addressed this precise issue, petitioner submits that by extension from *Mason* and *Blair*, "it is no one's burden to sustain, rather it is for the court to determine by a preponderance of the evidence" whether petitioner is permanently incompetent within the meaning of *Ford*.

In any event, allocation of the burden to one party or another only makes a difference if the evidence is in equipoise, and here the recordings and reports of the examiners' *Ford* evaluations leave no doubt as to the resolution of the factual issue. Should the Court deem otherwise, and wish to hear live cross-examination of the parties' experts, petitioner would also seek discovery of Dr. Martell and Park Dietz & Associates for purposes of impeachment.[2] *See* Dr. Hines November 9, 2015 *Ford* Report at 5-6 (critiquing Dr. Martell's methodology); Dr. Gregory October 30, 2015 *Ford* Report at 1-2 (same); Doc. 66 at 2 n.1 (overruling petitioner's preliminary objection to Dr. Martell as bias goes to weight of the evidence, not admissibility); *Hernandez v. Martel*, 824 F. Supp. 2d 1025, 1056-1062 (C.D. Cal. 2011) (disregarding Dr. Martell's opinions in capital habeas case due to serious concerns about his credibility, result-oriented methodology and misinterpretation of data, lack of clinical expertise, and prior misleading affidavit).

**B.   Sufficiency of the Current Record**

Over the past nearly three years, the parties have filed four interview CD/transcripts and nine competency reports of five experts (four for petitioner, one for respondent) on petitioner's mental condition and competency. The Court has the particular benefit of witnessing for itself petitioner's *Ford* interviews by both parties' examiners, as preserved in the CD's submitted herewith. That evidence is powerful and dispositive, and frankly needs no interpretation. Indeed, both parties' examiners have either urged the Court to watch or listen to the most recent iterations from petitioner (Dr. Hines) or quoted them extensively, if selectively (Dr. Martell). And, to the

---

[2] To cite one recent example of Dr. Martell's misguided ethic, Dr. Martell told petitioner he would "feel sad" if petitioner were executed "because I knew you as a person" – as the set-up for seeking petitioner's one word yes-or-no response that death would end his physical body. (Dr. Martell *Ford* Transcript at 191-194.)

4

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

extent the Court needs further interpretation, there are also three new petitioner expert reports on *Ford* competency to assist the Court in applying the hard medical evidence of petitioner's brain damage and psychotic disorders to the three *Ford* referral questions.

Thus, the record before this Court consists of fifteen docketed items of evidence, the first nine of which are already familiar to the Court:

1. Dr. Martell Exam CD/Transcript – Revised (12/4/12) (Doc 110-1).
2. Dr. Martell Report (3/20/2013) (Doc 108-2).
3. Dr. Gregory Report; Exhibits (3/22/13) (Doc 110-3).
4. Dr. Hines Report; Exhibits (3/22/13) (Doc 110-4).
5. Dr. Hines Addendum (5/1/13) (Doc 110-5).
6. Dr. Barakos Report (5/22/13) (Doc 110-6)
7. Dr. Hines *Ford* Report (5/23/14) (Doc 151-1).
8. Dr. Gregory *Ford* Report (5/20/14) (Doc 151-2).
9. Dr. Hines *Ford* Exam CD/Transcript (5/1/14) (Docs 151-3, 151-4).
10. Dr. Martell *Ford* Exam CD/Transcript (5/12-13/2015).
11. Dr. Martell *Ford* Report (7/10/2015).
12. Dr. Hines Supp. *Ford* Exam CD/Transcript (9/10/2015).
13. Dr. Hines Supp. *Ford* Report (11/9/2015).
14. Dr. Gregory Supp. *Ford* Report (10/30/2015).
15. Dr. Turner *Ford* Report (11/5/2015).

Competency, by analogy to the trial context, is a factual, not a legal determination. *United States v. Frank*, 956 F.2d 872, 874 (9th Cir. 1992). In a case such as this one, with multiple experts, this Court may find petitioner incompetent by adopting the findings of one expert and discounting the contrary findings of another. *United States v. Lindley*, 774 F.2d 993 (9th Cir. 1985) (*per curiam*); *Miles v. Dorsey*, 61 F.3d 1459, 1472-74 (10th Cir. 1995).

Perhaps the single best reason for discounting Dr. Martell's *Ford* report is none other than Dr. Martell's own original report, which it flatly contradicts. On March 20, 2013, Dr. Martell concluded that:

> [Petitioner] maintains a complex and wide ranging system of bizarre delusions revolving around quasi-religious, metaphysical, and supernatural beliefs that he has special powers, insights, and psychic abilities that allow him to travel outside the prison to other planets, and to communicate with his ancestors and others. [] This delusional system has grown to incorporate most of the experiences and people around him.

(Doc 108-2 at 12.) Now, however, Dr. Martell finds that while, if anything, petitioner's psychotic symptoms have worsened, nonetheless:

5

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

> [I]f he were to be executed, he believes that he will move on to a spiritual life after death that, while apparently influenced by his mental disorder, is not so different from most mainstream religious beliefs. While it gives me pause that some of Mr. Stanley's beliefs about the afterlife have an expansive and grandiose quality, the point at which psychological science meets theology marks the end of my ability to offer an expert opinion regarding the rationality of his unique belief system versus that of any other person. It is clear that he takes comfort in his spiritual beliefs, and that, after all, is the role that religion plays in most of our lives.

(Dr. Martell *Ford* report at 30.)[3] Earlier, the Attorney General took the position that petitioner's competency cannot be restored. (Doc 103 at 2-3.) Yet, Dr. Martell also now opines that "the only way to know for sure [if he would respond to treatment] is to afford him an opportunity to receive treatment and observe the outcome." (*Id.* at 31.) Dr. Martell's new position shows a basic failure to take into account petitioner's fixed brain damage. That is not only *not* honest science, it's execrable.

In their supplemental *Ford* reports, Drs. Gregory and Hines take issue with Dr. Martell's methodology and conclusions, and reaffirm their earlier conclusions that petitioner remains "profoundly impaired, [] grandiose and delusional"; his "neurological damage is permanent, his condition is fixed and unchangeable," and he "cannot now, and will never be capable of 'comprehending and rationally understanding the reasons for (his execution) and its implications." (Dr. Hines Supp. *Ford* Report at 2.) Dr. Denys Turner, a professor of historical theology, thoroughly debunks Dr. Martell's *ipse dixit* that petitioner's statements can be located within any form of coherent or recognizable religious tradition. (Dr. Turner Report at 2-3, 8-9.) Like petitioner's mental health examiners, he finds those iterations to be a "jumble," "confused," and "incoherent." (*Id.*)

Allegations of delusional thinking are relevant to the determination of whether petitioner is insane insofar as they impair his concept of reality to the point that he cannot reach a rational

---

[3] In the same report, Dr. Martell concedes that "petitioner's thought content was marked by grandiose religious and paranormal/metaphysical delusions and hallucinations. These included for example, the belief that he is God; that he has the ability to travel throughout the universe; and that he continues to communicate with his ancestors, the victim in this case, his attorneys, and others via telepathy. [¶] He displayed formal thought disorder, including tangentiality and loose associations. He was at times incoherent, and his thinking was often expansive and illogical." (Dr. Martell *Ford* Report at 4.)

6

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

understanding of the reason for his impending execution. *Panetti v. Quarterman*, 551 U.S. 930, 958 (2007). "Gross delusions stemming from a severe mental disorder may put an awareness of a link between a crime and its punishment in a context so far removed from reality that the punishment can serve no proper purpose." *Panetti*, 551 U.S. at 960.

The totality of the evidence in the record therefore amply supports this Court now finding that petitioner is actively delusional due to his neurological damage and psychotic disorder and permanently incompetent to be executed. Dr. Martell's conflicting conclusion based on supposed quasi-religious beliefs is simply not credible. *Cf. United States v. Mitchell*, 706 F. Supp.2d 1148, 1193-94 (D. Utah 2010) (finding defendant's quasi-religious beliefs not delusions because they were changeable, not fixed, inconsistent with delusional disorder, and consistent with his schismatic subculture). Petitioner's iterations of his place in the universe are remarkably fixed over time and across examinations; they are fully consistent with his history and organicity; and they do not fit any schismatic subculture. In that regard, this case is on all fours with *Billiot v. Epps,* 671 F. Supp. 2d 840, 866, 878 (D. Miss. 2009), in which the district court found the petitioner incompetent to be executed because he was actively delusional. In *Billiot*, the district court discounted a state expert's testimony that petitioner's belief that he would go to a mental institution and be released, while "misguided and irrational," was not delusional. This Court should discount Dr. Martell's opinion, and give it no weight, because it fails to account for and runs contrary to the overwhelming weight of the hard medical evidence of petitioner's brain damage, and the gestalt of his permanent psychosis.

The Court should resolve the modest step of limited factual development that it posed to the parties this past February (Doc. 164), by entering a finding of fact that petitioner is permanently incompetent for execution.

### III. CALIFORNIA LACKS ANY ADEQUATE PROCESS TO ADJUDICATE THE CLAIM

In its February 2, 2015 Order (Doc. 164), this Court acknowledged petitioner's argument that 28 U.S.C. section 2254(b)(1)(B) excuses a litigant from state exhaustion proceedings if "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the appellant." Futility of exhaustion is a federal

7

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

question, *Harris v. Reed*, 489 U.S. 255, 268 (1989) (O'Connor, J., concurring), *Phillips v. Woodford*, 267 F.3d 966, 974 (9th Cir. 2001), and this Court should resolve it by excusing exhaustion of this issue in the habeas action, and by exercising its discretion to consider the related declaratory judgment action on its merits.

As before, California has no such process because a person awaiting execution has only such rights and remedies as may be conferred by statute, *People v. Riley*, 37 Cal.2d 510, 514-515 (1951), and the applicable statutes, Penal Code section 3700-3704, have not been changed since before *Ford* and require the warden or governor to initiate a competency inquiry. (Doc. 164 at 6-7.) Nor does the Ninth Circuit's opinion in *Jones v. Davis*, 2015 U.S. App. LEXIS 19698 (9th Cir. Nov. 12, 2015) change that landscape. *See Jones, supra*, at *36 (Watford, J., concurring) (exhaustion not excused under section 2254(b)(1)(B) because petitioner conceded he could file another habeas petition in the California Supreme Court).

## IV. FUTURE COURSE OF THE LITIGATION

In its order of February 2, 2015, this Court ordered the parties to "further develop the record" by "focusing on the question of whether Petitioner is permanently incompetent to be executed." (Doc. 164 at 8.) The Court further noted that this "modest step of limited factual development will assist the Court in determining the next step in this complex case." (*Id.*) The Court recognized that this factual development would assist the Court in determining such issues as ripeness and whether exhaustion should be excused.

Therefore, the Court may and should now make detailed findings of fact that petitioner is permanently incompetent under *Ford*. At that point, it may be appropriate for the Court to address – either on the briefing or with supplemental briefs – the parties' pending motions. *See* Docs. 151, 157, Related Case 14-4108 Docs 15, 16. To recap those issues briefly, petitioner believes the most prudent way to manage the litigation so as to resolve it expeditiously is for the Court to enter a permanent stay of execution and terminate as moot any further habeas penalty phase litigation in this case. In the related action, the Court may and should deny defendant Warden's motion to dismiss under Rule 12(b)(1), and enter declaratory judgment and injunctive

8

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

relief barring the Warden from taking any step to execute plaintiff, and requiring the Warden to reclassify him accordingly.

In that event, with concurrence of respondent and *guardian ad litem*, petitioner's counsel will stipulate to entry of final judgment in the habeas action. But, regardless, the case will be essentially resolved. Since petitioner can never be retried and will remain a ward of the state for the remainder of his life (Doc 106 at 4), petitioner's counsel would not seek to lift the stay to prosecute guilt phase claims, or litigate further equitable tolling, unless ordered to do so by this Court. *See Rees v. Peyton*, 384 U.S. 312 (1966) (*per curiam*) (holding indefinitely a petition for certiorari which an incompetent petitioner sought to withdraw); *Pub.Util.Comm. of the State of Cal. v. Fed.Energy Reg.Comm.*, 100 F. 3rd 1451, 1458 (9th Cir. 1996) ("A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. The court must be able to grant effective relief or it lacks jurisdiction and must dismiss the appeal.") An Order removing the case from the Court's active docket may be entered at that time.

## RESPONDENT'S SEPARATE STATEMENT

## INTRODUCTION

This case has been stayed for over four years. It was initially stayed so that the Court could determine petitioner's competence to assist federal habeas counsel pursuant to *Rohan ex rel. Gates v. Woodford* (*Gates*), 334 F.3d 803, 813 (9th Cir. 2003). Doc. 39. After the Court found petitioner permanently *Gates* incompetent, the Court continued to stay proceedings while it investigated a claim raised by petitioner for the first time in his briefing on the *Gates* issue, *see* Doc. 110-1 at 247-254, and later by motion, *see* Doc. 151, but not raised in the protective petition itself, *see* Doc. 5: that petitioner was permanently incompetent to be executed pursuant to *Ford v. Wainwright*, 477 U.S. 399 (what we have termed a "*Ford*-plus" claim). After finding that petitioner's *Gates* incompetence raised the possibility that he was also *Ford* incompetent, *see* Doc. 118 at 1, the Court referred the parties to ADR in an attempt to "settle" the case. *See* Doc. 106; Doc. 118. When settlement talks failed, the Court ordered the parties to conduct supplemental

9

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

1  examinations of petitioner and opine on whether he was permanently *Ford* incompetent. Doc.
2  164; Doc. 168.

3  After having conducted its own *Ford* examination of petitioner, respondent disagrees with
4  petitioner's claim that he is presently or permanently *Ford* incompetent. Further, recent
5  developments in *McPeters v. Davis*, No. 1:95-CV-05108-DAD-SAB (E.D. Cal.), a case that has
6  been cited by both petitioner and the Court in this case, *see* Doc. 106 at 5; Doc. 110-1 at 248,
7  support respondent's repeated assertion that a *Ford*-plus claim can and must be exhausted in the
8  state supreme court before it may be considered on federal habeas. We detail our position below.

## ARGUMENT

**I.  THIS COURT HAS NO LEGAL BASIS UPON WHICH TO DECIDE A CLAIM NOT PROPERLY BEFORE IT; THE STAY SHOULD BE LIFTED, PREVIOUSLY-ORDERED PRESERVATION DEPOSITIONS COMPLETED, AND A FINALIZED PETITION FILED**

12  We have maintained the same position from the beginning of these *Ford* proceedings, and
13  reaffirm that position once again: the Court has no legal basis upon which to decide petitioner's
14  *Ford*-plus claim. *See* Doc. 108-1 at 36-38; Doc. 115 at 5-6, 8-9; Doc. 156; Doc. 165 at 8 n.6.
15  Moreover, after conducting our own *Ford* examination, we disagree that petitioner is presently or
16  permanently *Ford* incompetent. We therefore ask that the Court deny petitioner's motion for a
17  determination of his *Ford* competency, lift the stay, order a timeline for completion of petitioner's
18  remaining preservation depositions,[4] and set a deadline for the filing of a finalized petition.

**A.  Dr. Martell's *Ford* Examination and Report**

20  Dr. Martell conducted a supplemental *Ford* examination of petitioner on May 12 and 13,
21  2015, and prepared a supplemental *Ford* report on July 10, 2015. *See* Resp't's Exs. 1 (Dr.
22  Martell's *Ford* report); 2 (Addendum to Dr. Martell's *Ford* report); 3 (CDs of Dr. Martell's *Ford*
23  examination); 4 (transcript of Dr. Martell's *Ford* examination); 5 (Dr. Martell's notes during *Ford*
24  examination and petitioner's answers to MMPI-2); 6 (petitioner's MMPI-2 report); 7 (Dr.
25  Martell's CV); 8 (Dr. Martell's testimony list); 9 (Dr. Martell's statement of compensation for the
26  *Ford* examination and report).

---

[4] It appears that Mr. Cannady, one of petitioner's trial counsel for whom a preservation deposition was granted, is now deceased.

10

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

As to the Court's first question—whether petitioner is aware of the punishment he will suffer if he loses his federal habeas case, and why he is to suffer it—Dr. Martell answered both parts of the question in the affirmative. Resp't's Ex. 1 at 6. Dr. Martell based his opinion on statements petitioner made during both Dr. Martell's supplemental *Ford* examination and Dr. Hines's initial *Ford* examination.[5] *Id*. at 6-7. Petitioner indicated his awareness that he had been "sentence[d] . . . to death" and was "here to be put to death," that he would be "kill[ed]" by "[i]njection" with "drugs" if he loses all of his appeals, and that he will "pass over" just like "anybody else." *Id*. at 7-8. He also indicated his awareness that he was sentenced to death for committing a murder during the course of a robbery. *Id*. at 8-9.

As to the Court's second question—whether petitioner has a mental illness that prevents him from comprehending and rationally understanding the reasons for the punishment or its implications—Dr. Martell noted that "[t]here is no question that Mr. Stanley suffers from a mental illness of psychotic proportions, together with significant neurocognitive impairments that together compromise his thinking and behavior." Resp't's Ex. 1 at 9. However, Dr. Martell concluded that petitioner's mental illness did not prevent him from comprehending and rationally understanding that "12 people found that he was guilty and that is the reason for his punishment." *Id*. at 10. Dr. Martell based his opinion on statements petitioner made indicating his understanding that 12 people found him guilty of robbing and killing a man, and that they believed he should die for what he did. *Id*. at 10. Dr. Martell also concluded that petitioner's mental illness did not prevent him from comprehending and rationally understanding that "the fact of his execution would be terminal and final." *Id*. at 30. As Dr. Martell observed, petitioner understands that if he is executed, his "body will die and decay," and that he will not "rise up or continue to live in the body or have the life that he has today." *Id*. With respect to petitioner's belief that "he will move on to a spiritual life after death," Dr. Martell noted that such belief, "while apparently influenced by [petitioner's] mental disorder, is not so different from most

---

[5] We note that petitioner's examiners conducted their own initial *Ford* examinations of petitioner during ADR proceedings, before the Court ordered both parties to conduct supplemental *Ford* examinations. *See* Doc. 164 at 3, 9.

11

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

mainstream religious beliefs." *Id*. Dr. Martell concluded that, while it gives him "pause that some of Mr. Stanley's beliefs about the afterlife have an expansive and grandiose quality," "the point at which psychological science meets theology marks the end of my ability to offer an expert opinion regarding the rationality of his unique belief system versus that of any other person," and that "[i]t is clear that [petitioner] takes comfort in his spiritual beliefs, and that, after all, is the role that religion plays in most of our lives." *Id*.

As to the Court's third question—if petitioner is presently incompetent for execution under the standards of *Ford* and *Panetti* (a condition in which we do not concur, as noted above), is his condition fixed and unchangeable such that he should be deemed permanently incompetent to be executed—Dr. Martell opined that, "[s]hould Mr. Stanley be found to be incompetent for execution," then, "as [he] indicated in [his] initial [*Gates*] report in this case" (*see* Doc. 108-1 at 21-22), petitioner's schizoaffective disorder could "be treated with a combination of psychotropic medication and psychotherapy," and, although "prognosis for recovery varies . . . and it is - impossible to predict how Mr. Stanley will respond to treatment," the "only way to know for sure is to afford him an opportunity to receive treatment and observe the outcome." Resp't's Ex. 1 at 31. While Dr. Martell acknowledged that petitioner's "organic brain function undoubtedly complicates his clinical presentation" and makes him "significantly less amenable to treatment," at the same time, "some of the scores obtained on the neuropsychological testing may have been adversely affected by his psychotic symptoms, and may improve upon retesting if his psychiatric illness can be treated effectively." *Id*.

### B. There Is No *Ford*-Plus Claim Properly Before the Court; the Court Should Decline to Decide Whether Petitioner Is Permanently *Ford* Incompetent

As we have repeatedly maintained throughout these *Ford* proceedings, the Court has no legal basis upon which to decide petitioner's *Ford*-plus claim. The most obvious and glaring legal hurdle to deciding petitioner's *Ford*-plus claim is that it is not a claim at all. Petitioner did not include a *Ford*-plus claim in his protective petition, nor has he amended his petition to include such a claim. Accordingly, the Court should decline to decide a claim that is not properly before it.

12

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

1     Second, as we have also repeatedly maintained throughout these *Ford* proceedings, even if petitioner were to amend his protective petition and include a *Ford*-plus claim, the Court would still have no legal basis upon which to decide such claim, because the claim would be unexhausted. No other federal court, including the district court in *McPeters*, has taken the unprecedented step of deciding an admittedly unexhausted *Ford*-plus claim.

    Further, recent events in *McPeters* should lead this Court to reject petitioner's protestations that exhaustion of the *Ford*-plus claim should be excused as futile. On June 5, 2015, the petitioner in *McPeters* filed a state habeas petition in the California Supreme Court raising a *Ford*-plus claim, and the California Supreme Court has given no indication that it is unwilling to consider such a claim. *See In re McPeters*, No. S226918 (docket attached as Resp't's Ex. 10). On the contrary, the state supreme court requested an informal response from the Attorney General's Office, which was filed on September 21, 2015.[6] *See id*. In its response, the Attorney General has urged the state supreme court to hear McPeters's *Ford*-plus claim, asserting that that when a petitioner can make a substantial showing of permanent *Ford* incompetence, his claim is ripe for hearing. *See* Resp't's Ex. 11. This is consistent with our position in the present case: that a *Ford*-plus claim is fundamentally different from a *Ford* claim, and that petitioner can and must present his argument that it is ripe for decision to the state supreme court. *See* Doc. 115 at 5, 9; Doc. 156 at 5.

    **C.**     **The Court Should Lift the Stay**

    Based on Dr. Martell's report, we disagree with petitioner that he is permanently *Ford* incompetent. Accordingly, the only remedy available to petitioner at this juncture is to take his claim to the California Supreme Court for resolution. Additionally, given our view that petitioner is not *Ford* incompetent, we will not agree to a stay of these proceedings while he returns to state court to exhaust his claim. Rather, we adhere to our previous position that the *Gates* stay should be lifted, the previously-ordered preservation depositions completed, and a finalized petition filed. *See* Doc. 108-1 at 31-35.

---

[6] McPeters's reply is due on January 8, 2016. *See* Resp't's Ex. 10.

13

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

### D. Respondent's Separate Conclusion

For the reasons set forth above in respondent's separate statement, respondent respectfully requests that the Court lift the stay, set a schedule for completing the previously-granted preservation depositions, and set a deadline for the filing of a finalized petition.

Dated: December 10, 2015                                Respectfully submitted,

                                                        KAMALA D. HARRIS
                                                        Attorney General of California
                                                        GLENN R. PRUDEN
                                                        Supervising Deputy Attorney General


                                                        /s/ Michele J. Swanson
                                                        MICHELE J. SWANSON
                                                        Deputy Attorney General
                                                        *Attorneys for Respondent*


Dated: December 10, 2015                                Respectfully submitted,


                                                        /s/ Roger I. Teich
                                                        ROGER I. TEICH
                                                        DAVID A. NICKERSON
                                                        *Attorneys for Petitioner*

SF2007402979
20793421.doc

14

Jt. Case Mgmt. Stmt. Re Pet'r's *Ford* Competency and Appropriate Course of Action
(C 07-4727 EMC) and related case (C 14-4108 EMC)

# CERTIFICATE OF SERVICE

Case Name:  **Stanley v. Davis, Warden**          No.   C 07-4727 EMC

I hereby certify that on <u>December 10, 2015</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**JOINT CASE MANAGEMENT STATEMENT RE PETITIONER'S *FORD* COMPETENCY AND APPROPRIATE COURSE OF ACTION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>December 10, 2015</u>, at San Francisco, California.

|  |  |
|---|---|
| D. Desuyo | /s/  D. Desuyo |
| Declarant | Signature |

SF2007402979
20795306.doc