ROGER I. TEICH
California State Bar No. 147076
290 Nevada Street
San Francisco, CA. 94110
Telephone: (415) 948-0045
E-Mail Address: rteich@juno.com

DAVID A. NICKERSON
California State Bar No. 111885
32 Bridgegate Drive
San Rafael, CA. 94903
Telephone: (415) 507-9097
E-Mail Address: nickersonlaw@comcast.net

Attorneys for Petitioner
DARREN CORNELIUS STANLEY

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DARREN CORNELIUS STANLEY, | No.   3-7-CV-4727-EMC |
| Petitioner, | **DEATH PENALTY CASE** |
| vs. | **PETITIONER'S NOTICE OF MOTION AND FOURTH MOTION FOR EQUITABLE TOLLING** |
| RON DAVIS, Warden, San Quentin State Prison, | Date:        March 3, 2016 |
| Respondent. | Time:        1:30 p.m. Courtroom 5 - 17th Floor |

PLEASE TAKE NOTICE THAT Petitioner will and hereby does move this Court for an Order equitably tolling the time in which Petitioner must file his finalized petition for an additional period of 90-days.  This motion is based upon the understanding of the parties that there are currently 127-days remaining on the one-year statute of limitations set forth in 28 U.S.C. section 2244(d)(1).  Thus, Petitioner's request is for a total of 217-days from the date the stay is lifted in which to file a timely finalized petition.

1        A.     Introduction

2        On July 8, 2010, Stanley filed a 467-page *pro se* "protective petition" raising 59-claims for

3    writ of habeas corpus.  (Docket # 5.)  The Court appointed counsel for Stanley on February 11,

4    2011.  (Docket # 11.)  Counsel thereafter filed a second motion for equitable tolling based upon

5    Stanley's right to counsel and to have counsel file a "finalized petition" within the meaning of

6    Rule 2254-28 of the *Rules for the Northern District of California*.  (Docket # 17.)  The Court

7    granted that motion and ordered that "Petitioner should file his finalized petition on or before

8    February 10, 2012.  (Docket # 26.)  In effect, the Court tolled the one-year statute of limitations

9    until the date of appointment of counsel.

10       Well prior (127-days, to be exact) to the deadline for filing the finalized petition, on

11   November 10, 2011, Stanley filed Docket # 35; Ex Parte Motion To Stay Proceedings And For

12   Equitable Tolling Pending Determination of Petitioner's Competency.  In that motion Stanley

13   sought "equitable tolling of the federal habeas statute of limitations nunc pro tunc to October 6,

14   2011, when Petitioner submitted to the Court a budget request to prepare his finalized petition."

15   (Docket # 39, Order Resolving Pending Motions, dated November 28, 2011.)  The Court granted

16   that motion finding that Stanley was entitled to a stay pending a determination of his competency

17   to assist counsel.  The Court's Order also stated: "The Court therefore grants such a stay, including

18   equitable tolling, nunc pro tunc to October 6, 2011."  (Docket # 39.)

19       On July 16, 2013, the Court found that Stanley was permanently incompetent to assist

20   counsel.  (Docket # 106, p. 2.)  At that time the Court lifted the previously imposed stay for two

21   limited purposes: "first to determine whether Petitioner is incompetent to be executed; and second,

22   to pursue settlement of the action so as to avoid the possibly pointless expenditure of scare

23   government resources."  (Docket # 106, p. 5.)  In that same order the Court denied Stanley's Third

24   Motion for Equitable Tolling, Docket # 104,  "without prejudice as premature."  (Docket # 106, p.

25   6.)  The Court also noted,

26

27

28                                                    2

1    Petitioner may be entitled to indefinite equitable tolling of the habeas statute of

2    limitations  if he is unable to file a finalized petition due to his incompetency, which could

3    mitigate the cost substantially. See *Gonzales*, 133 S. Ct. at 704 n. 6. (Docket #106, p. 5

4    n.5.)

5

6    Prior to January 8, 2013, a finding that Stanley was incompetent and that restoration of

7    competency was unlikely would have caused the Court to continue the stay of the proceedings

8    indefinitely.  See e.g. *Blair v. Martel*, 645 F.3rd 1151, 1154 (9th Cir. 2011).  However, on January

9    8, 2013, the United States Supreme Court issued its opinion in *Ryan v. Gonzales*, 133 S.Ct. 696

10   (2013).

11   *Gonzales* overruled the Ninth Circuit's opinions in *Rohan v. Woodford*, 334 F.3rd 803 (9th

12   Cir. 2003) and *Nash v. Ryan*, 581 F.3rd 1048 (9th Cir. 2009) which had found a right to

13   competency in capital habeas proceedings based upon a petitioner's statutory right to counsel.  The

14   *Gonzales* opinion concluded by stating the following:

15

16    If a district court concludes that the petitioner's claims could substantially benefit

17    from the petitioner's assistance, the district court should take into consideration the

18    likelihood that the petitioner will regain competence in the foreseeable future.  Where

19    there is no reasonable hope of competence, a stay is inappropriate and merely frustrates

20    the State's attempt to defend its presumptively valid judgment.

21   *Ryan v. Gonzales, supra,* 133 S.Ct. at 709.

22

23   In its Order Resolving Pending Motions, the Court found that Stanley "has raised claims

24   that could benefit from his ability to communicate rationally, such as claims that his trial counsel

25   rendered ineffective assistance."  (Docket # 39, p. 2; listing claims in the protective petition by

26   claim number and page number; internal quotations and citations deleted.)

27

28                                           3

1    In an order dated February 2, 2015, the Court noted settlement proceedings had been

2    conducted but that "the parties have made clear that no progress has been made regarding a

3    potential settlement." (Docket # 164, p. 3.)  Therefore, the Court ordered the parties to conduct

4    further mental health examinations of Stanley "focused on the issue of whether Petitioner is

5    permanently incompetent to be executed." (Id., at p. 9.)

6    In a case management order issued on December 18, 2015 (Docket # 184), the Court

7    indicated that it "intends to lift the stay so that a finalized petition may be filed and this matter may

8    proceed." (Docket # 184.)   A further case management conference is currently scheduled for

9    February 9, 2016.  Petitioner is filing this Motion based on the assumption that, consistent with

10   Docket # 184, the Court intends to lift the stay on that date.  If so, the 127-days remaining on the

11   statute of limitations will resume running.

12   Respondent has repeatedly argued that under *Gonzales* the stay imposed in order to

13   determine Stanley's  competency should be vacated, the one-year statute of limitations should

14   resume running, and counsel for Stanley should file a finalized petition within 127 days. (*See*

15   Respondent's Position in Joint Statement, Docket # 185.) In other words, Respondent contends

16   that a finding that Stanley is permanently incompetent, and has been incompetent during the

17   entirety of counsels' representation in federal court, is of no consequence to the filing of the

18   finalized petition, or its contents.  According to Respondent, whether competent or not, once a

19   competency determination is made, the running of the statute of limitations must resume.  Thus,

20   Respondent believes that Stanley's incompetency is entirely meaningless to this proceeding.

21   Stanley takes a different view.  As set forth below Stanley contends that a finding of

22   incompetence in this case fundamentally alters how and when counsel must prepare and file a

23   finalized petition, *if ever*.  *Gonzales* addressed only the "outer limits" of what a district court could

24   do when faced with an incompetent petitioner who has already filed a finalized petition and the

25   claims at issue were "record based or resolvable as a matter of law" requiring no factual

26   development.  Even then the court did not "presume that district courts need unsolicited advice

27

28                                                     4

from us on how to manage their dockets." *Ryan v. Gonzales, supa,* 133 S.Ct. at 708.

The situation in Stanley's case is completely different.  He has been found permanently incompetent before a finalized petition has been filed, and he has and will raise claims that require further factual development, including claims that would benefit from facts potentially within his private knowledge.  No court has addressed how or when a petitioner is to file a finalized petition under these circumstances.

Petitioner's counsel ask for seven months (217-days) to explore their client's case before the statute of limitations for raising timely claims expires.  Left unresolved and potentially mooted by an Order granting the additional period of tolling:  if there is no evidence in existence at this point (24-years after trial) to discern why trial counsel chose or neglected to raise a competency issue or insanity defense at trial, does the situation amount to a suspension of the writ of habeas corpus in violation of Art I, § 9, clause 2 of the Constitution?  Essentially, that would mean Petitioner would not have any meaningful opportunity to challenge the *substance* of his trial conviction on habeas at all.  That scenario would go further than *Ryan v. Gonzales*, which merely delineated the scope of petitioner's statutory *process* right to stay the litigation of a petition on file during a period of incompetency.   An Order for 90-days equitable tolling may moot that issue by permitting counsel to develop alternate sources of information on non-record claims.

### B.   Incompetency and Equitable Tolling After *Gonzales*

Both petitioners whose cases were at issue in *Gonzales* had long since filed their finalized petitions before a finding of incompetency was entered in the proceedings.  "In Gonzales' case, the District Court correctly found that all of Gonzales' properly exhausted claims were record based or resolvable as a matter of law, irrespective of Gonzales' competence." *Ryan v. Gonzales, supra,* 133 S.Ct. at 708.  Concerning the second petitioner, Carter, the Supreme Court in *Gonzales* noted that "the District Court concluded that four of Carter's claims could potentially benefit from Carter's assistance."  While three of these claims were probably also "record based," the fourth

1    claim may have been unexhausted and not procedurally defaulted.  In any event, however, the

2    Court concluded that in such a case "an indefinite stay would be inappropriate." *Id.*, at 709.

3         Unlike the petitioners in *Gonzales*, Stanley has not filed a finalized petition. The issue of

4    Stanley's competency arose *before* the statute of limitations to file his petition had run. And,

5    unlike the petitioners in *Gonzales*, it cannot be said that Stanley has raised or will raise only claims

6    that are purely record based.  Indeed, Stanley's finalized petition will raise numerous claims that

7    are not record based.

8         Counsel for Stanley must therefore prepare and file a finalized petition even though

9    Stanley has been and will remain incompetent during the entirety of counsel's representation.  Put

10   another way, counsel must prepare and file a finalized petition in which counsel will raise, and the

11   protective petition has already raised, "claims that could benefit from (Stanley's) ability to

12   communicate rationally" with counsel.  (Docket # 39, p. 2.)  Yet, as a result of Stanley's

13   incompetency, counsel for Stanley have been and will continue to be without the benefit of

14   Stanley's knowledge of the facts of the offenses themselves and Stanley's prosecution in state

15   court, including his communications and relationship with trial counsel, and counsel's stated

16   reasons for his conduct of the trial defense and investigation.  This permanent inability to access

17   facts normally provided by the petitioner himself will severely impact counsels' ability to prepare

18   and file a finalized petition in this case.

19        This Court acknowledged, but did not resolve, this dilemma in 2013.  In its Order finding

20   Stanley incompetent, the Court noted, "If his (Stanley's) claims would substantially benefit from

21   his assist, logic would suggest a stay is warranted so long as the petitioner remains incompetent."

22   (Docket # 106, p. 3.)  The Court then stated, "Accordingly, regardless of whether the Court may

23   permanently stay all further proceedings under the facts of this case where that Petitioner is

24   permanently incompetent and his assistance is important to the claims asserted (unlike in

25   *Gonzales*), the Court maintains the discretion to manage the action so as to resolve it as

26   expeditiously as possible."  (Id., at p. 4.)

27

28                                                        6

1    Compounding Stanley's situation is the fact that lead trial counsel, Walter Cannady, died

2  on August 7, 2013.  Thus, habeas counsel face a permanent inability to access facts normally

3  obtained from trial counsel.  The interplay between Stanley's incompetency and the death of trial

4  counsel will be discussed more fully below.

5    "Habeas corpus petitions must meet heightened pleading requirements..." *McFarland v.*

6  *Scott*, 512, U.S. 849, 856 (1994). A petitioner's claims may be subject to procedural bar if not

7  presented in the first finalized petition. *McClesky v. Zant*, 499 U.S. 467, 498 (1991): "petitioner

8  must conduct a reasonable and diligent investigation aimed at including all relevant claims and

9  grounds for relief in the first federal habeas petition...Omission of the claim will not be excused

10 merely because evidence discovered later might also have supported or strengthened the claim."

11 Because of these "heightened pleading requirements," the Supreme Court has noted that the

12 "services of investigators and other experts may be critical in the pre-application phase of a habeas

13 proceeding, when possible claims and their factual bases are researched and identified."

14 *McFarland v. Scott, supra,* 512 U.S. at 855.

15    An incompetent petitioner who cannot rationally communicate with habeas counsel, like

16 Stanley, obviously cannot communicate to habeas counsel factual information which, if

17 investigated, might lead to claims, or facts in support of claims, that should, under *McClesky*, be

18 raised in the finalized petition.  As a result, absent equitable relief here, those claims may, and

19 probably will, be procedurally barred from consideration by any court.

20    Additionally, Local Rule 2254-28(b)(3) requires that a finalized petition filed in this

21 district "[s]et forth each factual allegation or group of related allegations in a separately numbered

22 or lettered paragraph."  "Conclusory allegations which are not supported by a statement of specific

23 facts do not warrant habeas relief." *James v. Borg*, 24 F.3rd 20, 26 (9th Cir. 1994).

24    Since this Court has already found that a number of claims raised by Stanley would benefit

25 from Stanley's ability to rationally communicate with counsel, and Stanley cannot rationally

26 communicate with counsel, counsel needs to find alternate sources of information to "set forth

27

28                                                         7

each factual allegation" or allege "specific facts" in the finalized petition.  To be clear, Stanley does not suggest that finding "alternate sources of information" includes formal discovery procedures such as depositions.  Instead, information that habeas counsel would normally obtain from the petitioner may, in some instances, be obtained from others.  However, in Stanley's case finding other sources of information is further complicated by the fact that lead trial counsel has died.

*Gonzales* did not address *how*, if ever, counsel for an incompetent petitioner is to properly file a finalized petition.  However, it did expressly recognize that the incompetency of a petitioner might require equitable tolling.   The Court noted that the debate over whether a statutory right to counsel might include a right to competency has "nothing to do with AEDPA's statute of limitations." *Ryan v. Gonzales, supra,* 133 S. Ct. at 704, n. 6.   "The relevant questions for equitable tolling purposes are whether the petitioner has been pursuing his rights diligently and whether some extraordinary circumstance stood in his way." *Id.*, quoting *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010) and *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  The *Gonzales* court then cited with approval the Ninth Circuit's opinion in *Bills v. Clark*, 628 F. 3rd 1092, 1097 (9th Cir. 2010) for the rule that even non-capital habeas petitioners "who do *not* have a statutory right to counsel...may still avail themselves of equitable tolling if they are mentally incompetent." *Ryan v. Gonzales, supra,* 133 S.Ct. at 704, fn. 6; emphasis in original.

The Ninth Circuit's opinion in *Bills* was just one of several that "recognized equitable tolling in the context of a petitioner's mental illness."  *Bills v. Clark, supra,* 628 F.3rd at 1097. In *Calderon v. District Court (Kelly)*, 163 F. 3rd 530, 541 (9th Cir. 1998), the Ninth Circuit recognized that a habeas petitioner's mental incompetency is "a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control." As a result, "mental incompetency justifies equitable tolling." *Id.*

In *Laws v. Lamarque*, 351 F.3rd 919, 923 (9th Cir.  2003), the Ninth Circuit quoted *Kelly* when it stated: "We have already stated that a 'putative habeas petitioner's mental incompetency

8

1    [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control,' so

2    'mental incompetency justifies equitable tolling' of the AEDPA."

3          None of these opinions granting equitable tolling, however, addressed the precise situation

4    at issue here.  In *Kelly*, *Laws*, and *Bills* a federal petition had already been filed.  In each case the

5    respondent argued that the petition was filed beyond the one-year statue of limitations.  In each

6    case the Ninth Circuit found that, assuming the petition was filed beyond the one-year period,

7    additional time should be tolled if the petitioner was incompetent.  In both *Laws* and *Bills*, the

8    Ninth Circuit remanded the case to the district court "for further factual development" and to

9    determine how much time "should be equitably tolled by virtue of Laws's mental incompetence."

10   *Laws v. Lamarque, supra,* 351 F.3rd at 924-925.

11         Here, in contrast, Stanley has been found incompetent *before* he has filed his finalized

12   petition.  This Court has already determined that there is no reasonable possibility that Stanley's

13   competency will be restored.   (Docket # 106, p. 2.)  Yet, he must prepare and file a finalize

14   petition without access to facts as a result of his incompetency, an extraordinary circumstance

15   beyond his control.  No reported case, including *Gonzales*, suggests how Stanley's undersigned

16   counsel, or the Court, should proceed in this situation.

17         As this Court has already suggested, it may be impossible for Stanley to file a finalized

18   petition.  This Court stated: "It must be emphasized that the present action is still in its most

19   preliminary stage, as Petitioner has not even filed a finalized petition yet...However, Petitioner

20   may be entitled to indefinite equitable tolling of the habeas statute of limitations if he is unable to

21   file a finalized petition due to his incompetency, which could mitigate the cost substantially."

22   (Docket # 106, p. 5, fn. 5.)[1]

23

24        [1]    The Court restated this observation as recently as February 2, 2015.  Then the Court
25   stated that "(Petitioner) has not yet been ordered to file a finalized petition, and per an earlier
     Order, this Court noted that Petitioner might be entitled to indefinite equitable tolling of the habeas
26   statute of limitations, if his permanent incompetency rendered him unable to file a finalized
27   petition."  (Docket # 164, p. 3, fn. 1.)

28                                                    9

1    At this time, Stanley does not contend that he is unable to file a finalized petition due to

2    his incompetency.  At this time it is premature to reach such a conclusion.

3    Instead, Stanley contends that he must be granted additional equitable tolling totaling 90

4    days so he may attempt to prepare and file a complete finalized petition. As set forth below, this

5    additional equitable tolling is necessary so that Stanley may complete preservation discovery

6    already granted by the Court and so Stanley may conduct additional fact development that is made

7    necessary by Stanley's incompetency and the death of lead trial counsel.

8

9    1.    Preservation Discovery

10    On May 10, 2013, this Court granted Stanley's motion for discovery regarding his claims

11    that the prosecutor withheld exculpatory evidence at trial.  (Docket # 97.)  The Court concluded,

12    "Good cause appearing therefore, the Court grant's Petitioner's Motion for *Brady/Napue*

13    Preservation Discovery."  The Court ordered that there was good cause for Stanley to schedule and

14    take the depositions of the trial prosecutor Theodore Landswick, former Alameda district attorney

15    inspector Robert Gannon, former Oakland police officers Ignatius Chin and Michael Sitterud, and

16    former Alameda County criminalist Alan Keel.

17    Stanley's preservation discovery motion was granted while the stay to determine Stanley's

18    competency was still in place.  If the stay is vacated and the running of the statute of limitations

19    resumed, Stanley would have only 127 days to conduct and complete all of the preservation

20    discovery ordered by the Court *and* to prepare and file the finalized petition.  The finalized petition

21    would have to include the facts developed during the preservation discovery.  Under the

22    circumstances, it will not be possible to prepare and file the finalized petition in that time period.

23    The equitable tolling requested by Stanley will permit him to complete the preservation discovery

24    previously ordered by the Court - to the extent that counsel determine it is efficacious to do so - at

25    this time - and to incorporate the facts developed into the finalized petition.

26

27

28                                              10

2.    Necessary Fact Development

As discussed above, this Court has already determined that the protective petition alleged ineffective assistance of counsel claims which could benefit from rational communication with counsel.  Such rational communication is not possible now or ever due to Stanley's incompetence. Stanley's permanent incompetency precludes him from sharing any "private knowledge" of the underlying facts of the offenses or his trial proceedings.  Counsel have not been able to have a rational conversation with Stanley about the offenses of conviction.   Counsel have not been able to have a rational conversation with Stanley about the defense or defenses investigated, prepared, and presented by trial counsel. Counsel have not been able to have a rational conversation with Stanley about his relationship and communications with trial counsel.  Counsel have not been able to have a rational conversation with Stanley about his communications with any of the investigators, psychiatrists, psychologists, or other experts retained by trial counsel.   Counsel have not been able to have a rational conversation with Stanley about mitigating evidence which was presented at trial and mitigating evidence which was not presented at trial, including life history witnesses to his childhood development.  Counsel have not been able to have a rational conversation with Stanley about claims made, or not made, in the state post-convictions proceedings.   In short, counsel have not been able to have a rational conversation with Stanley about any aspect of his case or his representation in state court.

Stanley seeks equitable tolling so he may conduct the essential factual development necessary to fill in the factual gaps created by his incompetence and the death of lead trial counsel. Counsel for Stanley must develop facts in support of numerous ineffective assistance of counsel claims that depend on facts which ordinarily would be provided by a competent petitioner.  These factual allegations are necessary in order for Stanley to allege ineffective assistance of counsel claims in the finalized petition.  If Stanley is not permitted to complete this factual development, it is likely the finalized petition would omit claims that should be included and include claims that do not contain all the necessary factual allegations.  Put another way, the finalized petition would be

11

1    incomplete as a direct result of Stanley's incompetency.

2         As discussed above, the Court noted that the protective petition (Docket # 5) filed by

3    Stanley in 2010 "raised claims that could benefit from his ability to communicate rationally...such

4    as claims that his trial counsel rendered ineffective assistance." (Docket # 39, p. 2; internal

5    quotations deleted.)  The Court specifically listed Claims 7, 25, 34-38, 40-44, 48-53, and 58 in the

6    protective petition as claims which "could benefit from his (Stanley's) ability to communicate

7    rationally" with counsel.  Claim 7, for instance, alleged numerous instances of counsel's

8    ineffective assistance at the guilt phase of trial.

9         No mental state evidence was presented at the guilt phase of Stanley's trial.  Claim 42 of

10   the protective petition alleged that trial counsel "failed to conduct an adequate and complete

11   investigation into petitioner's family history, thus failing to obtain and make known to the

12   psychiatric experts and jurors critical information bearing on petitioner's mental illness."  (Docket

13   # 5, p. 395.)  Had trial counsel conducted a complete investigation, according to the protective

14   petition, they would have obtained evidence that at the time of the offenses Stanley "probably

15   suffered from dementia, had no ability to exercise executive functioning, could not learn from his

16   mistakes, and became more delusional as he grew older."  (Docket # 5, p. 399.)

17        Similarly, Claim 58 of the protective petition alleged that trial counsel was ineffective for

18   failing to investigation and raise a defense of insanity.  (Docket # 5, pp. 465-467.)   Had trial

19   counsel done so, the protective petition alleged, "at the time of his crimes in 1988 and 1989

20   (Stanley) was delusional and in a full-blown manic state...his psychiatric condition was such that

21   he was not capable of distinguishing between moral right and wrong."  (Docket # 5, p. 465.)

22        Other issues appear in the record of Stanley's trial that may form the factual basis for

23   claims not alleged in the protective petition.  For instance, on June 7, 1991, at the end of the guilt

24   phase of trial, a bailiff informed the court that "in a fit of anger" Stanley struck a wall with his

25   hand.  The bailiff informed the court that "a bone might be sticking out of his hand."  (RT 4633.)

26   No further mention is made in the trial record of this incident.  At the next court appearance, on

27

28                                                    12

1    June 11, 1991, while Stanley was not in the courtroom, the trial judge announced on the record that

2    the bailiff had informed him that Stanley planned on attacking one of his attorneys in the

3    courtroom that afternoon. (RT 4635.)  Nothing further is said on the record about this alleged

4    "planned 'attack.'"  Counsel have never had a rational conversation with Stanley about these

5    incidents and whether they affected his trial.

6              Perhaps most importantly, based on information, facts, and evidence developed during the

7    proceedings to determine Stanley's competency, Stanley intends to raise in his finalized petition a

8    number of claims not raised in the protective petition.  For example, this Court found that Stanley

9    "suffers from one or more severe and chronic psychiatric disorders including dementia, due at least

10   in part to organic brain dysfunction caused by frontal-lobe encephalomalacia..."  (Docket # 106, p.

11   2.)  Stanley will set forth claims in the finalized petition that allege this "organic brain dysfunction"

12   existed long before, and certainly at the time of the offenses and at the time of his trial.  Based on

13   these facts, Stanley will plead claims in his finalized petition that he lacked the mental state

14   necessary for conviction of a capital offense, that he was incompetent to stand trial, and that he was

15   incompetent to assist state habeas counsel, among others.  Each of these claims will take three

16   forms.  For instance, the finalized petition will set forth a claim that Stanley was incompetent to

17   stand trial, that trial counsel was ineffective for failing to investigate and present evidence of

18   Stanley's incompetence to stand trial, and that state appellate/habeas counsel was ineffective for

19   failing to raise Stanley's incompetence to stand trial in state post-conviction proceedings.  (See

20   *Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012).)

21             As to *all* of these claims - those alleged in the protective petition, those based upon the

22   trial record but not alleged in the protective petition, and those based on information developed

23   during Stanley's competency proceedings - facts normally obtained from a competent petitioner

24   and trial counsel are not available.  For instance, why trial counsel decided not to present any

25   mental state defense at trial is not presently known. Why trial counsel failed to conduct a complete

26   investigation into Stanley's mental illness is not presently known.  What information trial counsel

27

28                                                        13

1   obtained or could have obtained from Stanley concerning his family history and onset of mental

2   illness is not presently known.   What Stanley was told, or not told, about the evidence or defense

3   that trial counsel intended to present at trial is not presently know.

4          The factual gap created by Stanley's incompetency and the death of lead trial counsel

5   cannot be filled by Richard Hove, co-counsel at trial.   The deposition of Hove was taken by the

6   parties in 2012.  Hove did not appear as counsel of record for Stanley until February 1, 1991.

7   Stanley's trial started with the voir dire of potential jurors on February 26, 1991.  When asked what

8   defense was to be presented at trial, Hove testified that "we did go on a – essentially an ID matter

9   issue, 'I didn't do it' defense because that's what Darren (Stanley), I believe, wanted to do.  (Hove

10  deposition, pp 17-18.)  When asked if he recalled statements Stanley made to defense investigators,

11  Hove testified, "No, I don't, cause I didn't do any investigation on the case."  (Hove deposition, p.

12  97.)  Hove, added, "I never investigated anything."  (Hove deposition, p. 98.)  Hove similarly

13  testified that he could not recall "him (Stanley) talking to me directly about the crime."  (Hove

14  deposition, p. 198.)   When asked specifically about the penalty phase, Hove testified, "Once again

15  I can't say - have to say I don't remember doing any investigation."  (Hove deposition, p. 120.)

16  Concerning mitigating evidence in the form of "background information" on Stanley, Hove

17  testified, "there were a lot of things with Darren (Stanley) that we had difficulty with because as I

18  think I used the term, Lincoln Mintz called Darren an asshole.  Darren had been an asshole all his

19  life..." (Hove deposition, p. 122.)

20         Why trial counsel decided to present a defense based upon the assertion that Stanley

21  "didn't do it" is not presently known.  Hove suggested only a 19-year post-trial "belief" that

22  Stanley "wanted to do" such a defense.  But Hove admitted that he conducted no investigation and

23  he could not recall ever talking to Stanley "about the crime."

24         An ineffective assistance of counsel claim in large part turns on the nature and extent of

25  trial counsel's investigation.  "Counsel can hardly be said to have made a strategic choice when

26  s/he has not yet obtained the facts on which such a decision could be made...however (counsel)

27  failed to conduct a reasonable investigation, nor did he make a reasonable decision rendering

28                                                  14

1   investigation unnecessary." *Bemore v. Chappell*, 788 F.3rd 1151, 1165 (9th Cir. 2015); internal

2   quotations deleted.  *Strickland v. Washington*, 466 U.S. 668, 691 (1984) expressly noted the

3   importance of trial  "counsel's conversations with the defendant" in determining the

4   reasonableness of trial counsel's investigation.  "In short, inquiry into counsel's conversations with

5   the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it

6   may be critical to a proper assessment of counsel's other litigation decisions."  *Id.*

7           Stanley is incompetent.  Lead trial counsel is dead.  Co-counsel at trial "didn't do any

8   investigation on the case."  These are exactly the kind of "extraordinary circumstances" which

9   make equitable tolling appropriate.  In order to properly plead ineffective assistance of counsel

10  claims in the finalized petition, counsel for Stanley must obtain facts from alternate sources.  These

11  alternate sources could potentially include Stanley's friends and family members, if any, who

12  discussed the trial proceedings with trial counsel.  These sources could also include other members

13  of the defense team at trial, such as investigators, jury consultants, paralegals, and other experts.

14  All such sources must be interviewed.  To date, they have not.  Stanley's counsel cannot say at this

15  time whether, in fact, he will be able to fill the factual gap which presently exists.

16

17          C.    Conclusion

18  _____No court has yet addressed how to proceed after finding a petitioner incompetent prior to

19  the filing of a finalized petition.  However, "habeas corpus is, at its core, an equitable remedy."

20  *Schlup v. Delo*, 513 U.S. 298, 319 (1995).  The demands of equity require that Stanley not be

21  penalized because of his incompetency.  Therefore Stanley requests that the Court grant him an

22  additional 90-days of equitable tolling in this case.

23  DATED:        January 25, 2016          Respectfully submitted,
                                            ROGER I. TEICH
24                                          DAVID A. NICKERSON
                                            Attorneys for Petitioner
25                                          DARREN CORNELIUS STANLEY

26
                                            By /s/_____
27                                          DAVID A. NICKERSON
28                                                     15