UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN CORNELIUS STANLEY, | Case No. 07-cv-04727-EMC |
| Plaintiff, | **DEATH PENALTY CASE** |
| v. | **ORDER RE EXHAUSTION; PROPOSITION 66 STAY; MOTION FOR EQUITABLE RELIEF; ADMINISTRATIVE MOTION FOR LEAVE TO FILE SURREPLY; MOTION FOR SANCTIONS; AND REQUEST FOR HEARING RE EXCUSING EXHAUSTION REQUIREMENT** |
| ROBERT AYERS, et al., | |
| Defendants. | |
| | Docket Nos. 226, 228, 260, 262, 274 |

## I.  INTRODUCTION

Petitioner Darren Cornelius Stanley filed a finalized Petition for Writ of Habeas Corpus on October 12, 2016.  Docket No. 252.  On December 12, 2016, Respondent Ron Davis filed a Joint Statement Regarding Exhaustion ("Joint Statement") and a Motion to Dismiss the petition for failure to exhaust all claims ("Motion to Dismiss").  Docket Nos. 259-60.  The Joint Statement informed the Court that the parties agreed Claims 5, 6, 16, 17A, 17B, 17C, 17F, 17G, and 17H were exhausted but disagreed as to the exhaustion status of all other claims.  Docket No. 259 at 2-3.

On January 17, 2017, Petitioner filed an opposition to the Motion to Dismiss.  Docket No. 261.  Petitioner requested a stay until California's Proposition 66 is certified and no longer stayed by the California Supreme Court, renewed his Motions for Equitable Relief and for Sanctions (Docket Nos. 226, 228), and requested that the Court grant a hearing on excusing the exhaustion requirement pursuant to 28 U.S.C. § 2254(e)(2)(A)(ii) & (b)(1)(B) ("section 2254").  Docket No.

261.  Briefing on the various motions ensued.  *See* Docket Nos. 263, 266, 267, and 269.  A hearing was held on March 9, 2017.  Petitioner subsequently filed an Administrative Motion for leave to file a surreply ("Administrative Motion") in relation to his Motion for Sanctions.  *See* Docket No. 274.  Respondent filed an opposition.  *See* Docket No. 275.

For the foregoing reasons, the Court finds that Claims 1, 2, 7, 10, 11, 13, 14, and 19 are fully unexhausted and Claims 3, 4, 8, 9, 12, 15, 17 (including 17D and 17E), 18, and 20 are partially unexhausted.  Respondent's Motion to Dismiss is **DENIED WITHOUT PREJUDICE**. Respondent may renew the motion for the Court's consideration following the filing of Petitioner's motion to dismiss unexhausted claims or request for a stay pursuant to *Rhines v. Webber*, 544 U.S. 269, 277 (2005).  Petitioner's Administrative Motion for leave to file a surreply related to his Motion for Sanctions is **GRANTED**.  Petitioner's request for a stay until Proposition 66 is certified and no longer stayed, request for a hearing on excusing the exhaustion requirement, and Motion for Equitable Relief (Docket No. 226) are **DENIED**.  Petitioner's Motion for Sanctions (Docket No. 228) is **DENIED WITHOUT PREJUDICE**.

## II.  BACKGROUND

Petitioner was sentenced to death by the Superior Court of California in the County of Alameda in 1991.  The California Supreme Court affirmed Petitioner's convictions and death judgment on direct appeal in 2006, *People v. Stanley*, 39 Cal. 4th 913 (2006), and summarily denied his petition for writ of habeas corpus in 2009, *In re Stanley on Habeas Corpus*, S106165. While his state habeas case was still being litigated, Petitioner initiated the present habeas action by asking the Court to appoint counsel and to stay his execution on September 13, 2007. Petitioner, acting *pro se*, filed a protective petition on July 8, 2010.

On November 28, 2011, the Court issued a stay of this matter in order to examine issues related to Petitioner's competency under *Rohan v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003). Docket No. 39.  On July 16, 2013, the stay was partially lifted in order to examine issues related to Petitioner's competency under *Ford v. Wainwright*, 477 U.S. 399 (1986), and to refer the case for

settlement.  Docket No. 106.  After disposing of three previous motions[1] for equitable tolling, on March 10, 2016, the Court lifted its stay and granted Petitioner's fourth Motion for Equitable Tolling.  Docket No. 214.

## III. DISCUSSION

A. Legal Standard

    1. Exhaustion

A federal court may not grant habeas relief until the petitioner has exhausted available state remedies with respect to each claim.  28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270 (1971).  The exhaustion doctrine rests on principles of comity and federalism.  *Rose v. Lundy*, 455 U.S. 509, 515 (1982).  Exhaustion is required to: (1) protect the state court's role in the enforcement of federal law; (2) prevent disruption of state court proceedings; and (3) reduce piecemeal litigation.  *Id*. at 518-20.

A federal constitutional claim is exhausted when it has been "fairly presented" to the highest state court and that court has had a meaningful opportunity to apply controlling legal principles to the facts underlying the claim.  *Picard*, 404 U.S. at 276-77; *Anderson v. Harless*, 459 U.S. 4, 7 (1982); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986).  A claim has been "fairly presented" if the petitioner described in state court both the legal theories and the operative facts on which he bases the claim.  *Picard*, 404 U.S. at 277-78.

To fairly present the legal theory of a claim, a petitioner must alert the state court that he is asserting a federal constitutional claim, either by citing the constitutional provision on which he relies or otherwise advising the court of the claim's federal basis.  *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (petitioner failed to fairly present Fourteenth Amendment due process claim when he alleged only that prejudice outweighed probative value of admitted evidence); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) (petitioner did not fairly present Fourteenth Amendment due process claim by asserting that admission of prior act evidence "infringed on his right to

---

[1] The Court denied without prejudice Petitioner's *pro se* Motion for Equitable Tolling (Docket No. 10), granted in part and denied in part a second motion (Docket No. 26), and denied without prejudice a third motion (Docket No. 106).

present a defense and receive a fair trial"); *Picard*, 404 U.S. at 277-78 (petitioner must present state courts with same claim he urges upon the federal courts); *see Baldwin v. Reese*, 541 U.S. 27 (2004) (petitioner did not fairly present ineffective assistance of appellate counsel claim when he did not explicitly include those words, cite the relevant federal constitutional provisions, or otherwise cite to cases showing he was making a federal claim); *Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2004) (petitioner did not give state appellate court fair opportunity to rule on federal due process claim by concluding his brief with "scattershot citation of federal constitutional provisions" with no articulated federal legal theory).

The factual basis of a claim has been fairly presented as long as the facts subsequently alleged in federal court do not fundamentally alter the nature of the claim presented to the state court, *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994)), place the claim in a "significantly different and stronger evidentiary posture" than it was when the state courts considered it, or "substantially improve[] the evidentiary basis" of the claim. *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988).

Generally, a petitioner may add factual materials supportive of those already in the record without fundamentally altering his claim and rendering it unexhausted. *See Vasquez,* 474 U.S. at 260 (statistical analyses of facts already in record do not render claim unexhausted); *see also Chacon*, 36 F.3d at 1468 (factual basis of claim that interpreter mistranslated guilty plea proceedings was fairly presented where the state court understood accuracy of translation to be at issue). However, where the new facts substantially improve the claim by contradicting evidence the state court already considered, the new factual materials must be presented to the state court. *See Aiken*, 841 F.2d at 883-84 & n.3 (new evidence consisting of decibel level studies of tape of petitioner's confession, which conflicted with evidence state court had considered, substantially improved evidentiary posture of claim and required exhaustion); *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (new allegations regarding petitioner's fetal alcohol syndrome and organic brain damage in ineffective assistance of counsel claim substantially improved evidentiary posture of claim and require exhaustion).

Exhaustion may be excused where it would be futile. *See* 28 U.S.C. § 2254(b)(1);

*Edelbacher v. Calderon*, 160 F.3d 582, 585 (9th Cir. 1998) (requiring "extremely unusual circumstances"); *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981) (exhaustion requirement may be avoided by showing that it would be futile in light of prevailing decisions of highest state court). Section 2254 provides two ways around the exhaustion requirement: "an absence of available State corrective process" or when "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A).

  2. <u>Analysis</u>

  As a threshold issue, Petitioner argues Respondent has the burden of proving nonexhaustion.[2] *See* Docket No. 161 at 3. Respondent disagrees, arguing Petitioner has the burden of showing exhaustion once Respondent raises the issue. Docket No. 263 at 1-2.

  Although neither the Supreme Court nor the Ninth Circuit have explicitly ruled on the issue, federal habeas rules, such as Local Rule 2254-28, suggest that Petitioner is responsible for showing his claims are exhausted. H.R.L.R. 2254-28(b)(4) (petitioner's finalized petition must identify where in the record each claim was exhausted). The circuits which have considered the issue have held a petitioner bears the burden of showing exhaustion after the state raises the issue in habeas corpus. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir.1997), as amended (1998) (habeas petitioner carries burden of proving exhaustion of all available state remedies) (citation omitted), cert. denied, 532 U.S. 919, 121 S.Ct. 1353 (2001); *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.) (burden of proving that claim has been exhausted lies with petitioner) (citation omitted), cert. denied, 522 U.S. 833 (1997); *Olson v. McKune*, 9 F.3d 95 (10th Cir.1993) (state prisoner bringing federal habeas corpus action bears burden of showing that he has exhausted available state remedies) (citation and quotation marks omitted).

  The Court need not resolve the burden question, however, because even if Respondent carried the burden of showing Petitioner's claims were unexhausted, Respondent would have met that burden here. Respondent identified each allegedly unexhausted claim, subclaim, and allegation and explained in detail the basis for his assertion that each item was unexhausted. *See*

---

[2] Because the parties have stipulated that Claims 5, 6, 16, 17A, 17B, 17C, 17F, 17G, and 17H are exhausted, the Court will not include those claims here.

Docket No. 160.  Accordingly, the Court concludes respondent sufficiently raised the defense of nonexhaustion and the Court may therefore rule on the exhaustion status of each of the disputed claims.

        a.     Claim 1

Petitioner argues the trial court violated his constitutional rights by failing to conduct a hearing on his competence to stand trial in violation of his Fifth, Eighth, and Fourteenth Amendment rights.  *See* Docket No. 252, Petition for Writ of Habeas Corpus ("Fed. Pet.") at 61. Respondent argues Claim 1 is fully unexhausted.  Petitioner does not assert the claim has been presented.  The Court has reviewed the record and concludes that Petitioner indeed did not present this claim to California Supreme Court; Claim 1 is therefore fully unexhausted.

        b.     Claim 2

Petitioner argues his constitutional rights were violated by the Court's erroneous exclusion of various qualified jurors under *Witherspoon v. Illinois*, 391 U.S. 510, 521 (1968) and its progeny.  *See* Fed. Pet. at 75.  Respondent argues Claim 2 is fully unexhausted.  Petitioner does not assert the claim has been presented before.  The Court has reviewed the record and concludes Petitioner indeed did not present this claim to the California Supreme Court; Claim 2 is fully unexhausted.

        c.     Claim 3

Petitioner argues the prosecutor's systematic exclusion of five black women from his jury violated *Batson v. Kentucky*, 476 U.S. 79 (1986).  *See* Fed. Pet. at 98.  Respondent argues Claim 3 is unexhausted in part due to various subclaims containing new factual and legal allegations. Petitioner asserts the claim was fairly presented during his automatic appeal.  *See* Docket No. 261 at 11-14.  The Court addresses each subclaim in turn.

    ▪  In his direct appeal, Petitioner argued that the trial court's denial of his *Batson-Wheeler* motions violated his right to equal protection of the laws under the Fourteenth Amendment.  *See* AG007941-89, AOB Vol. II at 140-87.  Petitioner's finalized petition now argues that the prosecutor engaged in gender discrimination by using peremptory challenges on five black women, citing *Batson* and *J.E.B. v. Alabama*, 511 U.S. 127, 128-

29 (1994).  *See* Fed. Pet. at 98, 124, & 148.  Respondent argues the subclaim is unexhausted.  The Court has reviewed the record and concludes that Petitioner has not previously raised a claim of gender discrimination.  His *Batson-Wheeler* motion was based on race only.  Petitioner argues the subclaim is exhausted because "Black women" is a subset of "Black jurors," and by rejecting his *Batson* claim, the California Supreme Court necessarily also found there was no discrimination on the basis of gender.  *See* Docket No. 261 at 14.  The California Supreme Court made no such findings.  *See People v. Stanley*, 39 Cal.4th at 943-45 (analyzing whether prosecutor offered race-neutral explanations for peremptory challenges).  In order to exhaust, the petition must fairly identify the specific claims.  Race and gender discrimination, though they may occur in the conjunctive, are separate and distinct claims requiring distinct findings.  *See Moormann v. Schriro*, 426 F.3d 1044, 1056 (adding new instances of ineffective assistance of counsel to habeas claim constitute new legal theories and are therefore unexhausted); *see also Duncan v. Henry*, 513 U.S. 364, 366 (1995) ("mere similarity of claims is insufficient to exhaust"); *see also Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1051 (9th Cir. 1987) (in wrongful termination action, failure to explicitly argue age and sex discrimination in EEOC complaint in addition to allegation of national origin discrimination renders age and sex discrimination claims unexhausted).  Evidence of discrimination on the basis of gender is likely to differ from that based on race – *e.g.*, any comparative juror analysis that looks to similarly situated comparators is likely to differ.  As Petitioner never advanced a gender-based *Batson-Wheeler* claim in the state court, it was not fairly presented by the race-based challenge.  The subclaim is unexhausted.

- In his direct appeal, Petitioner argued that the prosecutor's assertion that Jurors, F., B., D, (*see* AG007979-81, AOB Vol. II at 177-79) and S (*see* AG007985-86, AOB Vol. II at 183-84) were sympathetic was a sham.  Petitioner also argued that the prosecutor had been unable to provide any reason as to why he thought Juror S. had sympathy for the defendant before the trial court suggested "body language" as a reason; finally, Petitioner argued that the trial court's comment to the prosecution that it "didn't detect anything in [Juror S.'s]

answers that would lead [the trial court to believe] she was sympathetic [to Petitioner]" shows that the trial court was unable to verify the prosecutor's rationale through its own personal observation. *See* AG007979-86, AOB Vol II, at 177-84. In his finalized Petition, Petitioner now argues that the prosecutor merely picked up on the trial court's reasoning that "sympathy for the defendant" would be a legitimate reason to use peremptory challenges on Jurors F., B., and D., and that under Ninth Circuit law, the prosecution's adoption of the Court's proffered language prevents the Court from meaningfully assessing the veracity of the prosecutor's reasons for exercising a challenge. *See* Fed. Pet. at 113-14. Respondent argues that Petitioner never argued that the prosecution adopted the trial court's suggested rationale as to Jurors F., B., or D., and that the subclaim is therefore unexhausted. The Court has reviewed the record and concludes that Respondent is correct. Insofar as Petitioner now incorporates Jurors F., B., and D. into his argument that the trial court failed to scrutinize the veracity of the prosecutor's proffered race-neutral reason for striking Juror S., Petitioner now presents new legal theories that have not been fairly presented to the California Supreme Court. *See Moormann v. Schriro*, 426 F.3d at 1056 (adding new instances of ineffective assistance of counsel to habeas claim constitute new legal theories and are therefore unexhausted); *see also* AG007977-81, AOB Vol II, at 177-80. This argument, if accepted, would substantially strengthen the evidentiary basis of Petitioner's *Batson* claim. The subclaim is unexhausted.

▪ During oral argument for his direct appeal, Petitioner's counsel stated that Juror N. "express[ed] concern that serving as a juror in [Petitioner's] trial would conflict with a convention in Palm Springs she planned on attending," *see* Motion to Dismiss at 16. In the briefing for his direct appeal, Petitioner also argued that "the prosecutor's Palm Springs convention rationale bears closer scrutiny. . . [If the prosecutor] was concerned that [Juror N.]'s time conflict would render her an inattentive juror, why did he not ask that she be excused for cause." *See* AG007959, AG007971-72, AOB Vol. II at 169-70. In his finalized petition, Petitioner now asserts that Juror N. "never said during her voir dire she 'didn't want to be here because she had a convention in Palm Springs.' " *See* Fed. Pet. at

8

110.  Respondent argues that this allegation is unexhausted because Petitioner allegedly conceded, during oral argument for his direct appeal, that Juror N. in fact did not want to serve on Petitioner's jury as a result of the convention in Palm Springs.  *See* Motion to Dismiss at 16.  The Court has reviewed the record and concludes the allegation in the finalized petition was fairly presented to the California Supreme Court: Petitioner now relies on the same portion of the factual record pointed out to the California Supreme Court, and the purported concession by appellate counsel is consistent with and similar to Petitioner's characterization of the evidence in his finalized petition.  The allegation is fully exhausted.

▪ Respondent argues that Petitioner has not exhausted the following subclaims in his finalized petition:  the California Supreme Court relied on false statements made by the prosecutor to the trial court, i.e., that the prosecutor wrote "sympathy for the defendant" in his voir dire notes for each of the contested jurors, and the Attorney General knowingly perpetuated those false statements before the California Supreme Court.  *See* Fed. Pet. at 99, 111-12, 110-223, 130.  In this petition, Petitioner presented new allegations; *e.g.*, that there are notes in the prosecutor's file pertaining to the black jurors in which the prosecutor wrote "Black," "BLACK," or "Dark" for each black juror.  *See* Fed. Pet. at 119-123.  The Court has reviewed the record and concludes that Petitioner has not presented these new and significant allegations to the California Supreme Court; these allegations substantially improve the evidentiary posture of Petitioner's challenge to the credibility of the prosecutor in Claim 3.

Petitioner nevertheless argues that this subclaim is exhausted because the new evidence goes to whether the California Supreme Court made an unreasonable determination of the facts, and that under *McDaniels v. Kirkland*, 813 F.3d 770 (9th Cir. 2015), this Court may consider the evidence despite the fact that it was not presented to the California Supreme Court.[3]  *See* Docket No. 261 at 12-13.  Petitioner's reliance on

---

[3] Petitioner makes various arguments as to Claim 3, including that he is entitled to equitable estoppel and the arguments related to his renewed Motion for Default Sanctions.  *See* Docket Nos.

*McDaniels* is misplaced. *McDaniels* applied only in the context of comparative juror analysis, where the evidence at issue was part of the trial, appellate, or post-conviction record. *Id.* at 780-81. Here, Petitioner references documents that were part of the prosecutor's file, but not the trial court record; the new facts have therefore not been presented to any state court. Moreover, even if the new factual allegations were intended to show whether the state court made an unreasonable determination of the facts, Petitioner must nevertheless exhaust them by presenting them to the state court because they significantly improve the evidentiary posture of his *Batson* claim. *See Aiken v. Spalding*, 841 F.2d at 883; 28 U.S.C. § 2254(d)(2) ("[a]n application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was based on an unreasonable determination of the facts *in light of the evidence presented in the State court proceeding*") (emphasis added); *Cullen v. Pinholster*, 131 S.Ct. at 1400, n. 7 (recognizing that review under § 2254(d)(2) is "plainly limited to the state-court record"). These subclaims are therefore fully unexhausted.

- Respondent argues that Petitioner failed to exhaust the following subclaim in his finalized petition: comparative juror analysis (the comparison of the venirepersons struck and those empaneled) supports Petitioner's *Batson* claim. *See* Fed. Pet. at 132-48. Petitioner concedes that he did not previously present this subclaim to the California Supreme Court, but argues this subclaim is exhausted because the "new" evidence was part of the trial court record. *McDaniels v. Kirkland*, 813 F.3d 770; *see* Docket No. 261 at 13. Petitioner is correct. The subclaim consists of analysis of evidence already in the trial court record and Petitioner's *Batson* claim alerted the California Supreme Court that the disparate treatment of the prospective jurors was at issue. The subclaim is therefore fully exhausted. *See McDaniels*, 813 F.3d 770 (consideration of voir dire and juror questionnaires during federal habeas proceedings was proper even if those items were not presented to appellate

---

261, 228, & 274. The Court will address each of Petitioner's additional arguments in other sections of this order.

10

court because they were part of the state court record); *see also Vasquez,* 474 U.S. at 260 (federal habeas petitioner may apply statistical analysis to facts or information contained in a state record without rendering a claim unexhausted).

- Respondent argues Petitioner failed to exhaust the following subclaim in his finalized petition: the prosecutor's peremptory challenges violate the First, Fifth, Sixth, Eighth, an Fourteenth Amendments, the International Convention of the Elimination of All Forms of Racial discrimination, international customary law to equal protection, and general principles of fairness and due process.[4] *See* Fed. Pet. 98-99. The Court has reviewed the record and concludes that Petitioner did not previously cite to these legal theories, other than the Fourteenth Amendment's equal protection clause, in his *Batson* claim on direct appeal (*see* AG007941-89, AOB Vol. II at 140-87). As Petitioner did not alert the California Supreme Court to these additional legal theories, the subclaim has not been fairly presented and is partially unexhausted. *See Picard,* 404 U.S. at 278 (claim that failure to use grand jury to indict defendant violated Fourteenth Amendment equal protection clause not exhausted when state habeas petition cited only Fifth Amendment due process as basis for federal violation); *id.* at 277-78 (petitioner must present state courts with same claim he urges upon the federal courts).

- Respondent argues that the following allegation is unexhausted: the Alameda County District Attorney's Office, including the prosecutor in Petitioner's case, had a pattern of excusing "black jurors, particularly black women" (Fed. Pet. at 132) at the time of Petitioner's trial. The Court has reviewed the record and concludes Petitioner did not present this allegation to the California Supreme Court. Petitioner presented no evidence

---

[4] Petitioner lists the following general principles of fairness: the rights "to be tried before a fair and impartial tribunal and a fair and impartial jury; to due process; to judicial proceedings free of racial, gender, religious, and ethnic animus; to confrontation of witnesses; to compulsory process; to notice of the evidence against him; ... to the presumption of innocence; and to fair, accurate and reliable guilt, death-eligibility, and penalty determinations free from unconstitutionally impermissible risk that consideration of race, gender, ethnicity, and religion, influenced the outcome of the prosecutor's purposeful, invidious discrimination and racial, gender, ethnic, and religious animus in his use of peremptory challenges to remove... African American women from [Petitioner's] jury."

of a pattern of conduct by the District Attorney.  Because the new allegation substantially improves the evidentiary posture of Petitioner's *Batson* claim, this subclaim is fully unexhausted.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted: the California Supreme Court has systematically denied virtually every *Batson* claim it has ever addressed and regularly violates clearly established federal law and regularly makes an unreasonable determination of the facts in *Batson* claims.  This subclaim was never presented to the California Supreme Court.  The subclaim is therefore fully unexhausted.

Based on the aforementioned, Claim 3 is partially unexhausted.

        d.    <u>Claim 4</u>

Petitioner argues the prosecution violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by failing to disclose various pieces of exculpatory and impeachment evidence and failing to correct false testimony.  *See* Fed. Pet. at 149.  Respondent argues Claim 4 is unexhausted in part due to various subclaims containing new factual and legal allegations; Petitioner asserts he exhausted the claim on direct appeal.  The Court addresses each subclaim in turn.

- In his state habeas petition, Petitioner alleged that the prosecutor committed a *Brady* violation when he failed to turn over a CYA report.  The CYA report, which was not turned over to Petitioner during trial, contained two arguably-favorable psychological reports diagnosing Petitioner with Cyclothymic Disorder.  The state habeas petition also cites/included a portion of the trial transcript in which Petitioner's counsel, Walter Cannady, tells the trial court that he received a certified letter from the CYA stating that they did not have a copy of Petitioner's CYA report; the CYA.  *See* AG009676-77, State Pet. at fn. 12, 97-98 ("Mr. Stanley's trial attorney reminded the court that Mr. Landswich [prosecutor] had never produced defendant's CYA records"); s*ee also* AG009993, State Pet. Exh. W (trial transcript excerpt containing Cannady's conversation with the trial court).  In his finalized petition, Petitioner now includes the CYA's certified letter to trial

counsel as support for Petitioner's claim that trial counsel tried, but was unable, to obtain a copy of the CYA report. *See* Fed. Pet. at 159. Respondent argues that Petitioner's inclusion of the CYA letter addressed to Cannady constitutes new evidence and is therefore unexhausted. The Court has reviewed the record and concludes that Petitioner fairly presented this subclaim. Cannady referred to the letter and its contents in a colloquy with the trial court and Petitioner cited to the conversation with the court about the lack of CYA records in his state habeas petition. Because the contents of the actual letter were already in the record, the inclusion of a copy of the letter in the federal habeas petition does not significantly alter the claim presented to the California Supreme Court. The subclaim is fully exhausted.

▪ In his state habeas petition, Petitioner asked the California Supreme Court to take judicial notice of the record in a mandamus action[5] and introduced Landswick's declaration stating that all *Brady* discovery had been turned over. *See*, *e.g.*, AG009593-94, State. Pet. at 14-15, AG009891-92, Exh. R (Decl. of Theodore T. Landswick) at 1-2. Petitioner also argued in his state habeas petition that Landswick's declaration (referenced above) was "untrue" because the Alameda County District Attorney's office had not turned over the CYA report. *See* AG009593, State Pet. at 14. In his finalized petition, Petitioner now alleges— in support of his *Brady* claim—that because Petitioner's writ of mandamus sought all possible exculpatory evidence/all deals involving prosecution witnesses, and Landswick's declaration stated that all *Brady* documents and discovery had already been turned over, the newly discovered evidence shows that Landswick's declaration was false. The finalized petition also alleges that Petitioner was unable to pursue additional *Brady* discovery in state court after his mandamus claim was rejected (citing *Gonzalez v. Wong*, 667 F.3d 965, 978 (9th Cir. 2001)). *See* Fed. Pet. at 151-52.

Respondent argues that Petitioner's allegations related to the writ of mandamus, including Petitioner's assertion that the denial of the writ made it impossible for Petitioner

---

[5] Petitioner's mandamus action sought to obtain various pieces of exculpatory evidence from the Alameda County District Attorney's Office.

to pursue additional *Brady* discovery, are unexhausted because they constitute new factual allegations and legal bases for habeas relief. The Court has reviewed the record and concludes that Petitioner fairly presented the factual allegations regarding his mandamus case when he asked the California Supreme Court to take judicial notice of the record in the mandamus action and introduced Landswick's declaration in asserting he was unable to obtain exculpatory records. As to the new legal citation, Petitioner cites *Gonzalez v. Wong* for the proposition that he was not able to pursue further state remedies after denial of his writ of mandate; but this does not introduce any other federal grounds for relief and therefore does not fundamentally alter or substantially improve the evidentiary posture of the claim presented before the California Supreme Court. *See Picard*, 404 U.S. at 277-78 (petitioner must present state courts with same claim he urges upon federal courts). The subclaim is fully exhausted.

- In his state habeas petition, Petitioner argued that the prosecutor violated *Brady* when he described Petitioner as "a person who has no soul," "no remorse," and as "cold-blooded" were deceptive, improper, and unfair because the prosecution was aware that Petitioner had been diagnosed by Dr. Robinson (in the CYA report) with Cyclothymic Disorder and Petitioner's criminal behavior was rooted in his mental illness. *See* AG00009681-84, State Pet., at 102-05. In his finalized petition, Petitioner now argues that the prosecutor violated *Brady* when he argued to the jury that CYA therapists found Petitioner lacked remorse and ignored CYA efforts for rehabilitation, an argument Petitioner states is "at odds" with the CYA report. *See* Fed. Pet. at 160. The Court has reviewed the record and concludes that Petitioner exhausted this allegation by raising it in a substantially similar fashion in his state habeas petition. The allegation is fully exhausted.

- In his state habeas petition, Petitioner argued, in the context of his *Brady* claim, that had Drs. Pierce and Benson been able to review the CYA report, they would have testified in a way that could have "supported a potentially successful defense that [P]etitioner was legally insane at the time of the homicide and the other charged offenses." *See* AG009677, State Pet. at 98. Petitioner also argued in his state habeas petition that had they had the

CYA report, Drs. Pierce and Benson could have testified that Petitioner suffered from Bipolar Disorder, Manic Type, or Mood Disorder, making it probable that Petitioner would not have been sentenced to death. *Id.* In his finalized petition, Petitioner now argues that the CYA report could have provided the basis for a guilt phase defense of imperfect self-defense, as well as mitigation for the penalty phase under Penal Code section 190.3(a) (circumstances of crime), 190.3(d) (influence of extreme mental or emotional distress), 190.3(h) (impaired capacity to appreciate or conform his conduct to the requirements of law due to mental disease or defect, or the effects of intoxication), and 190.3(k) (any other extenuating circumstance). *See* Fed. Pet. at 162.

Respondent argues that Petitioner's subclaims are unexhausted because they constitute new legal theories that fundamentally alter the claim decided by the California Supreme Court. The Court has reviewed the record and concludes that although Petitioner never argued before the California Supreme Court that the prosecutor's failure to turn over the CYA report prevented him from claiming imperfect self-defense or present mitigation under Penal Code section 190.3(a), Petitioner nevertheless fairly presented the claim by providing the operative facts and citing the applicable federal basis of his subclaim through his citations to *Brady* and by arguing that failure to provide the CYA report impaired his ability to mount a defense related to his mental illness at both the guilt and penalty phases of trial. *See* AG009675-77, State Pet. at 96-98 (citing *Brady* and the Fifth, Sixth, Eighth, and Fourteenth Amendments). This subclaim is fully exhausted. *See* AG009661 & AG009677, State Pet. at 82 & 98.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted: the trial court's order requiring the Alameda County District Attorney's Office and the Oakland Police Department to use "reasonable means" to preserve specified evidence offered at trial and reports/notes related to the case was inadequate and insufficient to preserve evidence related to Petitioner's claims (such as information regarding cases built against Issac Stanley, who testified against Petitioner during trial) because it was limited to preservation of evidence in Petitioner's case only. *See* Fed. Pet.

at 152.  The Court has reviewed the record and concludes the subclaim was never presented to the California Supreme Court.  Because the destruction of evidence resulting from an ineffective preservation order may substantially improve the evidentiary posture of Petitioner's argument that he was prejudiced by the prosecutor's alleged *Brady* claims, the allegation is fully unexhausted.

▪ Respondent argues that the following allegations are unexhausted:  the prosecutor withheld the identity of the evaluators (Dr. Robinson and Dr. Nicholas) who created Petitioner's CYA report; had Dr. Nicholas been called to testify at trial, he would have testified that Petitioner's symptoms suggested mental illness, poor contact with reality, attention deficits, grandiose delusions, and thought disturbance.  *See* Fed. Pet. at 160-61.  The Court concludes that Petitioner did not present these allegations to the California Supreme Court. Although Petitioner's allegation that the prosecutor withheld the identity of the evaluators itself does not fundamentally alter Petitioner's claim on state habeas because it falls into Petitioner's general claim that the prosecution failed to turn over the CYA report containing the evaluators' names, Petitioner's argument that Dr. Nicholas would have testified that Petitioner's symptoms suggested mental illness, poor contact with reality, attention deficits, grandiose delusions, and thought disturbance had he been called to testify at Petitioner's trial constitutes new evidence that would significantly bolster the evidentiary posture of Petitioner's *Brady* claim; it is therefore partially unexhausted.[6]

▪ Respondent argues the following subclaims in Petitioner's finalized petition are unexhausted: the prosecutor committed *Brady*/*Napue* violations when he failed to turn over exculpatory evidence related to Issac Stanley and criminalist Alan Keel.  *See* Fed. Pet. at 164-65.  Specifically, Petitioner argues that the prosecution failed to disclose that Landswick dismissed five 1990 felony charges against Issac Stanley and offered misdemeanor pleas for time served in exchange for Issac Stanley's testimony against

---

[6] The Court could not locate a filed copy of the cited declaration by Dr. Nicholas, but Petitioner's counsel previously stated in a declaration that Dr. Nicholas did not retain any records or have any recollection of Petitioner.  *See* Docket No. 87, Exh. 2 at 1.

Petitioner at trial. *See* Fed. Pet. at 166. Petitioner also argued that the prosecution failed to disclose that Keel was suspended from some of his regular duties at the Oakland Police Department crime lab during 1990 for making errors in his blood analysis. *See* Fed. Pet. at 164.

As a threshold matter, the Court concludes that the allegations related to Issac Stanley and Alan Keel fundamentally alter Petitioner's previous *Brady* claim because they would substantially improve the evidentiary posture of his argument that the state's *Brady* violations deprived him of a fair trial. Petitioner does not dispute that he has not presented the allegations to the California Supreme Court, but argues, citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004), that the Court should excuse the exhaustion requirement due to the state's failure to turn over the material evidence relating to Isaac Stanley and Alan Keel until *after* Petitioner initiated his federal habeas proceedings. *See* Docket No. 261 at 7.

*Banks* is inapposite. *Banks* was decided under the pre-AEDPA federal habeas scheme and nevertheless held that the petitioner, Banks, had already exhausted the legal basis for his claim in state court by arguing that the prosecution failed to turn over exculpatory evidence related to an informant named Farr. *Banks*, 540 U.S. at 690. Under the pre-AEDPA scheme, a petitioner could supplement the factual basis of a claim through an evidentiary hearing if he could show cause for his failure to develop the facts in state court and actual prejudice resulting from that failure.[7] *See Banks*, 540 U.S. at 690-91. The pre-AEDPA federal district court, which was not subject to section 2254(d)(2)'s directive that review of factual determinations must be based on the evidence presented in state court, could consider the new evidence in granting or denying the petition for writ of habeas corpus without requiring the petitioner to return to state court to present the new

---

[7] Some situations covered in the statute included: when a factual dispute was not resolved; when the state's factual determination was not supported by the record; when the state's fact-finding procedure was inadequate; when there was substantial new evidence; when the material facts were not developed at the state court hearing; or when, for any reason, it appeared that the state trier of fact did not afford the petitioner a full and fair hearing on a factual issue. *See Keaney v. Tamayo-Reyes*, 504 U.S. 1, 17 (1992) (O'Connor, J., dissenting) (citing *Townsend v. Sain*, 372 U.S. 293 (1963)).

facts.  Accordingly, in *Banks*, when the petitioner showed cause and prejudice as a result of the prosecution's suppression of impeaching evidence related to Farr, the Supreme Court was able to grant him relief without requiring additional exhaustion proceedings.  *See id.* at 703.

Under AEDPA, however, the Supreme Court has unequivocally stated that a district court is "plainly limited to [reviewing § 2254 claims based on] the state-court record," and petitioners must therefore exhaust substantial new factual allegations unless they meet an exception under § 2254(b), such as when there is an absence of state corrective process or circumstances exist that render process ineffective.  *Cullen v. Pinholster*, 131 S.Ct. at 1400, n. 7.  The cause and prejudice analysis in *Banks* is simply not applicable to AEDPA cases in the context of exhaustion.  Here, Petitioner does not dispute that AEDPA applies and concedes he has not previously presented the legal or factual basis for the Issac Stanley and Alan Keel *Brady* subclaims in state court.

Petitioner also argues that the Court should excuse the exhaustion requirement because he can show cause and prejudice for any procedural default.  Petitioner appears to conflate the concepts of procedural default and exhaustion, which are related, but ultimately different, inquiries.  On one hand, the exhaustion doctrine requires a petitioner to exhaust any available state remedies.  28 U.S.C. § 2254(b).  On the other, procedural default places constraints the district court's ability to consider the merits of a claim.  *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).  Accordingly, a showing of cause and prejudice for procedural default has no direct bearing on exhaustion; it is relevant only to whether a federal court may reach the merits of a procedurally-defaulted claim.  *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).  Moreover, while procedural default sometimes overlaps with the exhaustion doctrine in that procedural default can effectively foreclose a petitioner's access to state remedies, the overlap ends there; a district court will not excuse exhaustion if a petitioner still has a state remedy available.  *See Coleman v. Thompson*, 501 U.S. at 731-32 (petitioner who has procedural defaulted his federal claims meets technical requirements for exhaustion when state remedies are no longer available to

18

him); *see also* 28 U.S.C. § 2254(c) (petitioner has not "exhausted the remedies available in the courts of the State . . . if he has a right under the law of the State to raise, by any available procedure, the question presented").

Here, Petitioner has failed to show that his claim would be procedurally defaulted if sent back to state court for exhaustion proceedings or that exhaustion should be excused based on any of section 2254(b)'s provisions. On the contrary, Petitioner's argument that the nonexhaustion was caused by the state's suppression of evidence can presumably be made before the California Supreme Court to cure any procedural default. *See In re Clark*, 5 Cal. 4th 750, 775 (1993) ("where the factual basis for a claim was unknown to the petitioner and he had no reason to believe that the claim might be made, or where the petitioner was unable to present his claim, the court will . . . consider the merits of the claim if it is asserted as promptly as reasonably possible).

Petitioner has failed to cite any relevant authority showing the exhaustion requirement should be excused for these subclaims. The subclaims are fully unexhausted. Based on the aforementioned, Claim 4 is partially unexhausted.

      e.    <u>Claim 7</u>

Petitioner argues that he was denied effective assistance of counsel because trial counsel failed to assert he was incompetent to stand trial. *See* Fed. Pet. at 238. Petitioner concedes that the claim is unexhausted. *See id.* at 239. Claim 7 was never presented to the California Supreme Court. It is therefore fully unexhausted.[8]

      f.    <u>Claim 8</u>

Petitioner argues that counsel was ineffective at the guilt phase of trial by failing to conduct an adequate investigation into Petitioner's family/personal history and failing to enter an insanity plea. *See* Fed. Pet. at 245. Respondent argues that Claim 8 is unexhausted in part due to

---

[8] In his finalized petition, Petitioner alleges several pages of facts under the subheading "omnibus facts in support of ineffective assistance of counsel claims," ("Omnibus Facts") which are incorporated by reference in claims 7, 8, and 9. Respondent asserts the Omnibus Facts are unexhausted. As Claim 7 is already fully unexhausted, the Court will consider the Omnibus Facts in the next section.

1    various subclaims containing new factual and legal allegations. Petitioner asserts the claim was

2    exhausted in his state habeas proceedings. *See* Fed. Pet. at 245; Docket No. 261 at 15. The Court

3    addresses each subclaim in turn.

- In his finalized petition, Petitioner alleges several pages of Omnibus Facts, which are

  incorporated by reference in claims 7, 8, and 9 (*see ante*, fn. 8). Respondent argues that

  the Omnibus Facts are unexhausted because they include new allegations related to

  Petitioner's trial counsel and trial team. In summary, the Omnibus Facts include:

  allegations regarding the appointment and succession line of Petitioner's trial attorneys,

  including Lincoln Mintz, Walter Cannady, Richard Humphrey, and Richard Hove, as well

  as some of their funding requests, correspondence, and disciplinary history. The Omnibus

  Facts also include billing histories and other correspondence to/from defense investigator

  Brian Olivier and Drs. William Pierce and Samuel Benson; summaries of the testimonies

  of several defense witnesses; allegations regarding Petitioner's mental illness and

  medical/mental health history both prior to and after his conviction; Petitioner's family

  history; Petitioner's criminal history; Petitioner's CYA history; contents of the CYA

  report; reports of Petitioner's drug use and personality; reports regarding various incidents

  Petitioner was involved in while incarcerated awaiting trial for this case; and a reference to

  an order by this Court holding that Petitioner. *See* Fed. Pet. at 180-237. The Court has

  reviewed the record and concludes that Petitioner failed to present many of the allegations

  in the Omnibus Facts to the California Supreme Court. For example, Petitioner has never

  presented his trial counsel's billing histories showing the small number of hours they spent

  on investigation or negative disciplinary history showing Mintz was disbarred after a "long

  pattern" of incompetence and that Hove, co-counsel at Petitioner's trial, was also disbarred

  in 2008. *See* Fed. Pet. at 182-88, 211. Petitioner did not present letters from attorney

  Humphrey (who left Petitioner's defense team shortly before the start of trial), expressing

  concern that penalty phase defense work had yet to be started and seeking to take on the

  responsibility of conducting investigation on Petitioner's drug dependency and

  psychological make-up. *See* Fed. Pet. at 191. Petitioner never introduced evidence that

Cannady and the rest of the defense team did not begin penalty phase investigation until a week after the guilt phase of trial began.  *See* Fed. Pet. at 211.  Petitioner also never presented evidence that Cannady misrepresented the amount of funds he intended to use for penalty phase investigation, causing him to run out of money before conducting the minimum amount of hours dedicated to penalty phase investigation recommended by Drs. Benson and Pierce, as well as Olivier, before trial.  *See* Fed. Pet. at 191-213.  If proven, these facts would support Petitioner's ineffective assistance of counsel claims by showing that his defense team failed to do what was necessary to ensure that it investigated Petitioner's mental health and overall background, and would certainly be relevant in determining whether any of these failures were due to incompetence or strategic in nature. *See Strickland v. Washington*, 466 U.S. 668 (defendant is entitled to effective assistance of counsel); *Wiggins v. Smith*, 539 U.S. 510 (2003) (counsel has duty to perform reasonable investigation); *Williams v. Taylor*, 529 U.S. 362 (2000) (counsel must conduct investigation into defendant's background for penalty phase of trial).  Accordingly, as Petitioner's new factual allegations would substantially improve the evidentiary posture of Petitioner's ineffective assistance of counsel claims, the new factual allegations in the Omnibus Facts must be exhausted. [9]

- In his state habeas petition, Petitioner argued that trial counsel's failure to adequately investigate Petitioner's family/personal history, and failure to provide psychiatric experts and jurors with critical information about Petitioner's mental illness, violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the federal constitution, including his right to effective assistance of counsel.  *See* AG009650-63, State Pet. Vol. I at 71-84.  In his finalized petition, Petitioner now argues that his confinement and sentence are illegal, unconstitutional, and void under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, his rights to due process, equal protection, assistance of counsel, a fair trial, and a reliable determination of guilt, because

---

[9] Insofar as the Omnibus Facts are incorporated by reference into Claims 7 and 9, they are also unexhausted as to those claims.

defense counsel failed to adequately investigate, prepare, and present a defense (citing *Strickland v. Washington*, 466 U.S. 668). *See* Fed. Pet. at 245. Respondent argues that the subclaim is partially unexhausted because Petitioner never argued his right to equal protection under any constitutional amendment was violated by ineffective assistance of counsel at the guilt phase. The Court has reviewed the record and concludes Respondent is correct. Petitioner now presents a new federal legal ground for relief; the subclaim is unexhausted. *See Picard*, 404 U.S. at 278 (claim that failure to use grand jury to indict defendant violated Fourteenth Amendment equal protection clause not exhausted when state habeas petition cited only Fifth Amendment due process as basis for federal violation); *id.* at 277-78 (petitioner must present state courts with same claim he urges upon the federal courts).

- In his finalized petition, Petitioner alleges that his counsel, "collectively and singularly," provided assistance that was constitutionally deficient and that counsel's deficient representation severely prejudiced Petitioner and "collectively and singularly" failed to adequately investigate and present an insanity defense at the guilt phase of trial. Petitioner also argues that counsel's failure to provide constitutionally adequate representation deprived him of the presentation of a defense that would have resulted in a verdict of not guilty by reason of insanity. *See* Fed. Pet. at 246. The Court has reviewed the record and concludes that Petitioner's argument is essentially an assertion of cumulative error. Petitioner had not previously made any allegations regarding appointed counsel other than Cannady; accordingly, insofar as the claim of cumulative error relies on Petitioner's unexhausted Omnibus Facts (*see ante*, at 20-21), the subclaim is unexhausted.

- In his state habeas petition, Petitioner argued that trial counsel was ineffective in failing to be aware of and raise a potentially successful insanity defense on Petitioner's behalf. *See* AG0099724, State Pet. at 145. In his finalized petition, Petitioner now argues that trial counsel could have argued that Petitioner was not the person who stabbed Rubaclava, as he did so in trial, and then also present a defense that Petitioner was insane without prejudice to Petitioner's case if the jury rejected the first defense. Petitioner also argues that counsel

knew the jury would reject the defense that Petitioner was not the person who stabbed Rubaclava.  *See* Fed. Pet. at 247.

Respondent argues that the subclaim is unexhausted because it includes new facts and legal arguments.  The Court has reviewed the record and concludes that Petitioner never alleged that California law allowed Petitioner to present both the identification and insanity defenses, nor did he allege that Cannady knew the jury would reject the identification defense.  However, the new allegations do not raise any alternate federal grounds for relief or fundamentally alter Petitioner's claim that counsel was ineffective in failing to raise an insanity defense.  *Vasquez*, 474 U.S. at 260 (factual basis of a claim fairly presented as long as facts subsequently alleged in federal court do not fundamentally alter nature of the claim presented to the state court).  The subclaim is therefore exhausted.

▪ In his finalized petition, Petitioner makes several factual allegations related to his jail medical records in support of his claim that trial counsel was ineffective in failing to investigate his background and raise an insanity defense.  Respondent argues that Petitioner failed to exhaust the factual allegations.  Petitioner's factual allegations for his current proceedings, as well as his allegations during his state habeas, are as follow:

| *Finalized Petition* | *State Habeas Petition* |
| --- | --- |
| Medical staff at the county jail holding Petitioner began medicating Petitioner with Mellaril/Thioridazine, an anti-psychotic medication used in the treatment of schizophrenia.  During his incarceration, he was described as agitated, hostile, tired, drowsy, and sleeping more than 8 hours a day.  Petitioner reported seeing bugs and was described as hallucinating. Dr. Robinson made a provisional diagnosis of bipolar disorder, manic type, and several | Had counsel conducted a competent investigation, counsel would have discovered the CYA report, which included psychiatric evaluation by Dr. Robinson. Dr. Robinson made a provisional diagnosis of Petitioner as suffering from bipolar disorder, manic type," then revised the diagnosis to cyclothymic disorder.  She recommended lithium for mood stabilization.  Had counsel obtained the CYA report, he would have been made |

23

other diagnoses in the CYA report. Had Mintz obtained any of Petitioner's jail, medical, or CYA records, he would have recognized Petitioner was exhibiting distinctive mood cycling and other signs of a major affective disorder shortly after his arrest; he would have discovered that a meritorious insanity defense could and should have been presented at trial. *See* Fed. Pet. at 248-249.

aware of Drs. Robinson and Nicholas' reports indicating Petitioner exhibited mood cycling and Cyclothymic disorder. The information would have allowed Drs. Benson and Pierce to testify in a way supporting an insanity defense and would have constituted powerful mitigating evidence. Dr. Benson would have also testified that there was a continuum in Petitioner's juvenile criminal behavior and his adult crimes. *See* AG009654-56, AG009660-61, State Pet. at 75-77; AG009757-58, State Pet., Exh. A at 2-3 (stating that jail medical records indicate that Petitioner was prescribed Mellaril, a tranquilizer used to treat psychosis).

The Court has reviewed the record and concludes that Petitioner presented allegations regarding the jail records and the CDC's prescription of Mellaril to the California Supreme Court during his state habeas review by citing Dr. Benson's declaration (*see* AG009757-58, State Pet., Exh. A at 2-3) in his ineffective assistance of counsel claim. Moreover, Petitioner previously alleged that reasonably competent counsel would have "conducted an investigation into [P]etitioner's mental health history and . . . past experiences with the criminal/justice system." *See* AG009655, State Pet. at 76. To the extent the subclaim raises more details about the contents of the jail medical records, including that Petitioner was described as agitated, hostile, tired, drowsy, was sleeping more than 8 hours a day, reported seeing bugs, and was described as hallucinating, the details do not fundamentally alter Petitioner's state habeas claim. Petitioner presented substantial operative facts to the state court, i.e., that Petitioner showed signs of mental illness, which was evidenced by his

CYA report, CDC file, family history, and family/friends' accounts of Petitioner's behavior. Petitioner also presented to the state court the relevant legal theory, i.e., that counsel was ineffective in failing to investigate and obtain the jail, medical, or CYA records and use them to mount an insanity defense or as mitigation evidence. This subclaim is therefore exhausted.

- Respondent argues that the following allegation is unexhausted: Cannady would have discovered Petitioner's history of mental illness had he entered an insanity plea on his behalf. *See* Fed. Pet. at 247. The Court has reviewed the record and concludes the allegation is substantially similar to Petitioner's state habeas claim that counsel was ineffective in failing to raise a defense of insanity. *See* AG009724-27, State Pet. at 145. The subclaim is exhausted.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted: Petitioner's first appointed counsel, Mintz, incompetently represented Petitioner after he was appointed in February 1989 and failed to hire an investigator or mental health expert or speak to Petitioner's family; failed to obtain any of Stanley's records, including school, jail, juvenile, or CYA records containing crucial information about Petitioner's mental and medical health; and then billed Alameda County for a total of 24.3 hours over the course of ten months. *See* Fed. Pet. at 248-49. The Court has reviewed the record and concludes that Petitioner has not previously presented these allegations to the California Supreme Court. While Mintz played only a pretrial role in Petitioner's trial representation, the allegations, if proven, would substantially improve the evidentiary posture of Petitioner's argument that his appointed attorneys' cumulative failures, including the failure to conduct adequate pretrial investigation or enter an insanity plea on Petitioner's behalf, amounted in ineffective assistance of counsel. *See Wiggins*, 539 U.S. at 535 (failure to investigate may constitute ineffective assistance of counsel). The subclaim is unexhausted.

- Respondent argues that the following allegations are unexhausted: Cannady and his co-counsel Humphrey failed to obtain relevant documents and records, including Petitioner's

25

CYA records and his medical/psychiatric records from the county jail, and Humphrey abandoned Petitioner two months prior to the start of his trial. *See* Fed. Pet. at 250. The Court has reviewed the record and concludes that Petitioner has not previously presented evidence regarding Humphrey's behavior as appointed counsel; while Humphrey played only a pretrial role in Petitioner's trial representation, the allegations regarding Humphrey's failure to obtain relevant documents pertaining to Petitioner's mental illness, as well as his abandonment shortly before trial, would substantially improve the evidentiary posture of Petitioner's claim that his appointed attorneys' cumulative failures, including the failure to conduct adequate pretrial investigation or enter an insanity plea on Petitioner's behalf, amounted to ineffective assistance of counsel. *See Wiggins*, 539 U.S. at 535 (failure to investigate may constitute ineffective assistance of counsel). The subclaim is therefore unexhausted.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted:  Cannady's representation was inadequate when he chose not to enter an insanity plea even after being presented with a number of reports from Drs. Benson and Pierce stating Petitioner had grandiose delusions, poor reality contact, thought disturbance, and loss of memory.  Petitioner also told his investigator, Olivier, that he was born in New York and lived there until he entered the sixth grade, which was not true. *See* Fed. Pet. at 250.  The Court has reviewed the record and concludes Petitioner never presented allegations related to Olivier in the California Supreme Court; however, the allegation that Petitioner said he lived in New York does not substantially alter the claim that counsel was ineffective in failing to raise an insanity defense given Petitioner's signs of mental illness. *See Seidel v. Merkle*, 146 F.3d 750, 755 (9th Cir. 1998) (counsel cannot ignore abundant signs of mental illness); *Daniels v. Woodford*, 428 F.3d 1181, 1203-04 (9th Cir. 2005) (counsel may not rest on a preliminary examination in deciding to abandon mental health defense).  The subclaim is exhausted.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted because it includes new factual and legal allegations:  Petitioner incorporates

26

by reference "all previous and subsequent claims and facts alleged in" his federal petition (Fed. Pet. at 246). Respondent is correct. To the extent Claim 8 incorporates legal arguments and facts from his unexhausted claims, Claim 8 is unexhausted.

Based on the aforementioned, Claim 8 is partially unexhausted.

g.  Claim 9

Petitioner argues that he was denied effective assistance of counsel at the penalty phase of trial by failing to investigate, prepare, and present readily available mitigating evidence on Petitioner's behalf. *See* Fed. Pet. at 251. Respondent argues Claim 9 is unexhausted in part due to various subclaims containing new factual and legal allegations. Petitioner asserts the claim was exhausted in his state habeas proceedings. *See* Fed. Pet. at 251. The Court addresses each subclaim in turn.

- In his state habeas petition, trial counsel's failure to adequately investigate Petitioner's family/personal history, including Petitioner's CYA records, and failure to provide psychiatric experts and jurors with critical information about Petitioner's mental illness violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the federal constitution. *See* AG009650-63, State Pet. Vol. I at 71-84. In his finalized petition, Petitioner now argues he was denied the effective assistance of counsel at the penalty phase of trial; and that his confinement and sentence are illegal, unconstitutional, and void pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, his rights to due process, equal protection, assistance of counsel, a fair trial, and a reliable determination of guilt (citing *Strickland v. Washington*). *See* Fed. Pet. at 251.  Respondent argues that the subclaim is unexhausted because it includes a new legal theory. The Court has reviewed the record and concludes that Petitioner did not cite the Fourteenth Amendment's equal protection clause or otherwise provide notice to the California Supreme Court that his right to equal protection under any constitutional amendment was violated by ineffective assistance of counsel at the penalty phase of trial. As Petitioner's new constitutional argument was never fairly presented in state court, the subclaim is partially unexhausted. *See Picard*, 404 U.S. at 277-78 (petitioner must present

state courts with same claim he urges upon the federal courts); *see also Castillo v. McFadden*, 399 F.3d at 1002 (petitioner did not give state appellate court fair opportunity to rule on federal due process claim by concluding his brief with "scattershot citation of federal constitutional provisions" with no articulated federal legal theory).

▪ In his finalized petition, Petitioner cites various cases in support of his claim that trial counsel had a duty to investigate Petitioner's background. Respondent argues that Petitioner has not exhausted the subclaim because Petitioner's citations introduce new legal theories fundamentally altering the claim presented to the California Supreme Court. Petitioner's federal and state habeas petition subclaims are set forth below:

| *Federal Petition* | *State Habeas Petition* |
|---|---|
| Petitioner cites the following cases to support his allegations of ineffective assistance of counsel: *Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (counsel must investigate defendant's background); *Caro v. Calderon*, 165 F.3d 1223, 126-27 (all relevant mitigation must be unearthed for penalty phase of capital case; failure to investigate defendant's organic brain damage may be ineffective assistance of counsel; counsel must inquire into social background, family abuse, substance abuse, and medical history, and must obtain health/school/criminal records); *Bemore v. Chappell*, 788 F.3d 1151, 1171 (9th Cir. 2015) (counsel's duty to follow up on indicia of mental illness much broader during penalty phase of capital case). *See* | Petitioner cited the following cases to support his allegations of ineffective assistance of counsel: *Strickland v. Washington*, 266 U.S. at 668-89; *Williams v. Taylor*, 529 U.S. 362, 393-99 (2000) (counsel must conduct adequate investigation into defendant's life for penalty phase of capital case); *Wallace v. Stewart*, 184 F.3d 1112, 1115-18 (9th Cir. 1999) (counsel was ineffective by failing to seek out mental health evidence and bring it to attention of defense experts; citing *Caro v. Calderon*, 165 F.3d 1223); *Bloom v. Calderon*, 132 F.3d 1267, 1277-78 (9th Cir. 1997) (counsel has duty to acquire sufficient background material for mental health expert when the expert requests such information). *See* AG009657, State Pet. at |

Respondent argues that Petitioner's citations render his claim unexhausted because the citations constitute new legal theories that fundamentally alter the theory presented to the California Supreme Court. The Court has reviewed the record and concludes the new citations do not alter Petitioner's state habeas legal theory that his counsel was ineffective in failing to investigate, discover, and provide his mental health experts with evidence of Petitioner's mental illness during both phases of Petitioner's trial. *Compare* AG009648-63, State Pet. at 69-84 *with* Fed. Pet. at 252. Although the federal petition contains new citations, the legal theory is essentially the same. The subclaim is exhausted.

- In his finalized petition, Petitioner argues that his counsel, "collectively and singularly" provided assistance that was constitutionally deficient, that counsel's deficient representation severely prejudiced him, and that counsel "collectively and singularly" failed to adequately investigate and present an insanity defense at the penalty phase of trial. Petitioner also argues that had counsel presented such mitigating evidence, the jury would not have returned a sentence of death. The Court has reviewed the record and concludes that Petitioner's argument is essentially an assertion of cumulative error. Petitioner had not previously made any allegations regarding appointed counsel other than Cannady; accordingly, insofar as the claim of cumulative error relies on Petitioner's unexhausted Omnibus Facts (*see ante*, at 20-21), the subclaim is unexhausted.

- Respondent argues that the following factual allegations in the instant federal petition are unexhausted: approximately ten pages of factual allegations concerning Petitioner's defense team during trial (Mintz, Humphrey, Cannady, Olivier, Dr. Benson, Dr. Pierce), including allegations that Mintz failed to conduct any investigation or represent Petitioner during his time as Petitioner's lawyer; that Cannady failed to subpoena any of the documents on investigator Olivier's list of important documents for penalty phase investigation (prison, school, CYA, parole, or child custody records); that, after Cannady took over, the defense team had no person in charge of penalty phase investigation and preparation; that Humphrey tried to divide each attorney's responsibility for the guilt and

penalty phases, but was turned down by Cannady; that Olivier conducted only a single interview for his penalty phase investigation; that Cannady had not obtained funding for penalty phase investigation until September 1990; that penalty phase investigation did not begin until May 23, 1991, or six days before the prosecution rested its case in the guilt phase of Petitioner's trial; that Olivier failed to obtain various medical/mental health records requested by Dr. Pierce; that Dr. Pierce's notes and testimony contained several factual errors; and various allegations regarding mental health findings resulting from competency proceedings conducted in this Court. *See* Fed. Pet. at 253-62. The Court has reviewed the record and concludes that Petitioner has not presented any allegations regarding Mintz, Humphrey, or Olivier, or any of the mental health allegations resulting from proceedings in this Court, to the California Supreme Court. As these allegations would, if proven, support Petitioner's argument that his defense team's lack of investigation/presentation of mitigating evidence at the penalty phase was a result of a failure of his defense team rather than a strategic decision by counsel, the Court concludes the new allegations would substantially improve the evidentiary posture of Petitioner's claim. *See Strickland v. Washington*, 466 U.S. 668 (defendant is entitled to effective assistance of counsel); *Wiggins v. Smith*, 539 U.S. 510 (2003) (counsel has duty to perform reasonable investigation); *Williams v. Taylor*, 529 U.S. 362 (2000) (counsel must conduct investigation into defendant's background for penalty phase of trial). Accordingly, the new factual allegations are unexhausted.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted because it includes facts and arguments from unexhausted claims: Petitioner incorporates by reference "all previous and subsequent claims and facts alleged in" his federal petition (*see* Fed. Pet. at 253). Respondent is correct. To the extent Claim 9 incorporates legal arguments and facts from his unexhausted claims, Claim 9 is unexhausted.

For the aforementioned reasons, Claim 9 is partially unexhausted.

h.      Claim 10

Petitioner argues that his death sentence was unconstitutionally imposed due to the bailiff tampering with the jury in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. *See* Fed. Pet. at 263.  Respondent argues Petitioner never presented Claim 10 to the California Supreme Court, and Petitioner concedes that the claim was not presented in any earlier state proceeding.  *See* Fed. Pet. at 268.  Instead, citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986), Petitioner argues that the Court should excuse the exhaustion requirement because he did not exhaust Claim 10 due to the bailiff's failure to inform the trial court and/or counsel that he spoke to the jury.  *See* Docket No. 261 at 8.  *Murray*, however, does not aid Petitioner.  There, the Supreme Court held that although ineffective assistance of counsel could constitute cause for procedural default, the claim of ineffective assistance of counsel should generally be exhausted in state court.  *Murray*, 477 U.S. at 488.  However, Petitioner does not currently argue that his claim is procedurally defaulted and that such default should not bar his claim; rather, the Court's inquiry here is limited to whether Petitioner has exhausted Claim 10.

As previously discussed in this Order, *see ante* at 18-19, Petitioner appears to conflate the doctrines of procedural default and exhaustion.  *See Cooper v. Neven*, 641 F.3d at 327.  While procedural default sometimes overlaps with the exhaustion doctrine in that procedural default can effectively foreclose a petitioner's access to state remedies, the overlap ends there; a district court will not excuse exhaustion if a petitioner still has a state remedy available.  *See Coleman v. Thompson*, 501 U.S. at 731-32 (petitioner who has procedural defaulted his federal claims meets technical requirements for exhaustion when state remedies are no longer available to him); s*ee also* 28 U.S.C. 2254(c) (claim is not exhausted if petitioner "has the right under the law of the State to raise, by any available procedure, the question presented").  Accordingly, even if Petitioner was arguing that his claim is procedurally defaulted, Petitioner's argument that he was unable to present Claim 10 earlier due to the state's suppression of the evidence can presumably be made before the California Supreme Court to excuse any procedural default there.  *See In re Clark*, 5 Cal. 4th at 775 ("where the factual basis for a claim was unknown to the petitioner and he had no reason to believe that the claim might be made, or where the petitioner was unable to

31

present his claim, the court will . . . consider the merits of the claim if it is asserted as promptly as reasonably possible).  Petitioner must exhaust his claim in state court.

Claim 10 is fully unexhausted.

### i.  Claim 11

In his state habeas petition, Petitioner argued that defense counsel was ineffective in questioning Officer Burnham regarding the contents of a paper Petitioner had displayed concerning "Black History" (containing writing that the white man is the enemy), opening the door to testimony regarding Petitioner's racial views (citing Fifth, Sixth, Eighth, and Fourteenth Amendments).  *See* AG009685-88, State Pet. 106-109.  In his finalized petition, Petitioner now argues that the trial court admitted evidence of his political speech, i.e., Petitioner's "Police Pig of the Year" list and "the white man is your enemy" writing, in violation of his First, Fifth, Eighth, and Fourteenth Amendment rights.  *See* Fed. Pet. at 269.

Respondent argues that Petitioner has not presented Claim 11 to the California Supreme Court, and Petitioner does not otherwise argue the claim was exhausted.  The Court has reviewed the record and concludes that Claim 11 is fundamentally different from Petitioner's state court claim.  In state court, Petitioner characterized the admission of evidence as ineffective assistance of counsel; Claim 11 here states its admission violated the First Amendment.  Although the underlying operative facts are similar, Claim 11 posits a significantly different legal theory.  Thus, Petitioner has not fairly presented the claim to the California Supreme Court.  *See Picard*, 404 U.S. at 278 (claim that failure to use grand jury to indict defendant violated Fourteenth Amendment equal protection clause not exhausted when state habeas petition cited only Fifth Amendment due process as basis for federal violation); *id.* at 277-78 (petitioner must present state courts with same claim he urges upon the federal courts).  Claim 11 is fully unexhausted.

### j.  Claim 12

Petitioner argues that he was denied his right to be present at his penalty phase trial and that any alleged waiver of his right was invalid.  *See* Fed. Pet. at 273.  Respondent argues Claim 12 is unexhausted in part due to various subclaims containing new factual and legal allegations. Petitioner contends the claim was exhausted on direct appeal.  *See* Fed. Pet. at 273.  The Court

addresses each subclaim in turn.

- During his direct appeal, Petitioner argued that the trial court's permitting Petitioner to absent himself from the courtroom during Issac Stanley's guilt phase testimony deprived Petitioner of his rights to due process, confrontation, an impartial jury, and a reliable determination of his guilt and sentence (citing the Fifth, Sixth, Eighth, and Fourteenth Amendments). *See* AG008120, AOB Vol. II at 318. In his finalized petition, Petitioner now argues that he was denied his right to be present at his penalty phase trial, that any alleged waiver of his right was invalid, and that his confinement and sentence are illegal, unconstitutional, and void pursuant to the Fifth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution, his rights to due process, equal protection, assistance of counsel, a fair trial, and a reliable determination of guilt because Petitioner did not validly waive his right to be present at trial. *See* Fed. Pet. at 273. The Court has reviewed the record and concludes that Petitioner did not cite the Fourteenth Amendment's equal protection clause or otherwise provide notice to the California Supreme Court that his right to equal protection under any constitutional amendment was violated by ineffective assistance of counsel at the penalty phase of trial. As Petitioner's new constitutional argument was never fairly presented in state court, the subclaim is partially unexhausted. *See Picard*, 404 U.S. at 277-78 (petitioner must present state courts with same claim he urges upon the federal courts); *see also Castillo v. McFadden*, 399 F.3d at 1002 (petitioner did not give state appellate court fair opportunity to rule on federal due process claim by concluding his brief with "scattershot citation of federal constitutional provisions" with no articulated federal legal theory). This subclaim is partially unexhausted.

- In his finalized petition, Petitioner argues that a trial record needs evidence that a defendant who waives his presence understands the right and the consequences of waiving the right to be present, citing *People v. Davis*, 36 Cal.4th 510, 532 (2005). Respondent argues that Petitioner's citation to *People v. Davis* fundamentally alters the claim presented to the California Supreme Court. Petitioner's federal habeas claim and direct appeal claim

are set forth below:

| *Federal Petition* | *Direct Appeal (State)* |
| --- | --- |
| Petitioner's citation to *People v. Davis*, 36 Cal.4th 510, 532 (2005) to argue that there must be evidence that a defendant understood the right he was waiving and the consequence of doing so when waiving his presence at trial; where there is scant evidence of consent or that the defendant understood the right he was waiving due to defense counsel's waiver for defendant, a court cannot conclude defendant knowingly waived his right to presence at the hearing. *See* Fed. Pet. at 276-77. | Even if a capital defendant could voluntarily waive his right to be present during trial testimony, the waiver in the present case would still be defective for lack of appellant's personal on-the-record waiver. In the absence of a personal on-the-record waiver, it is difficult, if not impossible, to determine whether the defendant has knowingly and intelligently relinquished a known right (citing *United States v. Gordon*, 829 F.2d 119, 126 (D.C. Cir. 1987). AG008123-24, AOB Vol. II at 321-22. |

The Court has reviewed the record and concludes that Petitioner's citation and argument related to *Davis* is substantially similar to Petitioner's argument on direct appeal and does not significantly alter Petitioner's claim that the trial court erred by not requiring Petitioner's personal knowing/intelligent waiver (as opposed to waiver through counsel) on the record. The subclaim is exhausted.

- In his finalized petition, Petitioner argues that Respondent argues that he need not establish prejudice from the denial of his right to be present during trial. Respondent argues that Petitioner's subclaim is unexhausted because Petitioner now presents a new legal theory, fundamentally altering the claim presented to the California Supreme Court. Petitioner's federal habeas claim and direct appeal claim are set forth below:

| *Federal Petition* | *Direct Appeal (State)* |
| --- | --- |
| Petitioner need not establish prejudice from the denial of his right to be present | The right of a defendant to be present at all stages of a criminal trial is rooted in the |

34

during trial; the right to be present is fundamental and one of the most basic rights guaranteed by the Confrontation Clause (citing *Brewer v. Raines*, 670 F.2d 117, 118-19 (9th Cir. 1982). All that need be shown is that the absence occurred during a critical proceeding; the penalty phase of a capital trial is a critical proceeding. *See* Fed. Pet. at 277-78.

confrontation and due process clauses of the federal and state constitutions (citing Sixth and Fourteenth Amendments, *Illinois v. Allen*, 397 U.S. 337, 338 (1970)). The California Supreme Court wrongfully rejected the argument that a capital defendant's absence from the courtroom during trial testimony violates the federal constitution in *People v. Jackson*, 13 Cal.4th 1164 (1996). *See* AG008120, AOB Vol. II at 318. In situations where a waiver might have been permissible but defective for failure to comply with statutory requisites, reversal is required unless the error can be shown beyond a reasonable doubt to have had no effect on the outcome. In a situation where no waiver may be taken, the standard must be even more stringent. AG008123-24, AOB Vol. II at 322-23.

The Court has reviewed the record and concludes that Petitioner has not fairly presented this subclaim to the California Supreme Court. By arguing that no prejudice need be shown from Petitioner's absence, Petitioner essentially argues that his absence constituted a structural defect. *See Campbell v. Rice*, 408 F.3d 1166, 1171 ("[a]utomatic reversal due to a constitutional error is required only if this error was a 'structural defect' that permeated 't[t]he entire conduct of the trial from the beginning to end' or 'affec[ed] the framework within which the trial proceeds"). Petitioner made no such argument in state court. *Illinois v. Allen* and *People v. Jackson*, cited by Petitioner during his direct appeal, do not consider whether a defendant's absence during testimony is a structural error, but rather focus on whether a defendant can ever waive the constitutional right to be present

1     during testimony.  Accordingly, the subclaim is unexhausted.

2     For the aforementioned reasons, Claim 12 is partially unexhausted.

3          k.    <u>Claim 13</u>

4     Petitioner argues that he will not have a meaningful opportunity to present his federal

5 constitutional claims to this court as a result of dysfunctional and inadequate state court

6 proceedings in violation of the U.S. Constitution's Suspension Clause.  *See* Fed. Pet. at 279.

7 Respondent argues Petitioner has not presented Claim 13 to the California Supreme Court, and

8 Petitioner concedes as much.  *See id.*  Petitioner argues, however, that there is no use in further

9 delaying this Court's consideration of the claim and that exhaustion should be excused, citing

10 *Jones v. Davis*, 806 F.3d 538, 545 (9th Cir. 2015).  Docket No. 261 at 16.

11     *Jones v. Davis* is inapposite in this context.  There, a habeas petitioner raised a

12 *Furman/Lackey* claim.  The state argued that the claim was unexhausted and barred by *Teague*,

13 but the district court nevertheless granted the petitioner's petition based on the *Furman/Lackey*

14 claim, holding that exhaustion was excused based on the "systemic delay and dysfunction" of

15 California's post-conviction review process.  *Id.* at 542.  The Ninth Circuit reversed.  After finding

16 that nothing in § 2254(b)(1) requires that a court demand or analyze exhaustion if it *denies* the

17 writ, the Ninth Circuit held that the claim was procedurally barred by *Teague* and denied the writ

18 altogether.[10]  *Jones v. Davis*, at 545.  Accordingly, *Jones* did not excuse exhaustion where the

19 substantive claim has possible merit.  Petitioner does not argue Claim 13 is barred by *Teague* or

20 otherwise argue that his own habeas claim is unmeritorious;[11] *Jones v. Davis* is therefore not

21 helpful to Petitioner.

22     Moreover, while the Court understands that Petitioner's case has already gone through

23 lengthy litigation, Petitioner has not shown that the California Supreme Court would be ineffective

24 should he file an exhaustion petition in the future.  As Petitioner recognized during hearing,

25 _____

26 [10] Although the majority did not decide whether Jones' claim was exhausted or excused from the exhaustion requirement, the Hon. Paul Watford in concurrence opined that it was not exhausted.

27 *Jones v. Davis*, 806 F.3d at 553.

28 [11] The Court does not make any rulings as to the merit of Claim 13 at this time.  *See Rose v. Lundy*, 455 U.S. 509 (total exhaustion of petition required).

United States District Court

For the Northern District of California

federal habeas petitions are routinely sent back to the California Supreme Court for exhaustion

procedures, even if many of them are ultimately unsuccessful.  *See* Docket No. 274-1.  And, while

undue delay during state court proceedings may sometimes call for excuse of the exhaustion

requirement, those cases often involve situations in which direct appeals or state habeas petitions

have already been filed but are still pending after years of delay.  *See Coe v. Thurman*, 922 F.2d

528, 530-32 (9th Cir. 1990) (in pre-AEDPA case, direct appeal pending in state court for nearly

four years); *see also Hayes v. Ayers*, 632 F.3d 500 (9th Cir. 2011) (rejecting due process claim in

case where direct appeal was pending for 11 years).  Petitioner's case does not fall within this

category of cases.

In sum, Petitioner has failed to cite controlling authority or properly establish that he

should be excused from the exhaustion requirement.  Claim 13 is therefore unexhausted.

1.     Claim 14

Petitioner argues the California death penalty system is unconstitutional because lengthy

and unpredictable delays in the implementation of death sentences have resulted in an arbitrary

and unfair capital punishment system in violation of the Eighth Amendment prohibition of cruel,

torturous, and unusual punishment, and that application of this system to Petitioner violates his

Fifth, Sixth, Eighth, and Fourteenth Amendment rights and international law.  *See* Fed. Pet. at 293.

Respondent argues Claim 14 is unexhausted in part due to various subclaims containing new

factual and legal allegations.  Petitioner asserts the claim was exhausted during his state habeas

proceedings (Fed. Pet. at 293).  The Court has reviewed the record and concludes Claim 14, which

asserts the California death penalty scheme's delays create a risk that the death penalty will be

inflicted in an arbitrary and capricious manner, is significantly different from Petitioner's claim

before the California Supreme Court that the physical, mental, and emotional suffering caused by

a prolonged delay was cruel and unusual.  *See* AG009704-07, State Pet. at 125-28.

Petitioner argues, however, that there is no use in further delaying this Court's

consideration of the claim and that exhaustion should be excused, citing *Jones v. Davis*, 806 F.3d

538, 545 (9th Cir. 2015).  Docket No. 261 at 16.  For the reasons cited in response to this

argument as to Claim 13 above, the Court is not persuaded by Petitioner.  Petitioner has failed to

cite controlling authority or properly establish that he should be excused from the exhaustion requirement. Claim 14 is therefore unexhausted.

m. Claim 15

Petitioner argues that his execution following lengthy confinement under a death sentence would constitute cruel and unusual punishment in violation of Petitioner's federal constitutional rights and international law. *See* Fed. Pet. at 297. Respondent argues Claim 15 is unexhausted in part due to various subclaims containing new factual and legal allegations. Petitioner asserts the claim was exhausted during his state habeas proceedings, *id.*, and, alternatively, that exhaustion should be excused (Docket No. 261 at 16). *Id.* The Court addresses each subclaim in turn.

▪ In his state habeas petition, Petitioner argued that the international community is increasingly realizing that, without regard for the question of the appropriateness or inappropriateness of the death penalty itself, prolonged confinement under a death sentence is cruel and degrading and violates international human rights law, citing *Pratt v. Attorney General for Jamaica*, 4 All.E.R. 769 (1993); *Soerig v. United Kingdom*, 11 E.H.R.R. 439 (1989). *See* AG009705-06, State Pet. at 126-27.

In his finalized petition, Petitioner now asserts that his execution following his lengthy confinement under sentence of death would constitute cruel and unusual punishment in violation of international law, covenants, treaties and norms. *See* Fed. Pet. at 297. Petitioner argues that his sentence violates the United Nations Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. GAOR, 29th Sess., Agenda Item 99, U.N. Doc. A/Res/39/46 (1984), and specifically alleges that his convictions and death sentence were obtained in violation of Article I, which defines torture in part as any act by which severe pain or suffering is intentionally inflicted on a person by a public official. *See* Fed. Pet. at 300. Petitioner also asserts that a death sentence is degrading and devastating, citing *Reflections on the Guillotine, in Resistance, Rebellion and Death* by Camus. *See* Fed. Pet. at 301.

The Court has reviewed the record and concludes that Petitioner fairly presented most of the subclaim to the California Supreme Court when he presented the operative

facts and argued, as he does so here, that execution after lengthy confinement would constitute "cruel and degrading" punishment and would violate "international human rights law."  Petitioner's citation to the U.N. Convention Against Torture's Article 1, however, was not fairly presented because Petitioner never argued before the California Supreme Court that he believed his sentence, and the way it was imposed, violated the treaty or otherwise cite to cases discussing the treaty.  Although Petitioner cited "international law" and various international cases in relation to his claim that prolonged confinement under a death sentence was cruel and unusual punishment, none of the cases discussed Article 1 of the U.N. Convention.  *See* AG009705-06, State Pet. at 126-27; *see also* AG009722-24, State Pet. at 143-45 (citing the Universal Declaration of Human Rights, the International Covenant on Civil and Political Rights, the American Declaration of Rights and Duties of Man, and the International Convention Against All Forms of Racial Discrimination).  The Court therefore concludes that Petitioner's cite was insufficient to give the California Supreme Court a chance to rule on the subclaim.  *See Picard*, 404 U.S. at 277-78 (petitioner must present state courts with same claim he urges upon the federal courts); *id.* at 278 (claim that failure to use grand jury to indict defendant violated Fourteenth Amendment equal protection clause not exhausted when state habeas petition cited only Fifth Amendment due process as basis for federal violation); *see also Castillo v. McFadden*, 399 F.3d at 1002 (petitioner did not give state appellate court fair opportunity to rule on federal due process claim by concluding his brief with "scattershot citation of federal constitutional provisions" with no articulated federal legal theory).  The subclaim is unexhausted.

- In his finalized petition, Petitioner argues that he is not responsible for the delay in his proceedings and that full, fair, and meaningful review of trial court proceedings requires a complete record and effective appellate representation.  Respondent argues that Petitioner's subclaim is unexhausted because it introduces a new legal theory that fundamentally alters the claim he presented to the California Supreme Court.  Petitioner's federal and state habeas subclaims are set forth below:

39

| _Federal Petition_ | _State Habeas Petition_ |
|---|---|

_Federal Petition_

Petitioner is not responsible for the delay between his initial sentence and the day upon which it will be carried out. The extended period of his automatic appeal and state habeas proceeding was not his fault. Petitioner may not waive his automatic appeal. Full, fair, and meaningful review of trial court proceedings requires a complete record (citing _Chessman v. Teets_, 354 U.S. 156 (1957)) and effective appellate representation. The delays which occurred in Petitioner's appeal were caused by factors over which he exercised no discretion or control, and where overwhelmingly attributable to the system in place, established by state and federal law. The delay at issue was caused by the negligence or deliberate action by the state (citing _Lackey v. Texas_, 514 U.S. 1045 (1995)). _See_ Fed. Pet. at 297-98.

_State Habeas Petition_

Execution of Petitioner following his confinement for such a long time under sentence of death would constitute cruel and unusual punishment in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments (citing _Lackey v. Texas_). Petitioner's confinement on death row, in part, has been directly attributable to the California Supreme Court's delay in appointing counsel and deciding his appeal and habeas corpus. The appeal from a judgment of death is automatic; Petitioner cannot waive the automatic appeal. _See_ AG009705, State Pet. at 126.

The Court has reviewed the record and concludes that in his state habeas petition, Petitioner alleged that the delay in his case is not attributable to him but instead, caused by the state (see AG009705, State Pet. at 126); cited to _Lackey v. Texas_, 514 U.S. 1045 (1995) (discussing the need to account for "negligence or deliberate action by the state" in considering delay between death sentence and actual execution date). Insofar as Petitioner now states that a complete record and effective appellate representation are necessary for full, fair, and meaningful review, the Court concludes that those allegations are subsumed

1    to Petitioner's *Lackey* claim and do not fundamentally alter Petitioner's *Lackey* claim
2    because they do not raise additional federal claims, but rather state general principles of
3    fairness. The subclaim is exhausted.

4    ▪ Respondent argues that the following allegations in the finalized petition are unexhausted:
5    Petitioner was not responsible for the delay between his initial sentence and the day it will
6    be carried out (citing *People v. Sheldon*, 7 Cal.4th 1136, 1139 (1994); *In re Medley*, 134
7    U.S. 160, 172 (1890)), allegations about the size of Petitioner's cell, Petitioner's constant
8    surveillance, Petitioner's ability to leave his cell, and Petitioner's extreme isolation, pain
9    and suffering as a death row inmate, and subjection to handcuffing any time he is
10   transported anywhere. *See* Fed. Pet. at 297-98, 301. The Court has reviewed the record
11   and concludes that Petitioner did not present any evidence regarding his own conditions of
12   confinement as a result of being confined to San Quentin's death row (*see* Fed. Pet. at 298)
13   to the California Supreme Court. Because the new allegations could substantially improve
14   the evidentiary posture of his claim that execution following his lengthy confinement on
15   death row would constitute cruel and unusual punishment, Petitioner's new allegations are
16   unexhausted. *Compare* AG009704-07, State Pet. at 125-28 *with* Fed. Pet. at 297-98, 301.
17   *See Allen v. Ornoski*, 435 F.3d 946, 955 (9th Cir. 2006).

18   ▪ Respondent argues that the following subclaim in Petitioner's finalized petition is
19   unexhausted: execution after prolonged confinement would not advance the penological
20   goals of deterrence and retribution. *See* Fed. Pet. at 298-99. The Court has reviewed the
21   record and concludes Petitioner gave the court sufficient notice of the legal doctrine that
22   Petitioner was, and is now, invoking when he cited *Lackey*, 514 U.S. 1045, which
23   discusses the penological goals of execution, in his state habeas claim. *See* AG009705,
24   State Pet. at 126. The subclaim is therefore exhausted.

25   ▪ Respondent argues that the following subclaim in Petitioner's finalized petition is
26   unexhausted: execution after prolonged confinement is unusual in the historic context.
27   *See* Fed. Pet. at 299. Petitioner alleges that the average wait on death row was 51 months
28   after *Furman*, but as of 2011, waiting time was almost 15 years (citing *Valle v. Florida*,

United States District Court
For the Northern District of California

564 U.S. 1067 (2011) (Breyer, J., dissenting from denial of stay). The Court has reviewed the record and concludes that although Petitioner did not present these figures to the California Supreme Court, this specific fact does not fundamentally alter his claim that execution after a prolonged delay violates the Eighth Amendment's guarantee against cruel and unusual punishment.

- Respondent argues that the following allegation is unexhausted: execution after prolonged confinement would be cruel and unusual in his case due to his mental illness. *See* Fed. Pet. at 301. The Court has reviewed the record and concludes that Petitioner had not previously made this argument to the California Supreme Court. Petitioner's new legal theory, especially paired with Petitioner's new evidence of mental illness, would significantly improve the evidentiary standing of his *Lackey* claim as it relates to whether the penological goals of the death penalty would be served by his execution. *See Atkins v. Virginia*, 536 U.S. 304, 317 (2002). The subclaim is therefore unexhausted.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted: the method of execution will result in torture and severe pain and suffering, violating federal and state constitutions and international law. *See* Fed. Pet. at 301. The Court has reviewed the record and concludes that Petitioner did not allege a violation of international law in reference to his method of execution claim in the California Supreme Court. *Compare* AG009715-22, State Pet. at 136-43 *with* Fed. Pet. at 301. Because Petitioner did not give the California Supreme Court notice that he was invoking international law as to his method of execution argument, the subclaim is partially unexhausted.

Petitioner argues, however, that there is no use in further delaying this Court's consideration of the claim and that exhaustion should be excused, citing *Jones v. Davis*, 806 F.3d 538, 545 (9th Cir. 2015). Docket No. 261 at 16. For the reasons cited in response to this argument as to Claim 13, *see ante* at 37-38, the Court is not persuaded by Petitioner. Petitioner has failed to cite controlling authority or properly establish that he should be excused from the exhaustion requirement. Accordingly, Claim 15 is partially unexhausted.

n.      Claim 17

Petitioner argues that the California death penalty statute is unconstitutional and its application to Petitioner's sentence violated his Fifth and Fourteenth Amendment rights.  *See* Fed. Pet. at 305.  Respondent argues that subclaims 17D, 17E, and an unenumerated subclaim are unexhausted.  Petitioner asserts the whole claim was exhausted on direct appeal.  *See* Fed. Pet. 307.  The Court will address each subclaim in turn.

- ▪ Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted:  17D, i.e., that the California death penalty statute failed to provide an instruction on the standard of proof for mitigating circumstances and failed to inform the jury that it did not need unanimity concerning the existence of mitigating circumstances. *See* Fed. Pet. at 310.  The Court has reviewed the record and concludes that Petitioner has not previously made this argument in the California Supreme Court.  Because the California Supreme Court has not ruled on the subclaim; subclaim 17D is fully unexhausted.

- ▪ Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted:  17E, i.e., that the wording of several of the factors set forth in the Penal Code prevents full consideration of mitigation.[12]  *See* Fed. Pet. at 311.  The Court has reviewed the record and concludes Petitioner did not previously challenge the wording of Penal Code section 190(f) and (g) or otherwise argue that the words "reasonably believed" and "extreme" in each respective section led the jury to believe they could not consider as mitigation lesser degrees of mental/emotional disturbance or an unreasonable belief of moral justification.  Petitioner also did not previously argue that the word "impaired" in

---

[12] In relevant part, Petitioner challenges the wording for the following factors:  Cal. Pen. Code § 190(f), which states that the jury may consider "whether or not the offense was committed under circumstances which the defendant *reasonably believed* to be a moral justification or extenuation for his conduct" (emphasis added); Cal. Pen. Code § 190(g), which states that the jury may consider "whether or not the defendant acted under *extreme* duress or under the substantial domination of another person" (emphasis added); and Cal. Pen. Code § 190(h), which states that a jury may consider "whether or not at the time of the offense the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was *impaired* as a result of" mental disease or intoxication (emphasis added).

43

section 190.3(h) led jurors to believe they could only consider impairment as a mitigating factor if Petitioner's mental illness what was caused the crime (Petitioner argues such a limitation would be contrary to the California Supreme Court's holding in *People v. Lucero*, 44 Cal.3d 1006, 1029-31 (1988) that a defendant is entitled to have the jury consider his psychological disorder as a mitigating factor even if the mental condition did not cause him to commit the crimes or was not otherwise operative at the time of the offense). Finally, Petitioner did not previously present evidence of an Illinois survey conducted by Professor Hans Zeisel in which he concluded that between 38.9 and 67.7% of respondents believed they were not allowed to rely on unlisted mitigating factors in deciding whether to vote for a sentence less than death. *See* Fed. Pet. at 311-13. Because Petitioner's new legal theories were never presented to the California Supreme Court and Professor Zeisel's survey results would significantly improve the evidentiary posture of his subclaim that the wording in the factors was confusing or misleading, Subclaim 17E is unexhausted.

- Respondent argues that the following unlabeled subclaim in Petitioner's finalized petition is unexhausted: standing alone or taken together, the errors require reversal of the sentence imposed. *See* Fed. Pet. at 315. The Court has reviewed the record and concludes Petitioner did not previously raise a claim as to cumulative effect of the various alleged instructional errors, and even if Petitioner had previously raised the cumulative error claim, the new factual allegations and legal theories discussed above would necessarily render it fundamentally altered. *See Wooten v. Kirkland*, 540 F.3d 1019 (9th Cir. 2008) (cumulative error claim must either be sufficiently intertwined with an exhausted claim, in that raising one claim necessarily raises the cumulative error claim, or otherwise be explicitly raised in state court). Accordingly, the subclaim is fully unexhausted.

For the foregoing reasons, Claim 17 (including subclaims 17D, 17E, and the unlabeled cumulative error subclaim) is partially unexhausted.

o. <u>Claim 18</u>

Petitioner argues that he cannot be lawfully executed because the method of execution in

California violates federal constitutional and international law.  *See* Fed. Pet. at 316.  Respondent argues Claim 18 is unexhausted in part due to various subclaims containing new factual and legal allegations.  Petitioner asserts the claim was exhausted during his state habeas proceedings.  *See* Fed. Pet. at 316.  The Court addresses each subclaim in turn.

- Respondent argues that the following subclaim is unexhausted because it presents a new legal theory:

| *Federal Petition* | *State Habeas Petition* |
|---|---|
| The California Department of Corrections and Rehabilitation's ("CDCR") failed to develop and promulgate a valid lethal injection protocol under the Administrative Procedures Act ("APA") and the method of execution must adhere to standards established under the direction of the CDCR pursuant to California Penal Code § 3604(a).  *See* Fed. Pet. at 317.  California does not have a valid protocol for implementing execution by lethal gas under the APA. | California's execution procedures (gas and lethal injection) violate the federal constitution in two respects: first, the state failed to comply with the statutory requirement that standards be established by the Department of Corrections (citing Penal Code § 3604(a)).  Second, both statutory methods of execution constitute cruel and unusual punishment under the Eighth Amendment.  *See* AG009707-09, State Pet. at 128-30.  California did not comply with APA requirements in developing its lethal injection protocol.  *See* AG009710, State Pet. at 131. |

The Court has reviewed the record and concludes that Petitioner fairly presented this subclaim when he presented an almost identical argument during his state habeas proceedings.  The subclaim is exhausted.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted:  Petitioner's citation, over the course of four pages, to various prolonged or botched executions.  *See* Fed. Pet. at 318-322.  The Court has reviewed the record and concludes Petitioner also listed various examples of prolonged or botched executions in his

state habeas petition, including various examples he repeats in his federal petition.  Insofar as Petitioner includes new recent examples of prolonged or botched executions, the examples do not fundamentally alter the claim considered by the California Supreme Court because they are substantially similar to the previous examples already provided. *Compare* AG009717-21, State Pet. at 138-42 (examples of botched executions either because no suitable veins were found or because of an unexpected reaction with the drugs) *with* Fed. Pet. at 318-22 (same).  The subclaim is exhausted

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted:  the method of execution results in violations of the Fifth and Sixth Amendments and "international law, covenants, treaties and norms."  *See* Fed. Pet. at 316. The Court has reviewed the record and concludes Petitioner never alleged the method of execution violated the Fifth or Sixth Amendments or international law (he only asserted Eighth and Fourteenth Amendment claims); as the California Supreme Court did not have notice Petitioner was challenging the method of execution on these additional federal grounds, the subclaim is fully unexhausted.

- In his state habeas petition, Petitioner argued that California's method of execution violated the Eighth Amendment because its use of lethal injection in the administration of the death penalty fails to protect condemned prisoners from unnecessary pain and suffering and that the risk of inflicting such cruel and unusual pain is enhanced with the lack of established/comprehensive protocols.  *See* AG009722, State Pet. at 143.  In his finalized petition, Petitioner now argues, citing *Morales v. Tilton*, 465 F.Supp. 2d 972, 981 (N.D. Cal. 2006), that California's actions/failures to act with respect to implementation of its lethal injection protocol resulted in an intolerable risk of violation of the Eighth Amendment.  *See* Fed. Pet. at 317.  The Court has reviewed the record and concludes Petitioner fairly presented the operative facts and constitutional/legal theories to the California Supreme Court during his state habeas petition.  The subclaim is exhausted.

- Respondent argues that the following subclaim in Petitioner's finalized petition is unexhausted: Petitioner's allegation that the risk of prolonged or botched administration of

46

an execution violates international law and that "[a]waiting death is a form of psychological torture evidence by the fact that mock executions . . . are a common torture tactic." *See* Fed. Pet. at 322. The Court has reviewed the record and concludes Petitioner did not make the international law argument during his proceedings in the California Supreme Court. Because Petitioner did not previously give notice to the California Supreme Court that he was arguing that the administration of the lethal injection violated international law, this subclaim is unexhausted.

For the aforementioned reasons, Claim 18 is partially unexhausted.

        p.     <u>Claim 19</u>

Petitioner argues that he is permanently incompetent and may not be executed under *Ford*. *See* Fed. Pet. at 324. Respondent argues that Petitioner has not presented this claim to the California Supreme Court, and Petitioner concedes as much. *See* Fed. Pet. at 330. Petitioner argues, however, that Claim 19 does not require exhaustion because it does not challenge or attack the judgment made by the state and is therefore not a "claim" in the traditional sense of federal habeas. Alternatively, Petitioner argues exhaustion should be excused for futility. *See* Fed. Pet. at 330; Docket No. 261 at 19.

In support of his first contention, Petitioner cites to Justice Thomas's dissent in *Stewart v. Martinez-Villareal*, 523 U.S. 637, 652, fn. 3 (1998). There, the Supreme Court held that filing a second habeas petition alleging only *Ford* incompetency is not barred as a successive petition when the facts supporting the *Ford* claim arise after the petitioner's initial federal petition has been decided. *Id.* at 639. In the portion of Justice Thomas' dissent cited by Petitioner, Justice Thomas argued that *Ford* claims should not be cognizable in federal habeas at all, reasoning that *Ford* claims fall outside the writ's original purpose and outside of section 2254 by challenging when or whether a sentence can be carried out, not whether a petitioner is " 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Id.* at 652 & fn. 3 (internal citation omitted). Petitioner's citation to the dissent is misplaced. Although Justice Thomas indeed argues in *Martinez-Villareal* that *Ford* claims are not cognizable in federal habeas law, the Supreme Court in numerous cases appear to assume *Ford* claims are in fact cognizable in a habeas

proceeding. *See, e.g., Ford*, 477 U.S. at 404 (claim considered after unsuccessful challenge to competency before Florida Supreme Court); *Pannetti*, 551 U.S. 930 (*Ford* claim considered on habeas). Petitioner has cited no cases holding otherwise. In any event, Petitioner brings Claim 19 as a federal habeas claim; as such, it is in the first instance subject to the exhaustion requirement as any other habeas claim. *See* 28 U.S.C. § 2254(b). [13]

Petitioner also argues, however, that no adequate remedy exists for him to exhaust, thus excusing exhaustion. Under section 2254(b), exhaustion may be excused where there is no state corrective process or the process is ineffective to protect the inmate's rights. 28 U.S.C. § 2254(b)(1). Section 2254(c) states that "an applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . *if* he has the right under the law of the state to raise, by any available procedure, the question presented." (Emphasis added.)

In arguing that California lacks an adequate remedy for *Ford* claims, Petitioner focuses on California Penal Code section 3700 et seq., the statutory scheme for determination of competency for execution. *See* Docket No. 261 at 8-9 (citing arguments discussed in Docket No. 164 at 4-8). Penal Code section 3700 states that "[n]o judge, court, or officer, other than the Governor, can suspend the execution of a judgment of death, except the warden of the State prison to whom he is delivered for execution, as provided in the six succeeding sections, unless an appeal is taken." In relevant part, Penal Code section 3701 states that a warden must initiate proceedings to determine a petitioner's competency if "there is good reason to believe that a defendant, under a judgment of death, has become insane." The process requires that the warden contact the district attorney in the county of the inmate's confinement, and the district attorney will then file a petition in state court, empanel a jury, and conduct grand jury-like proceedings to determine whether the inmate is in fact insane. Cal. Pen. Code §§3701-03. Petitioner correctly points out that the Penal Code section 3700 et seq. procedure, which is triggered after an execution date is set, vests discretion of commencing competency proceedings solely in the hands of the condemned prisoner's warden, and neither the condemned nor the courts may order a warden to initiate those proceedings. *See*

---

[13] The Court does not at this juncture determine whether a *Ford* claim is cognizable exclusively through habeas or whether it may also be brought pursuant to 42 U.S.C. § 1983.

48

1    *Caritativo v. Teets*, 47 Cal.2d 304 (1956) (court may not issue writ of mandamus compelling

2    warden to initiate competency proceedings). Hence there is a strong argument that Penal Code

3    section 3700 does not provide a remedy in the courts of California to address the *Ford* claim.

4         On the other hand, Respondent relies on California Penal Code section 1473 to argue there

5    is a state judicial remedy. Penal Code section 1473 states that a person "unlawfully imprisoned or

6    restrained of his or her liberty, under any pretense, may prosecute a writ of habeas corpus. . . ."

7    Cal. Pen. Code § 1473(a). An inmate may also bring claims that a sentence constitutes cruel and

8    unusual punishment pursuant to Penal Code section 1473. *See People v. Reece*, 66 Cal.App.3d 96,

9    98 ("habeas is the proper means of challenging a sentence which, as applied, is cruel or unusual")

10   (citing *People v. Wingo*, 14 Cal.3d 169, 183 (1975); *see also* Cal. Pen. Code § 1473(d) (statute

11   does not limit the grounds for which a writ of habeas corpus may be prosecution).

12        The issue whether Penal Code section 1473 provides a means of addressing a *Ford* claim is

13   currently before the California Supreme Court in *McPeters (Ronald Avery) on Habeas Corpus*,

14   S226918. In *McPeters*, the parties agree that the petitioner (McPeters) is permanently

15   incompetent for execution. However, McPeters argues that Penal Code § 3700 et seq. is

16   inadequate to secure his rights, rendering California's death penalty scheme unconstitutional. *See*

17   *McPeters (Ronald Avery) on Habeas Corpus*, S226918, Pet. at 16-26. The respondent in

18   *McPeters* argues, as Respondent argues here, that *Ford* claims are indeed cognizable on state

19   habeas and urges the California Supreme Court to issue an order to show case on the *Ford* claim.

20   Until the California Supreme Court decides *McPeters*, the Court will not excuse exhaustion based

21   on futility. The Court therefore will require exhaustion of the *Ford* claim, but without prejudice to

22   reconsideration if warranted by the California Supreme Court's ensuing ruling in *McPeters.*

23        As Petitioner has not yet shown that the state process would be inadequate to secure his

24   remedy as to this claim, Claim 19 is fully unexhausted.

25             q.    <u>Claim 20</u>

26        Respondent argues Petitioner's claim that the cumulative effect of errors and constitutional

27   violations alleged in the petition require that Petitioner's conviction and death sentence be vacated

28   is unexhausted because it is based on Petitioner's finalized petition, which contains various

49

unexhausted claims and subclaims. *See* Fed. Pet. at 332. To the extent that Claim 20 incorporates unexhausted claims identified in this Order, it is partially unexhausted.

### 3. Conclusion

Claims 3, 4, 8, 9, 12, 15, 17 (including 17D, 17E, and the unlabeled cumulative error subclaim), 18, and 20 are partially unexhausted. Claims 1, 2, 7, 10, 11, 13, 14, and 19 are fully unexhausted.

## IV. EQUITABLE ESTOPPEL, RENEWED MOTIONS, ADMINISTRATIVE MOTION, REQUEST FOR HEARING, AND PROPOSITION 66 STAY

In his Opposition to Respondent's Motion to Dismiss, Petitioner argued that the Court should estop Respondent from raising the defense of nonexhaustion "as to all of the disputed claims, facts, and 'legal bas[e]s' which Respondent contends require exhaustion." *Id*. Petitioner also (1) renewed his Motion for Equitable Relief (Docket No. 226), (2) renewed his Motion for Sanctions (Docket No. 228), (3) filed a Motion for Administrative Relief for leave to file a surreply related to his Motion for Sanctions (Docket No. 274); (4) requested that the Court grant a hearing to determine whether exhaustion should be excused based on section 2254(e)(2)(A)(ii) & (b)(1)(B); and (5) requested that the Court dismiss Respondent's Motion to Dismiss without prejudice and stay proceedings until Proposition 66 was no longer stayed by the California Supreme Court. *See* Docket No. 261 at 3, 4, 6, & 17. The Court addresses each item in turn.

### A. Equitable Estoppel

Petitioner argues that he is entitled to equitable estoppel against Respondent's assertions of nonexhaustion for all claims based on the doctrine of unclean hands. *See* Docket No. 261 at 3.[14] Respondent argues that estoppel cannot be asserted in the context of exhaustion of federal habeas claims. Respondent also argues that in any event, Petitioner is not entitled to estoppel. *See* Docket No. 263 at 11-14.

In support of his estoppel argument, Petitioner cites *Ziemba v. Wezner*, 366 F.3d 161, 163

---

[14] Although Petitioner makes the argument as to all claims, he also specifically points to Claims 1, 2, 3, 4, 7, 8, and 9 in relation to his equitable estoppel arguments. *See* Docket No. 261 at 3-7. The Court will consider them collectively.

**United States District Court**
For the Northern District of California

(2d Cir. 2004) and *Ruggiero v. County of Orange*, 467 F.3d 170, 178 (2d Cir. 2006), in which the Second Circuit Court of Appeals held that the failure to exhaust claims under the Prison Litigation Reform Act ("PLRA") is an affirmative defense which may be subject to estoppel. However, section 2254(b)(3) governing habeas proceedings (as distinct from PLRA suits) explicitly precludes the Court from estopping the state from asserting nonexhaustion. It stated in relevant part: "[a] State shall not be deemed to have waived the exhaustion requirement *or be estopped from reliance upon the requirement* unless the State, through counsel, expressly waives the requirement." (Emphasis added). The PLRA has no such provision. *Ziemba* and *Ruggiero* are therefore inapposite.

Petitioner also argues that the Court has inherent power to estop Respondent from asserting nonexhaustion. *See* Docket No. 261 at 5. But applying any such inherent power would contravene the plain language of section 2254(b)(3). *See Banks*, 540 U.S. at 705 ("AEDPA forbids a finding that exhaustion has been waived unless the State expressly waives the requirement [under] 28 U.S.C. § 2254(b)(3)"); *United States v. Texas*, 507 U.S. 529, 534 (1993) (statute abrogates common-law principle when it "speak[s] directly" to that principle); *cf. Whaley v. Belleque*, 520 F.3d 997 (9th Cir. 2008) (estopping state from asserting *procedural default* for failure to pursue remedies).

Petitioner additionally argues that the Court has power to estop Respondent from asserting nonexhaustion based on Federal Rule of Civil Procedure 37 ("Rule 37"). Docket No. 261 at 6. Rule 37 allows a court to impose appropriate sanctions on a party for, among other reasons, failure to comply with that court's order. Fed. R. Civ. Pro. 37(b)-(c). Here, Petitioner does not argue that Respondent failed to comply with any of this Court's orders for discovery; in fact, the basis of some of Petitioner's new claims and subclaims arose out of evidence that was turned over during federal discovery, revealing possible suppression in the state courts. Hence, there is no violation warranting sanctions under Rule 37. In any event, Petitioner cites no authority suggesting that Rule 37 can be applied in contravention of section 2254(b)(3) given that the Federal Rules of Civil Procedure apply to federal habeas proceedings only "to the extent that they are not inconsistent with any statutory provisions." Rules Governing Section 2254 Cases, rule 12.

Section 2254(b)(3)'s explicit limit on the Court's power to estop Respondent from asserting nonexhaustion prevails over Rule 37.

Petitioner's request that the Court equitably estop Respondent from asserting nonexhaustion as to all claims, including Claims 1, 2, 3, 4, 7, 8, and 9, is therefore **DENIED**.

B.      Motion for Equitable Relief

Petitioner argues that the Court should grant Petitioner an indefinite stay of proceedings because the state court delays, the inadequacy of the proceedings, and his permanent incompetence have made his claims of ineffective assistance of counsel unreviewable by this or any other court. *See* Docket No. 226 at 45. Respondent argues that an indefinite stay is inappropriate. *See* Docket No. 266 at 2.

This Court previously considered whether it may issue a permanent stay in the context of Petitioner's permanent incompetence in its Order of July 16, 2013.[15] *See* Docket No. 106 at 2-4. Shortly before the Court issued that Order, the Supreme Court decided *Ryan v. Gonzales*, 133 S.Ct. 696 (2013). In *Ryan*, the Supreme Court held that while the decision to grant a temporary competency stay is within the discretion of the district court, an indefinite stay is not appropriate if there is no reasonable hope the petitioner will regain competence in the foreseeable future. *Id.* at 706-09. The Court explained that permanently staying a federal habeas petition would frustrate AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of federal proceedings. The Supreme Court also noted that "[i]f a district court concludes that [a specific claim] could substantially benefit from the petitioner's assistance, [the court] should take into account the likelihood that the petitioner will regain competence in the foreseeable future. Where there is no reasonable hope of competence, a stay is inappropriate and merely frustrates the State's attempts to defend its presumptively valid judgment." *Id.* at 709.

As Respondent points out, other district courts in our circuit have since interpreted *Ryan* as barring indefinite competency stays when a petitioner is permanently incompetent. *See Huggins v. Chappell*, 06-cv-07254-YGR, 2013 WL 843296 (N.D. Cal. 2013) ("The [Supreme Court in *Ryan*]

_____

[15] In that Order, the Court lifted its stay of the case, deferred the case for potential settlement, and ordered the parties to set a schedule for competency proceedings.

52

held that . . . an indefinite stay is inappropriate if there is no reasonable hope the petitioner will regain competence in the foreseeable future"); *Gates v. Davis*, 88-cv-2779-WHA, 2016 WL 1598748 at *2 (N.D. Cal. 2016) (same); *Mulder v. Baker*, 09-cv-00610-PMP-WGC, 2013 WL 5758061 (D. Nev. 2013) ("even if [the petitioner's] petition contains claims that could substantially benefit from his assistance, he is eligible for a stay only if there is at least a reasonable hope that he will regain competence in the foreseeable future").[16]  While the Court previously declined to follow *Ryan* based on its interpretation that the disputed language was *dicta*, the Court now joins the other district courts, all of which have concluded otherwise.  Insofar as Petitioner argues he is entitled to an indefinite stay based on his alleged permanent incompetence, the Court denies the stay on that ground.[17]

Petitioner also argues that the delays and inadequacies in his state court proceedings, the time elapsed since his conviction, and his permanent incompetence have prejudiced him by rendering certain claims, including his ineffective assistance of counsel claims, unreviewable in any meaningful way.  As a result, Petitioner argues he is nevertheless entitled to a permanent stay.  *See* Docket No. 226 at 45.  In support, Petitioner asserts that federal habeas law allows for flexible remedies responsive to the petitioner's specific circumstances, citing *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).  In *Lujan*, the district court granted a petitioner's habeas claim and allowed the state to modify the petitioner's convictions, originally for first-degree murder, to second-degree murder in lieu of releasing or retrying him.  *Id*. at 933.  The Ninth Circuit explained that district courts have wide discretion in fashioning a remedy as long as it is "tailored to the injury suffered from the constitutional violation and [does] not unnecessarily infringe on competing interests."  *Id*.  The Ninth Circuit then vacated the trial court's remedy on other grounds.  *Id*. at 935.  *Lujan* is inapposite in this context.  This Court has not granted Petitioner's

---

[16] The Ninth Circuit recognized that "the [Supreme] Court's conclusion that '[w]here there is no reasonable hope for competence, a stay is inappropriate' " was applicable to post-AEDPA petitions in *Medina v. Chappell*, 781 F.3d 1076, 1089-91 (9th Cir.), vacated and remanded, 782 F.3d 1115 (9th Cir. 2015), which was vacated as moot upon the petitioner's death shortly after it issued its decision.  While the opinion has no precedential value, it is instructive.

[17] The Court will not decide at this time whether Petitioner is incompetent for purposes of execution.

1    habeas petition and is not fashioning a remedy based on Petitioner's showing that a constitutional

2    violation has occurred as in *Lujan*. Accordingly, *Lujan* lends no support to Petitioner's contention

3    that he is entitled to an indefinite stay at this point in his litigation, and certainly does not support

4    Petitioner's argument that the Court has the power to grant such a stay in this context.

5    In any event, Petitioner's argument lacks factual merit. Petitioner argues that the various

6    issues related to funding, passage of time, ineffective assistance of counsel, and concealment of

7    evidence by the State renders Petitioner's ability to exhaust his claims futile. The Court rejects

8    that argument. First, Petitioner has not explained how the alleged paucity of funding for his

9    representation in state court during his past habeas proceedings would render his exhaustion

10   petition ineffective in light of the fact that Petitioner has *already* obtained a significant amount of

11   new evidence through discovery and competency proceedings in this Court, including evidence

12   regarding Petitioner's incompetence, *Batson* issues, alleged ineffective assistance of counsel, and

13   various other documents related to his claims that could ultimately entitle him to relief in state

14   court. Moreover, Petitioner has not shown that circumstances will render the process ineffective;

15   on the contrary, many of Petitioner's arguments before this Court regarding why the Court should

16   estop Respondent from asserting nonexhaustion – including the alleged suppression of evidence

17   by the state and ineffective assistance of counsel – may be made before the California Supreme

18   Court to cure any procedural default. *See In re Clark*, 5 Cal. 4th 750, 775 (1993) ("where the

19   factual basis for a claim was unknown to the petitioner and he had no reason to believe that the

20   claim might be made, or where the petitioner was unable to present his claim, the court will …

21   consider the merits of the claim if it is asserted as promptly as reasonably possible"); *see also In re*

22   *Reno*, 55 Cal.4th 428, 463 (2012) (court may, in some circumstances, consider the merits of a

23   claim not previously presented by incompetent habeas counsel).

24   Accordingly, Petitioner's Motion for Equitable Relief is **DENIED**.

25   C.   Motion for Sanctions & Administrative Motion

26   Petitioner argued in his Motion for Sanctions that the Court should enter a default

27   judgment in his favor on Claim 3, his *Batson* claim, based on the State's purported concealment of

28   evidence supporting the claim. *See* Docket No. 228 at 8. However, following a hearing on the

motion, in which the Court indicated that relief for Petitioner was dubious,[18] Petitioner filed an Administrative Motion in which the attached Proposed Surreply introduced new citations and sought to narrow Petitioner's proposed remedy for his Motion for Sanctions. *See* Docket No. 274 at 2 & No. 247-2 at 2-3.

As a threshold matter, the Court considers Petitioner's Administrative Motion. In support of his Administrative Motion, Petitioner argues that the allegations and legal authorities in the Proposed Surreply (Docket No. 247-2) were not presented before due to the exhaustion of his attorneys' Phase 2 CJA budget, and that the attorneys "could not have presented these facts and law through the exercise of reasonable diligence before the Court raised its questions at the March 9, 2017 hearing." Docket No. 274 at 2; *see* No. 274-2 at 1. Additionally, Petitioner narrows the proposed remedy for his Motion for Sanctions: rather than seeking a default judgment on Claim 3, Petitioner now seeks that the Court grant him *de novo* review on Claim 3 following the conclusion of his exhaustion proceedings. *See* Docket No. 247-2 at 2-3. In his opposition, Respondent argues that the allegations and legal authorities in the Proposed Surreply should have been included in Petitioner's prior briefs because they are simply additional authorities in support of Petitioner's original arguments and that Petitioner has not shown good cause for filing them after the hearing. *See* Docket No. 275 at 3. Respondent's opposition does not reference or acknowledge the new proposed sanctions remedy in Petitioner's Proposed Surreply.

Having considered both parties' arguments, the Court finds that although Petitioner could have arguably presented the allegations and legal authorities on his own in a previous filing, the authorities contained in the Proposed Surreply were responsive to specific questions posed by the Court at the March 9, 2017 hearing, especially as they related to the futility of California exhaustion procedures and the Court's power to grant the sanction sought by Petitioner. Petitioner's Administrative Motion is therefore **GRANTED**.

However, the Court concludes it would be inappropriate to consider the additional

---

[18] Specifically, the Court expressed skepticism that it had the power to grant Petitioner a default judgment on an unexhausted claim based on section 2254(b)'s explicit prohibition against waiving or otherwise preventing the State's ability to require exhaustion of state remedies. The Court also questioned whether there was any basis for a Rule 37 remedy in this case.

allegations and legal authorities at this time because Petitioner's new proposed remedy, i.e., that the Court consider Claim 3 *de novo* following Petitioner's exhaustion proceedings, renders the Motion for Sanctions premature. *See* Docket No. 247-2 at 2-3. First, the Court has not yet granted any request for a *Rhines*[19] stay while Petitioner exhausts his claims in state court. Moreover, Petitioner's requested remedy presupposes that should Petitioner return to the California Supreme Court for exhaustion proceedings, the court will deny his *Batson* claim. However, denial of Petitioner's *Batson* claim is not certain. Petitioner's claim contains significant new evidence that could very well excuse any procedural default and potentially prove meritorious in state court. *See In re Clark*, 5 Cal. 4th 750, 775 (1993) ("where the factual basis for a claim was unknown to the petitioner and he had no reason to believe that the claim might be made, or where the petitioner was unable to present his claim, the court will . . . consider the merits of the claim if it is asserted as promptly as reasonably possible"); *see Foster v. Chatman*, 136 S.Ct. 1737 (2016) (using prosecutor's file to find discriminatory intent in prosecutor's peremptory challenges).

Accordingly, Petitioner's Motion for Sanctions (Docket No. 228) is **DENIED WITHOUT PREJUDICE.** Petitioner may re-file a sanctions motion seeking his new proposed remedy following the conclusion of any exhaustion procedures should it still be necessary at that time.

D.      Request for Hearing Pursuant to 28 U.S.C. § 2254(e)(2)(A)(ii) & (b)(1)(B)

Petitioner asserts he is entitled to waiver of the exhaustion requirement and is entitled to a hearing to resolve factual issues related to his argument that he should be excused from the exhaustion requirement as to all claims. *See* Docket No. 261 at 9.

The Court first notes that section 2254(e)(2)(A)(ii) does not establish an exception to the exhaustion requirement, but rather addresses the circumstances under which the Court may hold an evidentiary hearing on a claim that lacked factual development in state court. 28 U.S.C. § 2254(e)(2) ("If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant

---

[19] *Rhines v. Webber*, 544 U.S. 269, 277 (2005).

shows that (A) the claim relies on— . . . (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense").  Nothing in section 2254(e)(2)(A)(ii) relieves the exhaustion requirement; it addresses a different and distinct issue of when an evidentiary hearing on the merits may be held.  Moreover, Petitioner has not shown that further factual development is necessary to address his arguments that he should be excused from the exhaustion requirement.

Petitioner has failed to cite any relevant authority showing he is entitled to a hearing on these grounds; Petitioner's request for a hearing for "resol[ution of] factual issues" related to his failure to exhaust is therefore **DENIED**.

E.      Request for Stay Re Proposition 66

Petitioner argues that the Court should stay proceedings pending resolution of *Briggs v. Brown* (S238309), wherein the California Supreme Court is considering a challenge to Proposition 66.  Docket No. 261 at 3.

Proposition 66, approved by California voters on November 8, 2016, makes several changes to California's death penalty implementation and collateral review scheme.  Petitioner points to one portion of Proposition 66, California Penal Code section 1509(d), in arguing that he is entitled to a stay.  Section 1509(d) states in relevant part:  "An initial petition which is untimely under subdivision (c) or a successive petition whenever filed shall be dismissed unless the court finds, by the preponderance of all available evidence, . . . that defendant is actually innocent of the crime of which he or she was convicted."  Petitioner argues that if this provision is upheld, it will render futile further efforts of exhaustion in the California state courts.

In *Briggs*, the petitioners are challenging the implementation of Penal Code section 1509(d), arguing that it "abandons regard for fundamental fairness and integrity in the capital trial and post-conviction process, purely to rush capital defendants to the execution chamber and prevent courts from addressing wrongs.  The new procedural bars turn on its head the rationale the California Supreme Court provided in [*In re Clark*, 5 Cal.4th 750, 776-87 (1993)] for excepting

claims from procedural default when there is a 'fundamental miscarriage of justice.' "[20]

As noted, Petitioner contends that requiring that he exhaust his claims during the pendency of *Briggs* would be "unfair" because Proposition 66, once enacted, would render his exhaustion petition futile. *Id.* at 3; Docket No. 269 at 6. As *Briggs* challenges the implementation of Proposition 66, including Penal Code section 1509(d), Petitioner seeks a stay pending *Briggs*.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248. 254 (1936); *Dependable Highway Express v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Whether to stay proceedings is entrusted to the discretion of the district court. *Landis*, 299 U.S. at 254. In determining whether a stay is appropriate pending the resolution of another case, a district court must consider various competing interests, including the possible damage which may result from the granting of a stay; the hardship to the parties if the suit is allowed to go forward; and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–10 (9th Cir.2005); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.1962). Additionally, a district court must consider whether a stay pending resolution of another case is likely to be resolved in a reasonable amount of time because of our duty to adjudicate habeas petitions in a reasonable time frame. *Yong v. INS*, 208 F.3d 1116, 1119–20 (9th Cir. 2000). The burden is on the movant to show that a stay is appropriate. *See Clinton v. Jones*, 520 U.S. 681, 708 (1997).

Petitioner has failed to carry his burden. As to the potential length of a stay pending the resolution of *Briggs*, Petitioner points only to *Briggs*'s briefing schedule.[21] While oral argument

---

[20] *See Briggs* (S238309), Petition for Writ of Mandate at 35 (accessed on February 1, 2017 at https://www.dropbox.com/sh/wisbubhyoi2maz7/AAATRdd0FTZms0h-h0zKjpy8a?dl=0).

[21] Petitioner contended that the briefing was due by March 20; the Court, however, has determined that the California Supreme Court entertained replies to amicus briefs until April 6, 2017. The order was accessed on April 16, 2017 at http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2169445&doc_no=S238309.

1    has been set, neither the parties nor the Court can forecast when the California Supreme Court will

2    ultimately issue a decision on the matter or whether further litigation related to *Briggs* will ensue.

3    The stay could be lengthy. Petitioner also alleges potential hardship by arguing that the California

4    Supreme Court will "rubber stamp" Penal Code section 1509(d), which would in turn moot his

5    exhaustion petition. *See* Docket No. 261 at 4. However, this assertion is speculative. Petitioner

6    also fails to offer support for his assumption that Penal Code section 1509(d)'s ban on successive

7    petitions will be upheld without alternative equitable grounds such as those discussed in *In re*

8    *Clark*, 5 Cal.4th at 776-87. Accordingly, Petitioner's arguments for a stay are unpersuasive.[22]

9          On the other hand, should this Court stay the case until *Briggs* is decided, and then a ruling

10   is issued in *Briggs* that does not render exhaustion futile, valuable time would have been wasted.

11   Moreover, given the work completed in finalizing the federal petition, it would not take an

12   inordinate amount of work by Plaintiff to commence the exhaustion process in state court. Should

13   Proposition 66 be fully upheld, potentially rendering Petitioner's exhaustion petition futile,

14   Petitioner would be able to return to this Court to present his claims and make his argument that

15   Proposition 66 effectively renders the California habeas scheme defective for purposes of

16   exhaustion. In the meantime, Petitioner will have an opportunity to fully present, and perhaps

17   obtain relief on, his claims in state court.

18          The Court finds that a stay is not warranted under these circumstances; Petitioner' request

19   is **DENIED**.

20                 **V.**      **CONCLUSION**

21          The Petition for Writ of Habeas Corpus is partially unexhausted:

22          Claims 5, 6, 16, 17A, 17B, 17C, 17F, and 17H are fully exhausted.

23

24   _____

[22] Petitioner alternatively argues this Court should stay proceedings to ensure that the Court has

25   the opportunity to rule on whether Proposition 66 renders California's state habeas proceedings
defective under section 2254(b)(1)(B). *See* Docket No. 261 at 3 & No. 269 at 5. In support,

26   Petitioner cites *Federal Election Commission v. Wisconsin Right To Life, Inc*., 551 U.S. 449, 462
(2007), which discusses whether the federal courts had Article III jurisdiction to hear a nonprofit

27   agency's challenge to a piece of legislation despite the fact that the nonprofit's challenge was
effectively mooted prior to the conclusion of litigation. However, this Court is considering

28   whether to grant Petitioner a stay, not whether it has Article III jurisdiction to entertain a
constitutional challenge to Proposition 66. *Federal Election Commission* is therefore inapposite.

1    Claims 3, 4, 8, 9, 12, 15, 17 (including 17D, 17E, and the unlabeled cumulative claim), 18,

2    and 20 are partially unexhausted.

3    Claims 1, 2, 7, 10, 11, 13, 14, and 19 are fully unexhausted.

4    Respondent's Motion to Dismiss is **DENIED WITHOUT PREJUDICE** and may be

5    renewed following the filing of Petitioner's motion to dismiss unexhausted claims or request for a

6    *Rhines* stay.

7    Petitioner's Motion for Equitable Relief is **DENIED**.

8    Petitioner's Administrative Motion is **GRANTED**.

9    Petitioner's Motion for Sanctions is **DENIED WITHOUT PREJUDICE**.

10    Petitioner's request for an evidentiary hearing on the waiver of exhaustion requirements

11    pursuant to 28 U.S.C. § 2254(e)(2)(A)(ii) & (b)(1)(B) is **DENIED**.

12    Petitioner's request for a stay until Proposition 66 is certified and no longer stayed is

13    **DENIED**, but may be subject to review after the California Supreme Court rules on the legality of

14    Proposition 66.

15    Petitioner shall file any motion to dismiss unexhausted claims or request for a *Rhines* stay

16    within thirty (30) days of this order.  Respondent's opposition will be due fourteen (14) days

17    following service of Petitioner's motion or request, and Petitioner must file any reply within seven

18    (7) days following service of Respondent's opposition.

19    This order disposes of Docket Nos. 226, 228, 260, 262, and 274.

20

21    **IT IS SO ORDERED.**

22

23    Dated: May 22, 2017

24    _____

25    EDWARD M. CHEN
      United States District Judge

26

27

28

60