UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DARREN CORNELIUS STANLEY, | Case No. 07-cv-04727-EMC |
|---|---|
| Plaintiff, | **DEATH PENALTY CASE** |
| v. | **ORDER GRANTING PETITIONER'S MOTION FOR *RHINES* STAY AND DENYING REQUEST TO DEEM PETITION TECHNICALLY EXHAUSTED** |
| ROBERT AYERS, et al., | |
| Defendants. | |

Docket Nos. 277, 290

Respondent Ron Davis filed a motion to dismiss the petition for writ of habeas corpus on the ground that it contains multiple unexhausted claims for relief. Docket No. 47. On May 22, 2017, the Court denied Respondent's motion without prejudice, but determined that 17 claims were either fully or partially unexhausted. Petitioner, a condemned inmate at San Quentin State Prison, now seeks to stay the current proceedings pursuant to *Rhines v. Weber*, 544 U.S. 269, 278 (2005), to return to state court to exhaust the unexhausted claims, or, alternatively, find the petition technically exhausted under the assumption that any successive state petition would be dismissed by the California Supreme Court as a result of the enactment of Proposition 66. *See* Docket Nos. 277, 286. Respondent opposes the motion to stay, arguing that Petitioner has failed to show good cause for the stay, and further opposes Petitioner's request that the Court deem the petition technically exhausted. Docket No. 281. For the following reasons, the motion to stay proceedings while Petitioner returns to state court is **GRANTED** and Petitioner's request that the Court deem his petition technically exhausted is **DENIED**.

## I. BACKGROUND

Petitioner was sentenced to death by the Superior Court of California in the County of Alameda in 1991. The California Supreme Court affirmed Petitioner's convictions and death judgment on direct appeal in 2006, *People v. Stanley*, 39 Cal. 4th 913 (2006),[1] and summarily denied his petition for writ of habeas corpus in 2009, *In re Stanley on Habeas Corpus*, S106165. While his state habeas case was still being litigated, Petitioner initiated the present habeas action by asking the Court to appoint counsel and to stay his execution on September 13, 2007. Petitioner, acting *pro se*, filed a protective petition on July 8, 2010.

On November 28, 2011, the Court issued a stay of this matter in order to examine issues related to Petitioner's competency under *Rohan v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003), abrogated on other grounds in *Ryan v. Gonzales*, 568 U.S. 57, 64-71 (2013). *See* Docket No. 39. On July 16, 2013, the stay was partially lifted in order to examine issues related to Petitioner's competency under *Ford v. Wainwright*, 477 U.S. 399 (1986), and to refer the case for settlement. Docket No. 106. No settlement was reached. After disposing of three previous motions[2] for equitable tolling, on March 10, 2016, the Court lifted its stay and granted Petitioner's fourth Motion for Equitable Tolling. *See* Docket No. 214.

Respondent filed a motion to dismiss the petition and, following briefing, the Court determined that the petition contains 17 unexhausted claims and/or subclaims. The Court denied the motion to dismiss without prejudice and instructed Respondent to renew after the Court rules on the *Rhines* motion. Petitioner filed a motion to stay and abey his federal proceedings to allow him to return to state court to exhaust unexhausted claims. *See* Docket No. 277. Respondent filed an opposition on July 17, 2017. *See* Docket No. 281. On August 25, 2017, the Court ordered supplemental briefing on the effects of Proposition 66. *See* Docket No. 284.

---

[1] The U.S. Supreme Court denied review on March 5, 2007. *Stanley v. California*, 549 U.S. 1269 (2007).

[2] The Court denied without prejudice Petitioner's *pro se* Motion for Equitable Tolling (Docket No. 10), granted in part and denied in part a second motion (Docket No. 26), and denied without prejudice a third motion (Docket No. 106).

2

## II. LEGAL STANDARD

The Supreme Court follows a rule of "total exhaustion" requiring that all claims in a habeas petition be exhausted before a federal court may grant the petition. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). A district court is permitted, however, to stay a mixed petition to allow a petitioner to exhaust his claims in state court without running afoul of the one-year statute of limitations period to file for federal habeas review imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Rhines*, 544 U.S. at 273-75. A district court must stay a mixed petition if: (1) the petitioner has good cause for his failure to exhaust his claims, (2) the unexhausted claims are potentially meritorious, and (3) there is no indication that the petitioner intentionally engaged in dilatory tactics. *Id.* at 278.

## III. DISCUSSION

Petitioner alleges that prosecutorial misconduct and California's inadequate funding for his state habeas investigation constitute good cause for his failure to exhaust claims 3, 7, 8, and 9, and 19. In addition, Petitioner contends he has good cause for the failure to exhaust Claim 19 because the factual basis for his *Ford*-plus claim did not arise until after he filed his state habeas petition. He contends his claims are potentially meritorious, and that he has not been dilatory in pursuing the unexhausted claims. Respondent argues that Petitioner does not meet the *Rhines* requirements for a stay. As discussed below, Petitioner meets those requirements.

A. Good Cause

The Supreme Court has not articulated with precision what constitutes "good cause" for purposes of granting a stay under *Rhines*. In *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), the Supreme Court stated in dicta that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court" without exhausting state remedies first.

The Ninth Circuit has clarified that "good cause" for failure to exhaust does not require "extraordinary circumstances." *Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005). Nonetheless, the good cause requirement should be interpreted in light of the Supreme Court's admonition that stays be granted only in "limited circumstances" so as not to undermine AEDPA's

twin goals of reducing delays in the execution of criminal sentences and streamlining federal habeas proceedings by increasing a petitioner's incentive to exhaust all claims in state court. *Wooten v. Kirkland*, 540 F.2d 1019, 1024 (9th Cir. 2008).

1. Claim 3

As to claim 3's unexhausted *Batson* subclaims, Petitioner argues that the prosecutor committed misconduct when he falsely stated that he excused the jurors at issue based on their sympathy for Petitioner. Petitioner argues he was unable to present evidence of the prosecutor's discriminatory intent and/or racial animus during state proceedings because the state misrepresented the content of the prosecutor's voir dire notes. The notes, which were turned over to Petitioner in 2013, include words such as "Black," "B," or "Dark," in the notations regarding black prospective jurors. The notes do not include the phrase "sympathy for the defendant," which Petitioner argues contradicts the prosecutor's statements during his *Batson*/*Wheeler*[3] hearings. *See* Docket No. 277 at 3-5.[4]

The Ninth Circuit has held that the "omi[ssion] of additional evidence rendering [a claim] unexhausted because [the petitioner] had no knowledge of it due to the misconduct of the prosecution" can be good cause for a *Rhines* stay. *See Valdovinos v. McGrath*, 598 F.3d 568, 574 (9th Cir. 2010), judgment vacated on other grounds, *Horel v. Valdovinos*, 562 U.S. 1196 (2011). Here, Petitioner argues that the notes support his contention that the prosecutor impermissibly based his decision to challenge the prospective jurors at issue on race rather than any sympathy for him. Petitioner further argues that he did not know that the notes reflected the prospective jurors' race or skin color, and not a notation that they had "sympathy for the defendant," due to the state's misrepresentation of the contents of the notes on the record. *See* Docket No. 281 at 9.

---

[3] California's *Wheeler* motions mirror *Batson* claims.

[4] Respondent argues that Petitioner cannot go back to present evidence for an already-exhausted claim. However, Respondent has previously argued that Petitioner's *Batson* claim was unexhausted, and, after examining the paragraphs and subclaims cited by Respondent, this Court agreed. *See* Docket No. 276 at 6-12. Unless Respondent is now waiving his exhaustion objection as to Claim 3, Respondent is not permitted to take inconsistent positions. The Court has already ruled on exhaustion; it rejects Respondent's attempt to now assert this new position. The issue here is whether Petitioner has shown good cause for his failure to exhaust.

4

Specifically, Petitioner argues the state misrepresented the contents of the notes during the *Batson/Wheeler* pretrial hearings and again when the Attorney General stated, during oral argument for Petitioner's direct appeal, that "the prosecutor came down to not having his notes but *having made a notation saying sympathy for the defendant, sympathy for the defendant*." *See* Docket No. 228 at 4 (emphasis added).

Respondent does not dispute that the voir dire notes were not turned over to Petitioner until 2013 and instead argues the Attorney General's Office did not misrepresent the record to the California Supreme Court because the record "does not support [P]etitioner's assertion that the prosecutor said he wrote down the actual phrase 'sympathy [for] the defendant' in his notes." *See* Docket No. 281 at 19, fn. 19. As Petitioner notes in his reply brief, however, Respondent's present characterization of the facts is inconsistent with the facts as found by the California Supreme Court in its opinion on direct appeal. *See People v. Stanley*, 39 Cal.4th 913 (2006). Apparently relying on the prosecutor's statements during the *Batson/Wheeler* hearings that he "ha[d] notes" and "ha[d] sympathy for the defendant" as the reason for challenging the jurors at issue, the California Supreme Court stated throughout its opinion that "the relevant voir dire transcripts reflect that the prosecutor was using the notation 'sympathy for the defendant' in his notes." *Id.* at 945. Respondent also asserts the prosecutor's "Big Spin" cards[5] likely had notations showing the challenged jurors had sympathy for the defendant, albeit not the phrase "sympathy for the defendant." This contention is similarly at odds with the facts as found by the California Supreme Court. *See id.*

Based on the California Supreme Court's interpretation of the facts and Respondent's failure to correct the record to reflect the facts he now asserts, Petitioner understandably took the prosecutor's statements during the *Batson/Wheeler* hearing to mean that he wrote "sympathy for the defendant" in his voir dire notes. The state was the only party with access to the prosecutor's voir dire notes at the time the California Supreme Court issued the opinion at issue[6] and the

---

[5] It appears that the prosecutor never offered to place the "Big Spin" cards into the record or turn them over to the Attorney General. *See* Docket No. 281 at 19-20, fn. 5.

[6] While his direct appeal was pending, Petitioner filed a California Public Records Act request

5

Attorney General was therefore the only party with the ability to notify the state court that the voir dire notes did not contain the phrase "sympathy for the defendant." The Attorney General's failure to do so cannot be fairly attributed to Petitioner. Accordingly, the Court concludes Petitioner has "set forth a reasonable excuse, supported by sufficient evidence, to justify [the failure to exhaust]." *Blake v. Baker*, 745 F.3d 977, 983-984 (9th Cir. 2014). Petitioner has shown good cause for the failure to exhaust.

2. Claims 7, 8, and 9

In claim 7 and the unexhausted portions of claims 8 and 9, Petitioner argues that trial counsel was ineffective in failing to assert Petitioner was incompetent to stand trial, assert an insanity defense during the guilt phase of trial, and present mitigating evidence at the penalty phase of trial, respectively. Petitioner argues he was unable to discover various pieces of supporting evidence that ultimately led to the development of his unexhausted claims due to the state's failure to adequately provide funding to his habeas attorney, trial counsel's non-cooperation in state habeas counsel's investigation, and the California Supreme Court's failure to grant formal discovery proceedings after the petition was filed, depriving him of the ability to depose his otherwise non-cooperative trial attorneys. As to some pieces of evidence, such as his former attorneys Lincoln Mintz and Richard Hove's disbarments, Petitioner argues he could not have included the evidence because it did not exist at the time he filed his state petition. *See* Docket No. 277 at 12.

Neither the Supreme Court nor the Ninth Circuit have articulated whether these circumstances constitute "good cause" for the failure to exhaust. However, district courts within the Ninth Circuit have found "good cause" to require at least a showing of some "circumstance over which [petitioner] had little or no control" that prevented the petitioner from asserting the

---

seeking the prosecution's entire case file and all exculpatory or impeaching evidence, but received no additional materials. *See* Docket No. 252 at 11. Petitioner then filed a writ of mandate in Alameda County seeking the entirety of the prosecutor's case file and all *Brady* materials to no avail. Petitioner's appeal from that denial was also denied after the prosecutor filed an affidavit stating that there were no additional documents in the file. *See* Docket No. 283 at 10. There is also nothing in the record to suggest that Petitioner was ever able to look at the voir dire notes before or after trial court disallowed the prosecutor from placing the notes into the record following its ruling on the *Batson*/*Wheeler* motions.

6

unexhausted claim in state court. *Riner v. Crawford*, 415 F.Supp.2d 1207, 1211 (E.D. Nev. 2006); *see Hernandez v. Sullivan*, 397 F.Supp.2d 1205, 1207 (C.D. Cal. 2005) (holding that "good cause" standard requires that "a petitioner ordinarily must show that the default resulted from an objective factor external to the petitioner which cannot fairly be attributed to him").

Here, it is undisputed that the California Supreme Court denied state habeas counsel's 2001 request for funds in order to conduct investigation and mental health expert consultations. *See* Docket No. 277 at 12. Counsel's request was submitted one year after the discovery of Petitioner's CYA records. While Respondent faults Petitioner for not obtaining the CYA records sooner, Respondent fails to address the state's own role in counsel's delay in obtaining the records, including the prosecutor's failure to turn over the CYA records before trial, the CYA's failure to retain a copy of the report, the Attorney General's office failure to disclose the report after trial, and the state court's failure to order the state to turn the records over after Petitioner filed a suit seeking all *Brady* material while his appeal was pending.[7] *See* Docket No. 283 at 8-11. Petitioner has provided the Court with ample evidence showing that his trial and appellate counsel sought and were not able to obtain the CYA report in time to utilize it.

Moreover, there appears to be no dispute that Petitioner's trial counsel refused to cooperate with his state habeas investigation. The Court notes that, prior to the 2003 enactment of California Penal Code § 1054.9, California law did not permit formal discovery in state habeas proceedings unless the California Supreme Court issued an order to show cause. *See In re Steele*, 32 Cal.4th 682, 690 (2004). Understandably, after his separate civil actions seeking discovery in Alameda County were rejected, Petitioner did not request formal discovery until he filed his state habeas petition. *See* Docket No. 283 at 10. Respondent's argument that counsel should or could have obtained formal discovery prior to the denial of his last funding request is therefore unpersuasive. Based on the foregoing, the Court concludes Petitioner has shown good cause for failing to raise claim 7 and the unexhausted portions of claims 8 and 9.

---

[7] Respondent's new allegation that counsel could have obtained the CYA report directly from the Alameda County trial court's file is inadequate as there is no indication the court file contained the CYA documents.

7

### 3. Claim 19

In claim 19, Petitioner argues that he is permanently incompetent to be executed. The parties agree that the factual basis for the claim arose after Petitioner's state habeas petition was filed. Petitioner argues that he did not have factual basis for claim 19 until sometime between 2014 and 2016, well after the California Supreme Court had rejected his habeas petition. Respondent, on the other hand, argues that the CAT scan conducted in 2007, two years before the California Supreme Court issued its ruling on Petitioner's state habeas petition, should have been a sufficient basis to raise the claim. However, even assuming that the 2007 CAT scan would have been sufficient to raise a factual question regarding Petitioner's *Ford*-plus competency, state habeas counsel had already maxed out state funding for his investigation by 2001, as noted by the California Supreme Court when it denied counsel's request for funding to pay his investigator and experts. *See* Docket No. 226 at 33. Thus, Respondent in effect suggests that state habeas counsel should have continued investigating Petitioner's claims for nearly eight years the state habeas petition was pending despite the California Supreme Court's inability to reimburse counsel for any of the expenses incurred by such an investigation. There is no support for foisting such a requirement on state habeas counsel and attributing counsel's failure to Petitioner. Accordingly, the Court concludes Petitioner has shown good cause for his failure to raise claim 19 during state habeas proceedings.

### B. Merit of Claims

Petitioner argues that all of his unexhausted claims are potentially meritorious and that each meets the requirements for a stay under *Rhines*. See Docket No. 277 at 8. Under the second prong of the *Rhines* test, a district court would abuse its discretion if it were to grant a petitioner a stay when his claims are plainly "meritless." *Rhines*, 544 U.S. at 277. Here, Petitioner has articulated cognizable constitutional claims supported by relevant legal authority, and has presented such evidence and offers of proof as are presently available to him. Based on a review of the record, Petitioner's unexhausted claims are not plainly meritless.

### C. Absence of Dilatory Tactics

Under the third prong of the *Rhines* test, "it likely would be an abuse of discretion for a

district court to deny a stay and to dismiss a mixed petition if . . . there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. Respondent repeatedly contends that Petitioner's continued litigation of his claims in federal court, such as his motion for sanctions and his motion for equitable relief, is a dilatory tactic. However, it would have been irresponsible for Petitioner to return to state court before this Court issued its ruling on a Rhines stay motion, as such a course of action would have undermined this Court's orderly process for litigating capital habeas actions that is established in this Court's Habeas Local Rules. Moreover, to require a habeas petitioner to present a state exhaustion petition prior to a ruling by a federal court on questions regarding exhaustion would place a petitioner in the untenable position of either wasting the state court's resources by presenting exhausted claims to it a second time or unnecessarily submitting successive petitions to the state court.

Petitioner has been following this Court's Habeas Local Rules and orders in litigating his petition, and was unable to bring these claims sooner because they were not developed prior to federal habeas counsel's investigation. There is no evidence that Petitioner has engaged in dilatory litigation tactics to date. Petitioner satisfies the third prong of *Rhines*.

D. <u>Proposition 66</u>

Following the completion of briefing on the pending motions, but prior to the issuance of an order resolving them, the California Supreme Court issued a decision in *Briggs v. Brown*, S238309, upholding the validity of Proposition 66. *See Briggs*, 3 Cal.5th 808 (2017). Proposition 66 amends Cal. Penal Code section 1509 to add subsection (d), which calls for California state courts to dismiss successive habeas petitions unless a court finds the "defendant is actually innocent of the crime of which he or she was convicted or is ineligible for the sentence." "Ineligible for the sentence" has a particular meaning under the statute and a specific list of enumerated claims that can be brought under that provision. This appears to foreclose exhaustion petitions if an initial habeas corpus petition has been filed and decided by the state court, except in rare instances. Thus, the Court requested further briefing on any impact *Briggs*[8] and Proposition

---

[8] *Briggs* became final on October 25, 2017.

9

66 might have on Petitioner's ability to return to state court and exhaust his claims.

In his brief, Petitioner argues that *Briggs* effectively forecloses available state remedies and requests that the Court find his petition technically exhausted for purposes of 28 U.S.C. § 2254(b). Respondent, on the other hand, argues that any decision on the impact of Proposition 66 at this stage would be speculative in nature, pointing to certain open legal questions as to the applicability of the new section to certain petitioners, including those who filed a habeas petition prior to the enactment of Proposition 66 and petitioners seeking so-called "*Ford*-plus" claims.

After consideration of the parties' respective arguments, the Court is in agreement with Respondent. There is no evidence that the California Supreme Court has disallowed the filing of any habeas petitions or dismissed any pending petitions pursuant to § 1509(d). The Court cannot rely on speculation regarding the effects of that provision on California inmates' ability to receive relief on successive petitions under the circumstances presented by Petitioner's claims. Accordingly, the Court cannot rule at this time that returning to state court would be futile based on § 1509(d). Petitioner's request that the Court deem his petition technically exhausted is **DENIED**.

E.  Discovery

Petitioner has also filed a Motion for Authority to Issue Subpoena Duces Tecum. *See* Docket No. 290.

Unlike ordinary civil litigants, habeas petitioners must obtain the district court's permission before they may conduct any discovery. Discovery may be taken only to the extent that the district court, in the exercise of its discretion and for good cause shown, allows it. *See* Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts; 28 U.S.C. § 2254. Good cause for discovery under Rule 6(a) is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *See Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (citation omitted).

As a threshold matter, Respondent contends Petitioner is not entitled to Rule 6 discovery because the Court has already determined the petition is not fully exhausted. After carefully

reviewing the parties' briefs and relevant law, the Court concludes Respondent is correct. The Ninth Circuit has unambiguously held that Rule 6 "[d]iscovery requests should not be granted when the petition filed involves both exhausted and unexhausted claims." *Calderon v. United States Dist. Ct.* ("*Thomas*"), 144 F.3d 618, 621 (9th Cir. 1998); *see Calderon v. United States Dist. Ct.* ("*Roberts*"), 113 F.3d 149 (9th Cir. 1997) (holding district court erred in granting discovery when there was no "valid" petition pending); *see also Bonilla v. Davis*, No. 08-CV-0471 YGR, 2016 WL 7211119, at 2 (N.D. Cal. Dec. 13, 2016) ("Petitioner does not have a 'valid' petition because it is not a fully exhausted one").

Petitioner argues he is nevertheless entitled to discovery under Rule 27(a) of the Federal Rules of Civil Procedure because "Landswick's notes from other jury selections would assist Petitioner in [the] truth-seeking process" and "Landswick's recent death "bears on the urgency and timeliness of [Petitioner's discovery] request." *See* Docket No. 290 at 8. Assuming arguendo that Petitioner had shown he was entitled to the discovery he seeks pursuant to Rule 27(a), however, Petitioner has cited no authority suggesting Rule 27 discovery may be ordered where a mixed petition is pending. While the Ninth Circuit has upheld a district court's decision to grant discovery on an unexhausted claim pursuant to Rule 27, it did so only after the petitioner dismissed the unexhausted claims and therefore had a filed and valid petition. *Thomas*, 144 F.3d at 621; *see Tennison v. Henry*, 203 F.R.D. 435, 439-40 (N.D. Cal. 2001) ("*Where a habeas petition containing only exhausted claims is before the court*, there is 'good cause' to permit discovery") (emphasis added). As already noted, the same is not true here—Petitioner has not dismissed his unexhausted claims.

Accordingly, Petitioner's motion is **DENIED WITHOUT PREJUDICE**. Petitioner may renew his motion once a valid petition is pending before the Court.

### IV. CONCLUSION

For the above-mentioned reasons, the Court finds as follows:

1. Petitioner's motion for a stay is **GRANTED**;

2. Petitioner's request that the Court excuse exhaustion is **DENIED**;

3. Petitioner's motion for authority to issue a subpoena duces tecum is **DENIED**

**WITHOUT PREJUDICE**;

4. Counsel for Petitioner shall file an exhaustion petition raising all unexhausted claims and subclaims (*see* Docket No. 276 at 59-60) in state court within 90 days of the date of this Order;

5. To the extent that any claim contains allegations or supporting documentation that were not part of the state court record, pursuant to *Cullen v. Pinholster*, 131 U.S. 1388, 1400 (2011), such materials must be presented to the California Supreme Court before they may be reviewed by this Court under 28 U.S.C § 2254(d)(1). Accordingly, they should be included in the exhaustion petition;

6. One hundred and twenty days after the entry of this order, and every 90 days thereafter until proceedings in his state exhaustion case are completed, Petitioner shall serve and file in this court a brief report updating the Court and the parties on the status of his pending state habeas action. No later than 30 days after proceedings in his state case are completed, Petitioner shall serve and file notice that proceedings are completed.

This order disposes of Docket Nos. 277 and 290.

**IT IS SO ORDERED**.

Dated: June 1, 2018

EDWARD M. CHEN
United States District Judge