UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN CORNELIUS STANLEY,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT AYERS, et al.,<br><br>Defendants. | Case No. 07-cv-04727-EMC<br><br>**DEATH PENALTY CASE**<br><br>**ORDER DENYING PETITIONER'S MOTION TO PRESERVE EVIDENCE OF PETITIONER'S ACTIVITIES IN THE 5% NATION OF GODS AND EARTH AT SAN QUENTIN PRISON**<br><br>Docket No. 316 |

## I. INTRODUCTION

On August 27, 2019, Petitioner Darren Cornelius Stanley, a condemned prisoner at California's San Quentin State Prison, filed a Motion to Preserve Evidence of his Activities in the 5% Nation of Gods and Earth at San Quentin Prison. Docket No. 316. Specifically, Petitioner seeks an order requiring that administrators at San Quentin permit a hired videographer to enter San Quentin and record Petitioner's participation in three inmate practice group sessions involving Petitioner's ostensible religious belief system. Respondent opposes the motion. *See* Docket No. 321.

For the following reasons, Petitioner's motion is **DENIED**.

## II. BACKGROUND

In 1991, a jury convicted Petitioner on one count of first-degree murder, one count of attempted murder, and several counts of robbery. *See People v. Stanley*, 39 Cal. 4th 913, 919 (2006). The jury also found true the special circumstances that Petitioner committed murder during a robbery and that he used a deadly weapon in the commission of the murder and other

1 crimes. *Id.* Petitioner was sentenced to death and his conviction and death sentence were affirmed on appeal. *Id.* Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on April 24, 2002, which was summarily denied on July 8, 2009. *See* Docket No. 252 at ¶ 12. While his state habeas corpus petition was pending, Petitioner initiated federal habeas corpus proceedings by filing a motion to appoint counsel in this Court on September 13, 2007. After the conclusion of state habeas proceedings, Petitioner filed a protective federal habeas petition on July 8, 2010. *See* Docket No. 5.

Relevant to the instant motion, Petitioner filed his finalized federal habeas petition on October 12, 2016. *See* Docket No. 252. Thereafter, on June 1, 2018, the Court entered an Order (Docket No. 295) staying this matter pursuant to *Rhines v. Weber*, 544 U.S. 269, 278 (2005), so that Petitioner may return to state court to exhaust certain unexhausted claims presented in the finalized petition. Petitioner's state court exhaustion petition remains pending before the Alameda County Superior Court. *See* Docket No. 325. Petitioner's motion seeks to "preserve" evidence in support of his claim that he is permanently incompetent to be executed pursuant to *Ford v. Wainright*, 477 U.S. 399 (1986). This claim is alleged in Claim Nineteen of Petitioner's finalized federal habeas petition. *See* Docket No. 252 at ¶¶ 1099-1122. Because the claim is unexhausted, Petitioner has presented it in his state court petition for writ of habeas corpus that is presently pending before the Superior Court of Alameda County. *See* Docket No. 308-2 at 302-311.

### III.     ANALYSIS

Petitioner seeks an order of the Court requiring administrators at San Quentin to permit his hired videographer to enter San Quentin and record three separate ninety-minute sessions wherein Petitioner is acting as an "inmate facilitator" for 5% Nation of Gods and Earth ("5% NGE") inmate practice groups. Docket No. 316 at 13. Based on the reports of a prison chaplain who observed prior 5% NGE inmate practice sessions, Petitioner describes such sessions as "chaotic, contentious, and 'crazy,'" in that they were characterized by other inmates finding amusement in arguing with Petitioner about his beliefs. *Id.* at 5. He asserts that video recordings of additional sessions is essential to proof of his *Ford* claim because it will "conclusively dispel" Respondent's competency expert's assertion that Petitioner's beliefs about death and the afterlife are "'syntonic

with mainstream religious beliefs[,]'" and, therefore, are not inconsistent with Respondent's contention that Petitioner is not permanently incompetent to be executed. *Id.* at 5-6; Docket No. 322 at 8 ("We seek to preserve evidence of that which [the chaplain] described in order to show that the expressions of Petitioner's grandiose delusional thinking are not 'religious beliefs' at all."). He maintains that, as with the Court's prior order of evidence preservation in this case,[1] the All Writs Act provides the requisite authority for the Court to preserve the evidence at issue and that, for the same reasons previously articulated by the Court, the Court should again order preservation. *Id.* at 9-11.

To be sure, as the Court previously recognized, in limited circumstances, the All Writs Act, 28 U.S.C. § 1651, empowers this Court to act to preserve evidence where necessary to "facilitate the ultimate adjudication of a petition before this Court[.]" Docket No. 305 at 2. However, Petitioner's current evidence preservation request differs from his previous request. Unlike the previous request, which sought only preservation of tangible items of evidence in existence that Petitioner had shown were in danger of being destroyed and which could not be replaced, here Petitioner seeks an order permitting him to *create, rather than preserve*, evidence. Petitioner cites no authority for ordering such affirmative conduct. Petitioner's citation to *In re Thomas*, 155 F.R.D. 124 (D. Md. 1994)) is inapposite. In that case, the federal court ordered state prison officials to videotape one inmate's execution in order to preserve evidence for another inmate's anticipated federal court suit challenging Maryland's execution procedures. 155 F.R.D. at 127-28. However the federal court only intervened to ensure that evidence of the execution would be preserved for use in the later federal case because, due to limitations on access to the

---

[1] On September 17, 2018, after the Court stayed this matter pursuant to *Rhines*, the Court entered an Order (Docket No. 305) granting Petitioner's prior, unrelated motion for preservation of evidence. The prior motion sought an order "stating that the Alameda County District Attorney's Office shall not destroy voir dire notes and records in four capital cases tried by Ted Landswick, the prosecutor in Petitioner's case." Docket No. 305 at 1. Although the Court was cognizant of authority prohibiting an award of discovery in support of a mixed petition, the Court determined that, "[g]iven the limited nature of the request at issue," the All Writs Act empowered the court to act to preserve the subject evidence. *Id.* at 2. In reaching this conclusion, the Court noted that Petitioner had shown that "relevant portions of the voir dire notes in his own case have previously been omitted or destroyed" despite a retention policy, and, furthermore, the notes were "irreplaceable" because Mr. Landswick is deceased and "cannot be questioned about the contents of his voir dire notes." *Id.* at 4.

3

| | |
|---|---|
| 1 | execution process, such evidence was mostly inaccessible to the petitioner in *Thomas*. *See* 155 |
| 2 | F.R.D. at 126-27. Here, Petitioner seeks to create an event entirely accessible to Petitioner and |
| 3 | have it recorded. |
| 4 | Even if the request were construed as a mere request to preserve (as opposed to create) |
| 5 | evidence, it would not be granted. The Court previously explained that, when considering a |
| 6 | request to preserve evidence, a court weighs the following factors: |

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved.

Docket No. 305 at 3 (quoting *Echostar Satellite LLC v. Freetech, Inc.*, No. C 07-06124 JW, 2009 WL 8399038, at *2 (N.D. Cal. Jan. 22, 2009)). Application of this balancing test compels denial of the request in this instance. The character of the evidence Petitioner now seeks to preserve—information about his beliefs and understanding of death and the afterlife, or his delusions about the same, as revealed within the admittedly unique context of his interactions with other inmates—does not trigger substantial concern about "the continuing existence and maintenance of the integrity of the evidence." This is so because the evidence germane to the Court's inquiry, Petitioner's self-expression, remains within Petitioner's dominion. Although Petitioner cannot compel a particular forum in which to articulate his beliefs, or illustrate that his beliefs are mere delusions, there is no indication before the Court that Petitioner is unable to meaningfully articulate his beliefs, or illustrate his delusions, outside the context of inmate practice group sessions. Petitioner has submitted to interviews and examinations with experts in which he has explained his beliefs and, presumably, will remain able to do so. While Petitioner's contentious interactions with other inmates conceivably could provide helpful information in resolving his *Ford* claim, nothing before the Court suggests that video recordings of such interactions are indispensable in resolving the claim, especially considering the fact that Petitioner would be aware of the fact that his actions are being recorded. The value of the evidence Petitioner seeks to "preserve" is dubious; unlike critical notes of Mr. Landswick, there may be questions about the

4

inherent integrity of the evidence Petitioner seeks to create.

For the same reasons, the Court cannot conclude at this time that Petitioner has shown that he will suffer irreparable harm in the absence of a preservation order. Petitioner has not shown that he will be prejudiced by any delay in creating video recordings of his inmate practice group sessions until such time as the state court grants leave to Petitioner to conduct such discovery or this Court considers whether to do so when this matter is no longer stayed. Petitioner's argument otherwise is unpersuasive. He contends that, because his incompetency is apparently "worsening," "[t]his may well be our last chance to preserve evidence of him 'in situ' – addressing those very topics and beliefs upon which Respondent challenges his *Ford* competency." Docket No. 316 at 10-11. However, if, as Petitioner appears to imply, he will be even more obviously incompetent whenever this matter returns to this Court, how is Petitioner irreparably harmed by a court order declining to "preserve" evidence at a time of supposedly superior competence? Petitioner offers no satisfactory answer to this question. Accordingly, Petitioner has failed to show that he will be irreparably harmed absent an order to preserve evidence at this time.

Unlike with Mr. Landswick's notes, the Court is not here confronted with the threat of loss or destruction of tangible, material, and irreplaceable evidence in circumstances beyond Petitioner's control. Nothing indicates that the evidence Petitioner seeks to obtain will be less probative of his claim if he is required to renew his request when this matter returns to federal court.[2]

Finally, Petitioner's motion is essentially a motion for discovery, which this Court has already recognized is not permissible in support of an unexhausted petition, absent some

---

[2] For this reason, the Court's prior, confidential order awarding federal funds for Petitioner to hire a videographer is consistent with this Order. In granting such funds, the Court determined that the services of a videographer were "reasonably necessary for the representation of the [petitioner,]" 18 U.S.C. § 3599(f), because, indeed, Petitioner's counsel has no other means of obtaining a video recording of Petitioner's practice group activities within the prison. However, the Court did not, and could not, in that order conclude that Petitioner is entitled to "preserve" evidence or conduct discovery, or that prison administrators must permit Petitioner's videographer to access secure areas of the prison. These are matters that must be resolved through adversarial motion practice rather than *ex parte* statutory funding requests. It follows that, after this Court has lifted its stay, if the Court determines that Petitioner is entitled to conduct the discovery described in his motion, the services of the videographer will remain "reasonably necessary" to representation of Petitioner.

5

extraordinary circumstance. No such circumstance has been demonstrated here.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Preserve Evidence of his Activities in the 5% Nation of Gods and Earth at San Quentin Prison (Docket No. 316) is **DENIED**.

This order disposes of Docket No. 316.

**IT IS SO ORDERED**.

Dated: March 26, 2020

_____
EDWARD M. CHEN
United States District Judge